## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., in its individual, corporate  capacity and on behalf of certain of its members; and TRUE THE VOTE, in its individual, corporate capacity, | ) ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | Civil Action No. 1:12-cv-800 |
| v. | ) ) | |
| J. BRADLEY KING and TRENT DECKARD, Co-Directors of the Indiana Election Division, in their official capacities; and CONNIE LAWSON, Indiana Secretary of State, in her official capacity, | ) ) ) ) ) ) ) | |
| *Defendants*. | ) ) | |

## **COMPLAINT**

Plaintiffs, by their attorneys, bring this action for violations of Section 8 of the National

Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg-6.

1.      Plaintiffs seek declaratory and injunctive relief to compel Defendants' compliance

with Section 8 of the NVRA.  Specifically, Defendants have violated Section 8 by failing to

make a reasonable effort to conduct voter list maintenance programs in elections for Federal

office and by failing to produce records related to those efforts, as required by Section 8.

Plaintiffs thus seek a declaration and an injunction requiring Defendants to conduct and execute

voter list maintenance programs in a manner that is consistent with federal law and further

requiring Defendants to produce records about its list maintenance efforts.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the action arises under the laws of the United States, and under 42 U.S.C. § 1973gg-9(b)(2), as the action seeks injunctive and declaratory relief under the NVRA.

3.      Venue in this Court is proper under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

**PARTIES**

4.      Plaintiff Judicial Watch, Inc. ("Judicial Watch") is a non-profit organization that seeks to promote integrity, transparency, and accountability in government and fidelity to the rule of law.  Plaintiff Judicial Watch brings this action in its individual, corporate capacity and on behalf of its members who are registered to vote in the State of Indiana.

5.      Plaintiff True the Vote is a non-profit organization that seeks to restore truth, faith, and integrity to local, state, and federal elections.  Plaintiff True the Vote brings this action in its individual, corporate capacity only.

6.      Defendants J. Bradley King and Trent Deckard are the Co-Directors of the Indiana Election Division.  Pursuant to Ind. Code § 3-7-11-1, the Co-Directors of the Indiana Election Division are the State officials "responsible for the coordination of state responsibilities under NVRA."  Pursuant to Ind. Code § 3-7-11-2, the Co-Directors must "oversee the implementation and administration of NVRA" by state, county, and local officials, and must directly execute statewide NVRA Section 8 obligations.  Defendants King and Deckard are being sued in their official capacities.

7.      Defendant Connie Lawson is the Secretary of State of the State of Indiana.  As Secretary of State, Defendant Lawson is responsible for overseeing elections through the Indiana

2

Election Division, which is one of the four main divisions of the office of the Secretary of State. Defendant Lawson is being sued in her official capacity.

## FACTUAL BACKGROUND

8.      Section 8 of the NVRA requires that "[i]n the administration of voter registration for elections for Federal office, each State shall … conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of – (A) the death of the registrant; or (B) a change in the residence of the registrant . . . " 42 U.S.C. § 1973gg-6(a)(4).  Section 8 of the NVRA also requires that "[a] State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters." 42 U.S.C. § 1973gg-6(c)(2)(A).  Section 8 of the NVRA mandates that any such list maintenance programs or activities "shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965 (42 U.S.C. § 1973 *et seq.*)." 42 U.S.C. § 1973gg-6(b)(1).

9.      States' obligations under Section 8 of the NVRA are augmented by the Help America Vote Act ("HAVA"), which requires each State to create a "single, uniform, official, centralized, interactive, computerized statewide voter registration list defined, maintained, and administered at the State level." *See* 42 U.S.C. § 15483(a)(1)(A).  HAVA also requires that States' computerized lists be maintained on a regular basis, specifies how the maintenance shall be performed, and mandates that the States' election systems "shall include provisions to ensure that voter registration records in the State are accurate and updated regularly," including "[a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." 42 U.S.C. § 15483(a)(2) and (a)(4).

3

10.     Also under Section 8 of the NVRA, a State "shall maintain for at least 2 years and shall make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters. . . ."  42 U.S.C. § 1973gg-6(i).

11.     The State of Indiana has a history of failing to comply with its obligations under federal voter registration laws.  In 2006, the United States brought suit against the State of Indiana and the Co-Directors of the Indiana Election Division regarding the State's failure to comply with its Section 8 obligations.

12.     The 2006 lawsuit, captioned *U.S. v. State of Indiana, et al.*, Case No. 1:06-cv-01000-RLY-TAB (S. D. Ind.), resulted in a Consent Decree and Order, entered on or about July 5, 2006, requiring the State of Indiana to take specific actions to remedy its failure to comply with Section 8 of the NVRA.  Specifically, the Consent Decree and Order required the State of Indiana to conduct all voter list maintenance activities required by the NVRA, as well as the Help America Vote Act, and to make sure all counties in the State of Indiana implemented the results of these voter list maintenance activities by removing verified ineligible registrations.  The Consent Decree and Order specifically required the State of Indiana to send statewide mailings to identify all apparently dead, duplicate, or relocated individuals on the voter rolls, and to ensure the removal or update of the registration list entries based on responses to those mailings.  The Consent Decree and Order also required the State of Indiana to develop a written Compliance Plan for voter list maintenance activities.  Under the Consent Decree and Order, the State of Indiana was required to create procedures in the Compliance Plan for removing ineligible voters from its statewide computerized database of registered voters and to track whether counties were complying with Section 8 of the NVRA across nine (9) categories of

list maintenance activity.  Finally, the Consent Decree and Order also required the State of

Indiana to initiate litigation against a county if the Compliance Plan tracking data revealed the

county was failing to conduct list maintenance activities required by the NVRA.

13.     As a result, Indiana made substantial efforts to clean its voter rolls in 2006 in

compliance with Section 8 of the NVRA.  Specifically, approximately two months after signing

the Consent Decree and Order, on September 11, 2006 the State of Indiana advised the court in a

filing that it had taken substantial steps towards full compliance with the July 2006 Consent

Decree and Order.  Specifically, the State of Indiana informed the court that it had mailed over

200,000 notices based on registration entries that appeared to be either duplicates or deceased

persons, had removed over 120,000 entries from its voter rolls, and had inactivated over 300,000

registrations statewide.

14.     However, those compliance efforts did not continue through the present.  Despite

these efforts to comply with the 2006 Consent Decree and Order, the State of Indiana has since

failed to continue to comply with its obligations under the NVRA.  Based on a comparison of

2010 Census data and voter registration data provided by the State of Indiana to the U.S. Election

Assistance Commission ("EAC") for the November 2010 general election, the number of

persons listed on voter registration rolls in 12 counties in the State of Indiana exceeds 100% of

the Total Voting Age Population ("TVAP") in those counties.  The counties with voter

registration rolls that exceed 100% of TVAP are: Scott, Spencer, Crawford, Warrick, Tipton,

Franklin, Warren, Union, Orange, Brown, Hancock, and Newton counties.  Three of these

counties – Scott, Spencer, and Crawford – have voter registration rolls that exceed 110% of their

TVAP.

15.     In addition, another 26 counties in the State of Indiana have voter registration rolls that contain between 90% and 100% of TVAP.  These are:  Clark, St. Joseph, Starke, Vanderburgh, Harrison, Martin, Floyd, Fountain, Posey, Carroll, Boone, White, Hamilton, Howard, Ripley, Delaware, Dearborn, Allen, Pike, Pulaski, Clay, DuBois, Madison, Parke, Fayette, and Rush counties.

16.     In March 2011, the State of Indiana's chief election official, then-Secretary of State Charles P. White, was indicted on seven felony counts, including false voter registration, submitting a false ballot, and perjury.  White was subsequently removed from office, found guilty of the charges, and sentenced to one year of house arrest.

17.     Indiana's lack of voter list maintenance is contributing to a larger nationwide problem.  According to research conducted by the Center for the States of the non-partisan Pew Charitable Trusts ("Pew"), inaccurate voter registrations are rampant.  Pew's independent research published in February 2012 indicates that approximately 24 million active voter registrations throughout the United States – or one out of every eight registrations – are either no longer valid or are significantly inaccurate.  Pew also found that more than 1.8 million deceased individuals are listed as active voters nationwide, and that approximately 2.75 million people have active registrations in more than one state.

18.     The failure of the State of Indiana to comply with its obligations under federal voter registration laws has undermined the confidence of Indiana's registered voters in the integrity of the voter registration rolls and, accordingly, in the integrity of elections held in the State of Indiana.

19.     On February 6, 2012, Plaintiff Judicial Watch, on its own behalf, on behalf of members of Plaintiff Judicial Watch who are registered to vote in the State of Indiana, and on

behalf of Plaintiff True the Vote, sent a letter to then-Secretary of State White and Defendants

King and Deckard, notifying them that the State of Indiana was in violation of federal voter

registration laws.  The letter explained that, according to 2010 Census information and publicly

available voter registration data, in 12 separate counties, the State of Indiana had more registered

voters on the official list of registered voters than the counties had TVAP.  The letter also

identified each of the 12 counties.

20.     The February 6, 2012 letter also requested that the State of Indiana make available

for public inspection all records concerning "the implementation of programs and activities

conducted for the purpose of ensuring the accuracy and currency" of official lists of eligible

voters, explaining that the State of Indiana was required to make such records available under

Section 8 of the NVRA.

21.     The February 6, 2012 letter also notified then-Secretary of State White and

Defendants King and Deckard that a lawsuit may be brought against them to ensure compliance

with the requirements of federal voter registration laws.

22.     By letter dated March 15, 2012, Defendants King and Deckard, acting in their

official capacities and on behalf of themselves and Defendant Lawson, issued an order formally

denying what they characterized as a "complaint or grievance" "filed" by Plaintiff Judicial

Watch:

> IT IS THEREFORE ORDERED . . . That Co-Directors having determined that
> the complaint or grievance filed by Justice Watch, Inc. (sic) with the Election
> Division (and designated as 2012-1) does not set forth a violation of NVRA or
> IC3-7 even if the facts set forth in the complaint or grievance are assumed to be
> true, hereby **DISMISS** the complaint or grievance (emphasis original).

The order was sent by the office of Interim Indiana Secretary of State Jerold A. Bonnet.  No

explanation other than a blanket denial was provided.  Nor did Defendants King and Deckard

state whether or when the State of Indiana would make available its records concerning the implementation of programs and activities for ensuring the accuracy and currency of official lists of eligible voters, as required by Section 8 of the NVRA.  As of the date of this Complaint, no such records have been made available.

## PLAINTIFF JUDICIAL WATCH

23.     Plaintiff Judicial Watch is a membership organization.  A person becomes a member by making a financial contribution, in any amount, to Plaintiff Judicial Watch. Members' financial contributions are by far the single most important source of income to Plaintiff Judicial Watch and provide the means for financing the activities of the organization.

24.     Plaintiff Judicial Watch regularly files lawsuits against government agencies and government officials in federal and state courts across the United States.  Not only are Plaintiff Judicial Watch's lawsuits an integral part of its public interest mission, but these lawsuits also provide a means for the organization's members to advance their collective views and protect their collective interests in promoting integrity, transparency, and accountability in government and fidelity to the rule of law.

25.     Plaintiff Judicial Watch has at least 5,720 members in the State of Indiana.  Each of these members made at least one financial contribution to Plaintiff Judicial Watch between April 25, 2009, and April 25, 2012, and thus helped to finance the activities of the organization during this time period.

26.     At least some of Plaintiff Judicial Watch's 5,720 members in the State of Indiana are registered to vote in the State of Indiana.  These members have a particular interest in the accuracy and currency of official lists of eligible voters in the State of Indiana, as the accuracy and currency of these lists directly affects their right to vote.

27.     Defendants King, Deckard, and Lawson's actions have injured and continue to cause injury to members of Plaintiff Judicial Watch who are registered to vote in the State of Indiana because it is undermining their confidence in the integrity of the electoral process and the effectiveness of their vote.

28.     At least 70 members of Plaintiff Judicial Watch who are registered to vote in the State of Indiana have communicated directly with Plaintiff Judicial Watch and requested that Plaintiff Judicial Watch take action to protect their interests in the accuracy and currency of official lists of eligible voters in the State of Indiana and redress the injury they have suffered to their right to vote as a result of Defendants King, Deckard, and Lawson's actions

29.     It is unlikely that any individual member would have the ability or the resources to take action to protect their individual interests or redress the injury to their right to vote absent collective action by Plaintiff Judicial Watch.

30.     As an integral part of its public interest mission, Plaintiff Judicial Watch regularly utilizes open records laws and other laws requiring that government records be made available to the public.  Plaintiff Judicial Watch makes hundreds of such record requests each year.  After Plaintiff Judicial Watch obtains the records it has requested, it analyzes them and disseminates its findings to the public through various educational and outreach programs, including its website, blog, and monthly newsletter.

31.     Plaintiff Judicial Watch has been and continues to be harmed by the refusal of Defendants King, Deckard, and Lawson to allow access to records concerning the State of Indiana's voter list maintenance programs and activities, an issue of substantial public importance especially in an election year.  Not only has the refusal of Defendants King, Deckard, and Lawson denied Plaintiff Judicial Watch the ability to obtain records and information about

an issue of substantial public importance, but it also is preventing Plaintiff Judicial Watch from

analyzing such records and information and disseminating its findings to the public.

Consequently, Defendants King, Deckard, and Lawson are injuring the ability of Plaintiff

Judicial Watch to carry out its public interest mission.

### PLAINTIFF TRUE THE VOTE

32.     As an integral part of its public interest mission, Plaintiff True the Vote obtains

and examines official lists of eligible voters and other voter registration data from states,

counties, and localities across the United States, including the State of Indiana, to carry out its

various programs.

33.     For one such program, Plaintiff True the Vote reviews and analyzes official lists

of eligible voters and other voter registration data in order to verify that such lists and data are as

accurate and current as possible.  More specifically, Plaintiff True the Vote uses trained

volunteers to review official lists of eligible voters and voter registration data and to compare

these lists and data to other publically available data to identify possible inaccuracies and

deficiencies.  Registrations that appear to be duplicates or registrations of persons who are

deceased, have relocated, or otherwise are ineligible to vote in a particular jurisdiction are

flagged and citizen's complaints are filed with the appropriate elections officials.  This particular

program is among the largest, if not the largest, of all of Plaintiff True the Vote's various

programs and is also an integral part of Plaintiff True the Vote's public interest mission.  The

program builds on and supplements, but cannot duplicate or replace, the list maintenance

programs required by federal voter registration laws.

34.     Plaintiff True the Vote has recruited and trained volunteers to analyze and verify

the accuracy and currency of official lists of eligible voters and other voter registration data for

10

the State of Indiana for the November 2012 election and plans to recruit and train additional

volunteers in the State of Indiana for this effort.

35.     Plaintiff True the Vote's efforts to analyze and verify the accuracy and currency

of official lists of eligible voters and other voter registration data, including official lists and

other voter registration data in the State of Indiana, are dependent in substantial part on States'

fulfilling their voter list maintenance obligations under federal voter registration laws.  If a State

does not make a reasonable effort to conduct the voter list maintenance programs required by

federal voter registration laws, then not only are the lists and voter registration data obtained and

examined by Plaintiff True the Vote inaccurate and unreliable, but Plaintiff True the Vote is not

able to use its limited resources to make official lists of eligible voters and other voter

registration data as accurate and current as possible.  Instead, it can only hope to make up for a

small part of the State's failure to fulfill its legal obligations.

36.     Defendants King, Deckard, and Lawson's violation of federal voter registration

laws has impaired and will impair Plaintiff True the Vote from carrying out its public interest

mission.  Not only are the official lists of eligible Indiana voters and other Indiana voter

registration data obtained and examined by Plaintiff True the Vote inaccurate and unreliable, but

Plaintiff True the Vote is not able to complete its work of ensuring a high degree of accuracy and

currency in the official lists of eligible voters and other voter registration data in the State of

Indiana.

37.     Defendants King, Deckard, and Lawson's violation of federal voter registration

laws has thus injured Plaintiff True the Vote by impairing its ability to carry out is public interest

mission.

11

38.     Plaintiff True the Vote also regularly utilizes open records laws and other laws that require government records be made available to the public.  Plaintiff True the Vote makes numerous such requests each year.  After Plaintiff True the Vote obtains the records it has requested, it uses them for its ongoing analysis and verification of official lists of eligible voters and voter registration data, among other programs.

39.     Plaintiff True the Vote has been and continues to be harmed by the refusal of Defendants King, Deckard, and Lawson to allow access to records concerning the State of Indiana's voter list maintenance programs and activities.  Not only has the refusal of Defendants King, Deckard, and Lawson thus denied Plaintiff True the Vote the ability to obtain records and information about these programs and activities, but it also is restricting the ability of Plaintiff True the Vote to analyze and use such records in carrying out its public interest mission. Consequently, Defendants King, Deckard, and Lawson are injuring the ability of Plaintiff True the Vote to carry out its public interest mission.

## COUNT I

### (Violation of the NVRA: Failure to Conduct List Maintenance)

40.     Plaintiffs reallege paragraphs 1 through 39 as if fully stated herein.

41.     Defendants King, Deckard, and Lawson have failed to make reasonable efforts to conduct voter list maintenance programs, in violation of Section 8 of NVRA, 42 U.S.C. § 1973gg-6.

42.     Plaintiff True the Vote and Plaintiff Judicial Watch, through its members, have suffered irreparable injury as a direct result of Defendant King's, Defendant Deckard's, and Defendant Lawson's failure to make reasonable efforts to conduct voter list maintenance programs in violation of Section 8 of the NVRA.

43.     Plaintiffs True the Vote and Judicial Watch will continue to suffer irreparable injury by Defendant King's, Defendant Deckard's, and Defendant Lawson's failure to make reasonable efforts to conduct voter list maintenance programs in violation of Section 8 of the NVRA unless and until they are enjoined from continuing to violate the law.

44.     Plaintiffs True the Vote and members of Plaintiff Judicial Watch have no adequate remedy at law.

## COUNT II

### (Violation of the NVRA: Failure to Produce Records)

45.     Plaintiffs reallege paragraphs 1 through 44 as if fully stated herein.

46.     Defendants King, Deckard, and Lawson have failed to produce or otherwise make records available to Plaintiffs Judicial Watch and True the Vote concerning the State of Indiana's implementation of programs and activities for ensuring the accuracy and currency of official lists of eligible voters in the State of Indiana, in violation of Section 8 of the NVRA, 42 U.S.C. § 1973gg-6.

47.     Plaintiffs Judicial Watch and True the Vote have suffered irreparable injury as a direct result of Defendant King's, Defendant Deckard's, and Defendant Lawson's failure to produce records in violation of Section 8 of the NVRA.

48.     Plaintiffs Judicial Watch and True the Vote will continue to suffer irreparable injury by Defendant King's, Defendant Deckard's, and Defendant Lawson's failure to produce records in violation of Section 8 of the NVRA unless and until they are enjoined from continuing to violate the law.

49.     Plaintiffs Judicial Watch and True the Vote have no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Judicial Watch, Inc. and True the Vote pray for a judgment:

1.      Declaring that Defendants are in violation of Section 8 of the NVRA;

2.      Enjoining the Defendants from failing or refusing to comply with the voter

registration list maintenance requirements of Section 8 of the NVRA;

3.      Ordering the Defendants to pay Plaintiffs' reasonable attorney's fees, including

litigation expenses and costs, pursuant to 42 U.S.C. § 1973gg-9(c); and

4.      Grant Plaintiffs further relief that this Court deems just and proper.

Dated: June 11, 2012                              Respectfully submitted,

*Of Counsel:*                                     *Paul J. Orfanedes*
J. Christian Adams                                Paul J. Orfanedes
Election Law Center, PLLC                         Chris Fedeli
300 N. Washington Street, Ste. 405                (*Pro Hac Vice* Applications Pending)
Alexandria, VA 22314

                                                  JUDICIAL WATCH, INC.
                                                  425 Third Street S.W., Ste. 800
                                                  Washington, DC 20024
                                                  Tel: (202) 646-5172
                                                  Fax: (202) 646-5199
                                                  Email:  porfanedes@judicialwatch.org
                                                          cfedeli@judicialwatch.org


                                                  */s/ David R. Langdon*
                                                  David R. Langdon
                                                  Joshua B. Bolinger

                                                  LANGDON LAW LLC
                                                  11175 Reading Road, Ste. 104
                                                  Cincinnati, OH 45241
                                                  Tel: (513) 577-7380
                                                  Fax: (513) 577-7383
                                                  Email:  dlangdon@langdonlaw.com
                                                          jbolinger@langdonlaw.com

                                                  *Attorneys for Plaintiffs*

14