UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JUDICIAL WATCH, INC., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) 1:12-cv-800-WTL-TAB |
| | ) |
| J. BRADLEY KING, et al., | ) |
| | ) |
| Defendants. | ) |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants, J. Bradley King, ("King") in his official capacity as Co-Director of the Indiana Election Division, (the "Division") Trent Deckard, ("Deckard") in his official capacity as Co-Director of the Indiana Election Commission and Connie Lawson, ("Lawson") in her official capacity as Secretary of State, (collectively "Defendants") by counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6) respectfully move this Court to dismiss all claims asserted by Plaintiffs Judicial Watch and True the Vote. Plaintiffs have not stated any specific violation under the National Voter Registration Act of 1993 (NVRA)(42 U.S.C. § 1973gg-6), and failed to provide Defendants proper notice of a violation as required by 42 U.S.C. § 1973gg-9(b).  Thus, Plaintiffs failed to state a claim for which relief can be granted, and thus their Complaint should be dismissed.

### I.      Introduction and Complaint Pled Facts

Plaintiffs have *concluded* that Defendants violated the NVRA, and that is it. Nowhere in their Complaint do Plaintiffs provide a single example of a violation of the NVRA.  Rather, Plaintiffs' *sole* basis for their allegation is a comparison of the 2010 census data of certain Indiana counties with the current voter registration rolls of those

1

same counties.  The NVRA does not obligate states to maintain a certain relationship between census data and voter registration.

In the middle of a presidential election year, Judicial Watch sent a letter to the Indiana Election Division and the Secretary of State, alleging violations of Section 8 of the NVRA, demanding compliance, and threatening a lawsuit "to ensure compliance with the requirements of federal voter registration laws." (Dkt. 1, ¶ 21).  Plaintiffs did not state any violation of an express obligation under the NVRA, only "suggesting" that it "appears" Indiana is not in compliance with the NVRA.  (Def. Ex. 1, p. 2).  After receiving what they characterize as an unsatisfactory response, the Plaintiffs filed this lawsuit.

In the Complaint, the Plaintiffs allege that violations of Section 8 have the effect of "undermining the confidence of Indiana's registered voters in the integrity of the voter registration rolls and, accordingly, in the integrity of elections held in the State of Indiana." (Dkt., ¶¶ 14, 18).  Plaintiffs' vague allegation of a failure to maintain the voter registration rolls is based solely on the allegation that the aggregate number of voters on voter registration rolls in 2012 are not precisely consistent with the aggregate number of voting age individuals reflected in 2010 census data.  (Dkt. 1, ¶ 14, 15).  Plaintiffs' implicit conclusion is that a violation of the NVRA can be inferred solely if the aggregate census numbers relating to a voting population do not precisely match the number on Indiana's voting rolls two years later. (Dkt. 1, ¶ 14, 15).  The alleged discrepancy between 2010 census data and Indiana's 2012 voter rolls is the *singular* legal basis for Plaintiffs' allegations that Indiana's voter rolls are not adequately maintained under the NVRA.

Plaintiffs' conclusion is faulty. Even assuming a discrepancy between the 2010 census data and 2012 voter rolls, this is not a violation of any of the express obligations under the NVRA. Both federal and state law detail express obligations of officials responsible for enforcement of the NVRA. For example, officials must "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . death of the registrant; or . . . a change of residence of the registrant." 42 U.S.C. 1973gg6(a)(4). Further and specifically, under Indiana law, the Indiana Election Division must notify "a county registration officer whenever the NVRA official receives information from a United States attorney that . . . a person has been convicted of a felony in a district court of the United States; or . . . the conviction has been overturned." Ind. Code 3-7-11-2(6). But there is no NVRA triggering mechanism that requires a state official to act if the registered voters reach a certain percentage of the population as listed in census data. Indeed, there is no mention of census data in the NVRA at all. A high number of registered voters is simply not a violation under the NVRA.

Plaintiffs further allege that on March 15, 2012, the Indiana Election Division issued a formal order dismissing the grievance filed by Judicial Watch because of Judicial Watch's failure to "set forth a violation of NVRA or [Indiana Code 3-7] even if the facts set forth in the complaint or grievance are assumed to be true." (Dkt. 1, ¶ 22).[1]

---

[1] Plaintiff Judicial Watch's February 6th letter was characterized as a grievance pursuant to the Indiana Code. The Election Division, while the chief election official for purposes of NVRA compliance, is limited in its authority by law and must follow established procedures. For example, if there is an allegation of noncompliance with the NVRA, which is what Judicial Watch's letter alleged, then the Election Division must take certain steps. Pursuant to Indiana Code 3-7-11-4, the Election Division must determine whether a notice filed "describes a violation of NVRA or this article if the facts set forth in the notice are assumed to be true." The Election Commission, in compliance with both federal and state law, rightfully determined

Plaintiffs also allege a failure to comply with 42 U.S.C. § 1973gg-6(i), which requires a state to "maintain for at least two years and shall make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." (Dkt. 1, ¶ 10). Plaintiffs allege that in Plaintiff Judicial Watch's February 6th letter, Judicial Watch requested that Indiana "make available for public inspection all records concerning 'the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency' of official lists of eligible voters." (Dkt. 1, ¶ 20).

While states are required to maintain and provide access to records concerning programs and activities conducted to ensure the accuracy and currency of official lists of eligible voters, 42 U.S.C. § 1973gg(i)(1), the NVRA does not place on states a burden to speculate as to when and how parties want to inspect records concerning NVRA programs and activities. Thus, Plaintiffs have failed to state a claim of a violation of 42 U.S.C. § 1973gg-6(i).

## II.    Standard for Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss

To state a claim for relief, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a)(2). "The short and plain statement must be enough to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Killingsworth v. HSBC Bank Nevada,*

---

that, even if Judicial Watch's allegations were true, the organization still did not describe a violation of the NVRA, and rightfully dismissed their allegations.

*N.A.*, 507 F.3d 614 (7th Cir. 2007)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and noting that the Supreme Court in *Twombly*, 500 U.S. at 563, retired the common formulation that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

"[T]he factual allegations in the complaint must be enough to raise a right to relief above the speculative level." *Killingsworth*, 507 F.3d at 618 (quoting *Twombly*, 550 U.S. at 555). In evaluating a plaintiff's claim, a court "must take the plaintiff's factual allegations as true and draw all reasonable inferences in his favor." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000)(*citing Strasburger v. Board of Educ.* 143 F.3d 351, 359 (7th Cir. 1998)). But a complaint should be dismissed if "no relief could be granted under any set of facts that could be proved consistent with the allegations." *DeWalt* at 612 *(quoting Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir.)(internal punctuation and citations omitted). Further, plaintiffs may rely on legal conclusion to provide the framework of a complaint, but any legal conclusion must be supported by factual allegations to survive a motion under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009).

### III.   Analysis

**A.   Plaintiffs fail to state a claim under the NVRA for which relief can be granted.  This case should be dismissed.**

Although the NVRA permits private parties to bring a lawsuit to ensure compliance with the NVRA, private parties must meet certain statutory requirements

prior to bringing such a suit, which includes providing notice of a violation to afford a state an opportunity to remedy any substantiated violation. Plaintiffs have not stated a valid claim under the NVRA for a number of reasons. Namely, they did not provide notice of a violation of the NVRA as required, and they fail in their Complaint to allege any violation of an express obligation under the NVRA. The NVRA strictly limits who may bring such a lawsuit, how such a lawsuit may be brought, and against whom such a lawsuit may be brought. Plaintiffs have failed to meet the requirements under the NVRA to bring a lawsuit, thus their lawsuit should be dismissed.

**1.    Plaintiffs failed to provide adequate notice of a violation as required by the NVRA, and made no allegation of a violation of a specific obligation under the NVRA.**

Plaintiffs' claims under the NVRA fail because their letter to the Division making vague allegations of NVRA violations and amorphously requesting unspecified voting documents is not adequate notice to bring a lawsuit under the NVRA. While Plaintiff Judicial Watch may have sent a letter generally accusing the State of noncompliance with Section 8 of the NVRA, the letter does not approach the unequivocal notice requirements of the NVRA. The notice requirement is just that – a requirement. If a party fails to provide proper notice of a violation, the result is dismissal. *Broyles v. Texas*, 618 F. Supp. 2d 661, 692 (S.D. Tex. 2009) *aff'd*, 381 F. App'x 370 (5th Cir. 2010).

The key issue with regard of NVRA compliance and litigation is whether the responsible officials have met their express obligations under the NVRA. *See U.S. v. Missouri,* 535 F.3d 844, 850-51 (8th Cir. 2008). Plaintiffs' fundamental failure to provide adequate notice of a failure to meet an express obligation requires dismissal of their

6

Complaint.

At its root, Plaintiffs' complaint is an effort to use the discovery tools afforded in a federal lawsuit to determine *if* there is a violation of the NVRA, rather than prosecuting an actual alleged violation.[2] Discovery in a federal case is not the appropriate mechanism for investigating a general suspicion of a violation of the NVRA, as the purpose of the notice requirement is to "provide states in violation of the Act an opportunity to attempt compliance before facing litigation." *Ass'n of Comm. Org. for Reform Now v. Miller,* 129 F.3d 833 (6th Cir. 1997) (*citing* Senate Comm. on Rules and Admin., National Voter Registration Act of 1993, S.Rep. No. 6, 103d Cong., 1st Sess. 41 (1993)). Plaintiffs merely looked at data they allege indicates some inaccuracy in some counties, and jumped to the unfounded conclusion that it must mean a violation of the NVRA. Plaintiffs seek to bypass the task of investigating concerns about voter list maintenance and jump directly to an unfounded and speculative lawsuit that fails to allege *any NVRA violations*.

The NVRA provides that a "person who is aggrieved by a violation of this subchapter may provide written notice of the violation" to the chief election official of the State involved. 42 U.S.C. § 1973gg-9(b). If the alleged violation is not corrected within a minimum of ninety days after the receipt of the notice, "the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." *Id.* Providing notice and waiting a minimum of 90 days is a condition precedent to a party filing a Complaint in federal court. Thus, simply

---

[2] Again, a discrepancy between the aggregate number of eligible voters in census figures that are two years old and current voter rolls is not a NVRA violation. Pointedly, this is Plaintiffs' only purported "violation."

7

amending the Complaint would be futile as that would still not remedy the notice requirement.

On February 6, 2012, Plaintiff Judicial Watch alleges they sent a letter to the Indiana Secretary of State and the co-directors of the Indiana Election Division. (Dkt. 1, ¶ 19). Plaintiff Judicial Watch's only alleged "facts" are that the election rolls in some Indiana counties number over or near 100% of the total voting age population as listed in 2010 census data. (Dkt. 1, ¶ 14, 15). As noted above, Judicial Watch did not even allege a violation, but merely "suggested" that it "appears" that Indiana may be in violation of the NVRA. The NVRA does not require a state to act if some party merely speculates that a violation has taken place.

Even assuming a very low specificity standard for proper notice, the notice is required at least to describe the nature of violations of the NVRA. *Ferrand v. Schedler*, CIV.A. 11-926, 2011 WL 3268700 (E.D. La. July 21, 2011). Plaintiff Judicial Watch's letter, as explained below, did not describe the nature of any alleged violation. Rather, the letter merely listed various responsibilities under Section 8 of the NVRA, and suggested that some counties may not be in compliance with Section 8. (Def. Ex. 1, p. 2). Nowhere in the letter does Judicial Watch identify one specific violation of the Act.

Plaintiffs' notice of a violation is wholly bereft of any allegation of a violation at all. As a reading of the Plaintiffs' notice reveals,[3] Plaintiff Judicial Watch nowhere says that there has been a violation. Rather, Judicial Watch merely states that, "Indiana **Does Not Appear** to be Maintaining Accurate Eligible Voter Lists," "it **appears** that Indiana is

---

[3] "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

failing to comply with the voter registration list maintenance requirements," the census data "strongly **suggests** Indiana has not been maintaining its eligible voter lists," and "your **apparent** failure to maintain . . . voter registration lists." (Def. Ex. 1, p. 2)(emphases added).

Section 8 of the NVRA requires each state to undertake certain duties, including conducting "a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . death of the registrant" or "a change in residence of the registrant, in accordance with" certain subsections of the NVRA that detail rigorous procedures related to the confirmation of voter registration and voter removal programs.  42 U.S.C. § 1973gg-6(a)(4).  States are also required to "complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters."  42 U.S.C. § 1973gg-6(c)(2).  While undertaking these and any other program or activity "to protect the integrity of the elector process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office," states must ensure that the programs are "uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965."  42 U.S.C. § 1973gg-6(b).  It should again be noted that there is no express duty under the NVRA for an official to reconcile voter registration rolls with two year old census data.

Plaintiffs do not allege *any* facts that, even if true, would establish that Defendants failed to carry out their obligations under the NVRA, and, as noted above, in Judicial Watch's February 6th letter, no allegation of a violation was stated, but merely

9

suggested. Rather, Plaintiffs, in both their Complaint and letter, only generally imply that there must be a violation because of an alleged discrepancy between the 2010 census numbers and Indiana's 2012 voter rolls. Judicial Watch's letter to the Election Division does nothing more than request the Election Division to engage in a wide-ranging investigation of perceived discrepancies between census data and voter rolls without <u>any specific or concrete allegations that the NVRA was violated in any way.</u> Notwithstanding the characterization in the Complaint, the Election Division did provide a reason why their notice was being denied – the notice did not allege any facts, even if taken as true, that would describe a violation of the NVRA. (Dkt. 1, ¶ 22). Alleged discrepancy between census data that is two years old and voter rolls do not establish a violation of the NVRA. Simply stated, the NVRA is not violated simply because the aggregate numbers of voters listed on the voter rolls do not precisely match the census.

The plain language of the NVRA requires that the notice allege a violation. 42 U.S.C. § 1973gg-9(b)(1). Mere suspicion based on raw data does not provide states with the notice required to take active and meaningful steps toward compliance. If Plaintiffs True the Vote and Judicial Watch have specific examples of noncompliance with the NVRA, either by a specific county or the Election Division, the Plaintiffs must provide notice under the NVRA to afford the entities an opportunity to remedy the situation, otherwise the ninety-day waiting period would be meaningless. *See Broyles*, 618 F. Supp. 2d at 692. A notice that there may possibly be a violation based on shallow conclusions comparing aggregate statistics is effectively not a notice at all.

### 2. Plaintiff True the Vote provided no notice whatsoever.

While Judicial Watch only provided defective notice of a purported violation,

Plaintiff True the Vote does not allege that they provided any notice at all.  As stated above, the NVRA permits an aggrieved private party to bring a civil action for declaratory or injunctive relief, but the statute also delineates the steps required before such a party may bring an action. Specifically, 42 U.S.C. §1973gg-9(b)(1) states that an aggrieved person must first provide "written notice of the violation to the chief election official of the State involved."  After providing notice, the party alleging a violation must permit the official at a minimum 90 days to correct the violation.  42 U.S.C. § 1973gg-9(b)(2).  Then, and only then, may the aggrieved party bring a civil action in an appropriate district court.  *Id.* Plaintiff True the Vote has not claimed, much less shown, that it has followed the procedures under the NVRA.

While the Complaint asserts that the letter from Judicial Watch dated February 6, 2012 provided such notice, there is no assertion that True the Vote as an organization provided written notice alleging a violation under the NVRA.  Plaintiffs claim in their Complaint, apparently for the first time, that the notice dated February 6, 2012 was sent "on behalf of Plaintiff True the Vote."  (Dkt. 1, ¶ 19).  This is simply an after the fact and thinly disguised attempt to bring in additional Plaintiffs.  The NVRA is clear:  an aggrieved party must provide notice, wait for corrective action, and then bring a claim.  One allegedly aggrieved party's notice does not open the door for all fellow travelers to join the civil action.  Courts in another circuit have found occasion to permit another aggrieved party who has not filed actual notice to intervene when they share precisely the same allegations with the Plaintiff that filed the lawsuit after providing notice.  *See, e.g.*, *Ass'n of Comm. Org. for Reform Now v. Miller,* 129 F.3d 833 (6th Cir. 1997).  But again, Judicial Watch did not file notice of any violation, much less a specific violation that

would permit True the Vote to now claim that they are similarly situated and injured by the same specific violation. For this reason, True the Vote should be dismissed as a Plaintiff as they did not file notice of an allegation.

### B. Plaintiffs do not have standing.

Plaintiffs do not have standing to bring a lawsuit for a violation of the NVRA, as they have not suffered an injury because of a violation of any express obligation of the NVRA by any of the Defendants. Plaintiffs' allegation, and thus their injury, is purely speculative, and thus insufficient to meet the standard required for standing.

Standing requires federal courts to satisfy themselves that the plaintiff has made an allegation that he has a personal stake in the outcome of the controversy so as to warrant his invocation of federal-court jurisdiction. *Summers v. Earth Island Institute*, 555 U.S. 488 (2009) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559-560 (1992); *Los Angeles v. Lyons,* 461 U.S. 95, 111-112 (1983)). Plaintiffs bear the burden of showing that they have standing for each type of relief sought. *Id*. To seek injunctive relief, a plaintiff must show that he is under threat of suffering "injury in fact" that is concrete and particularized. *Id*. The threat must be actual and imminent, not conjectural or hypothetical. It must also be fairly appreciable to the challenged action of the defendant. *Id*. (citing *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 180-181 (2000)). This requirement assures that "there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party[.]" *Id*. (citing *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 221 (1974)).

Plaintiffs allege that Defendants' "actions have injured and continue to cause

injury to members of Plaintiff Judicial Watch who are registered to vote in the State of Indiana because [Defendants' actions are] undermining their confidence in the integrity of the electoral process and effectiveness of their vote." (Dkt. 1, ¶ 27). But nowhere do the Plaintiffs identify what actions caused the injury. As stated above, the only action addressed in the Complaint appears to be Plaintiffs' comparison of census data and voter registration rolls. Further, even assuming some particular action, there is no "injury" alleged. An alleged injury must be "(a) concrete and particularized and b) actual or imminent, not conjectural or hypothetical to pass constitutional muster." *Ass'n of Comm. Org. for Reform Now,* 178 F.3d 350 (5th Cir. 1999)(*quoting U.S. v. Student Challenging Regulatory Agency Procedures,* 412 U.S. 669, 689 n. 14, 93)(internal punctual omitted). Plaintiffs' injury is purely conjectural or hypothetical. While courts have held that no more must be "at stake in the outcome of an action than a fraction of a vote, a $5 fine and costs, and a $1.50 poll tax," *Id.,*Plaintiffs have alleged nothing more at stake than the alleged anxiety of their members. (Dkt. 1, ¶ 27). Thus, because Plaintiffs do not identify any concrete or particularized injury, they do not have standing, and thus their case should be dismissed.

Further, Plaintiff True the Vote has further alleged organizational injury as a result of Defendants' action by "impairing its ability to carry out [its] public interest mission." (Dkt. 1, ¶ 37). This "injury" fails to establish standing for the same reasons as does the alleged injury to members of Plaintiff Judicial Watch. In addition, Defendants fail to see how a suspicion of an injury impairs True the Vote's ability to carry out its mission. True the Vote has begged the question of injury – their assumption of a violation of the NVRA is their purported injury. Such an assumption is not sufficient for

standing, thus their claims should be dismissed.

### C. The Secretary of State should be dismissed as a defendant

Plaintiffs have improperly named the Indiana Secretary of State as a defendant. Plaintiffs' requested relief is limited to declarative and injunctive relief in relation to the NVRA. As the Secretary of State has no authority under Indiana law to enforce or ensure compliance with the NVRA, she should be dismissed as a defendant in this case.

Each state is required to "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under" the NVRA. 42 U.S.C. § 1973gg-8. Indiana jointly designated the co-directors of the Indiana Election Division "as the chief state election official responsible for the coordination of state responsibilities under NVRA." Ind. Code 3-7-11-1. The Secretary of State is not responsible for compliance with the NVRA.

Plaintiffs' characterization in their complaint of the Secretary of State's authority is misleading. Plaintiffs state that the Secretary of State "is responsible for overseeing elections through the Indiana Election Division, which is one of the four main divisions of the office of the Secretary of State." (Dkt. 1 ¶ 7.) This is erroneous. The Indiana Secretary of State is generally designated as the State's chief election official **"[e]xcept as provided by IC 3-7-11-1."** Ind. Code 3-6-3.7-1. As stated above, Indiana Code 3-7-11-1 jointly designates the co-directors of the Election Division as the chief election officers for purposes of the NVRA; therefore, the Election Division has *sole* authority for overseeing statewide matters for purposes of the NVRA. While there are areas where the

Election Division and Secretary of State responsibilities overlap,[4] the NVRA is not one such area. Plaintiffs have only requested declarative and injunctive relief under the NVRA. Pursuant to the NVRA and the Indiana Code, it is the Election Division – not the Secretary of State – who has sole statewide authority with respect to the NVRA. Thus, the Secretary of State should be dismissed from this case as a defendant.

### IV.    Conclusion

For the foregoing reasons, pursuant to Federal Rule of Procedure 12(b)(6), Judicial Watch and True the Vote's claims should be dismissed.

Respectfully Submitted,

GREGORY F. ZOELLER
Attorney General of Indiana
Atty No. 1958-98

Dated: August 2, 2012

By:   */s/ Jefferson S. Garn*
Jefferson S. Garn
Deputy Attorney General
Atty. No. 29921-49
I.G.C.S. – 5th Floor
302 W. Washington Street
Indianapolis, IN  46204
Telephone: (317) 232-6292
Fax:  (317) 232-7979

---

[4] For example the Secretary of State must "perform all duties required to be performed by the state of the chief state election official under" the Help America vote Act," but only with the consent of the co-directors of the Election Division.  Ind. Code 3-6-3.7-2.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of August, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to the counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**Paul J. Orfanedes**
JUDICIAL WATCH, INC.
porfanedes@judicialwatch.org

**David R. Langdon**
LANGDON LAW LLC
dlangdon@langdonlaw.com

**Chris Fedeli**
JUDICIAL WATCH, INC.
cfedeli@judicialwatch.org

**Joshua B. Bolinger**
LANGDON LAW LLC
jbolinger@langdonlaw.com

*/s/ Jefferson S. Garn*
Jefferson S. Garn
Deputy Attorney General

Office of the Indiana Attorney General
Indiana Government Center South, 5th Floor
302 W. Washington Street
Indianapolis, IN  46204-2770
Telephone:     (317) 232-6292
Fax:                (317) 232-7979
Email: jefferson.garn@atg.in.gov