UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JUDICIAL WATCH, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | 1:12-cv-800-WTL-TAB |
| ) | |
| J. BRADLEY KING, et al., ) | |
| ) | |
| Defendants. ) | |

### DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Defendant Judicial Watch, Inc. sent a letter to the Indiana Election Division stating that a comparison of census data and voter registration lists **suggests** that there may be violation of the National Voter Registration Act ("NVRA"). ECF 21-1. Judicial Watch, Inc. did not allege any specific violations of the NVRA, only suggesting that some counties in Indiana may be violating the NVRA. Included in the letter was a single sentence demanding unspecified documents related to NVRA requirements. *Id.* Plaintiffs now claim that this letter, with its mere suggestion of an NVRA violation, was sufficient to provide notice to the Election Division that a violation had taken place. In effect, Plaintiffs demanded, and continue to demand through this lawsuit, that the Election Division carry out an investigation based on Plaintiffs' mere suspicions. Nothing in the NVRA requires a state official to investigate mere suspicions of NVRA violations, and, specifically, nothing under Indiana law requires the Election Division to investigate a mere suspicion of a violation of the NVRA.

As explained in Defendants' Motion to Dismiss, Plaintiffs are seeking to use the discovery tools of a federal lawsuit to investigate their suspicion of a violation of the

1

NVRA. ECF 26, p. 7. Despite numerous provisions in the NVRA governing the conduct of state election officials under the NVRA, Plaintiffs have failed to provide one example of a violation of the NVRA.  Plaintiffs' Complaint is wholly devoid of any alleged facts that, even if true, would demonstrate that Respondents are in violation of the NVRA.

Plaintiffs also lack standing under the NVRA because they failed to state any real injury caused by Defendants' alleged actions.  Finally, because Plaintiffs seek injunctive relief under the NVRA, and the Indiana Secretary of State has no authority under Indiana law to ensure NVRA compliance, she should be dismissed as a defendant.

**I.      Plaintiffs failed to provide any notice of a violation of the NVRA**

Judicial Watch, Inc. sent a four page, singled spaced letter to Defendants on February 6, 2012 that did not specify *any* violation of the NVRA.  ECF No. 21-1.  As is clear from a review of the letter, this four page letter consists of a rote recitation of general NVRA obligations.  One paragraph of this letter compared the census data with voter registration rolls in certain counties. However, the letter did not allege one single specific violation. *Id.*, ECF 21, p. 9.

Prior to bringing a lawsuit, a private party who wishes to bring a lawsuit must "provide written notice of **the violation** to the chief election official of the State involved." 42 U.S.C. § 1973gg-9(b)(1) (emphasis added).  The purpose of the notice requirement is to "provide states in violation of the Act an opportunity to attempt compliance before facing litigation." *Assoc. of Community  Orgs. for Reform Now v. Miller,* 129 F.3d 833, 838 (6th Cir. 1997).  A conclusory letter that fails to specify any violations of the NVRA does not provide any opportunity for a state to address a purported violaton.  Plaintiffs appear to argue that there is an inherent nexus between

2

census data and voter registration lists.  In support of this contention, Plaintiffs reference the complaint filed against the State of Indiana in 2004.  ECF 26, p. 4.  Plaintiffs argument is misplaced.  The United States Department of Justice ("DOJ") complaint clearly alleges that the DOJ "**first raised** NVRA-related concerns" in an April 7, 2005 letter which referenced census data.  *Id.* (emphasis added).  However, this letter was only a preliminary and investigatory letter about certain concerns.  The DOJ's letter was not a letter written pursuant to 42 U.S.C. 1973gg-9(b)(1) that stated a violation.  Plaintiffs' argument suggesting that the DOJ letter stated a violation is simply wrong.  Plaintiffs tacit argument that their amorphous letter is sufficient under 42 U.S.C. § 1973gg-9(b)(1) because the Department of Justice sent a similar letter is baseless.  The DOJ, unlike private parties, is not required to provide notice to the State prior to bringing a civil action under the NVRA.  42 U.S.C. § 1973gg-9(a)-(b)(1).  Plaintiffs' argument that their letter is sufficient because it is similar to the DOJ letter only serves to underscore Plaintiffs' fundamental misunderstanding regarding the terms of the NVRA.

Plaintiffs seem to argue that courts can effectively ignore the clear requirements of 42 U.S.C. 1973gg-9(b)(1). ECF 26, p. 5.  Plaintiffs are correct that in *Broyles v. Texas*, the plaintiffs did not provide the State of Texas with any written notice of an NVRA violation prior to filing a lawsuit.  618 F.Supp.2d 661, 692 (2009); ECF 26, p. 6.  However, Plaintiffs ignore that the court found that the notice requirements under the NVRA are mandatory and dismissed the plaintiffs' claims under the NVRA.  *Broyles 618* F.Supp.2d at 692.

Moreover, Plaintiff True the Vote did not provide any notice at all.  Plaintiffs rely on *Assoc. of Community Orgs. for Reform Now v. Miller,* 129 F.3d 833, 838 (6th Cir.

1997), in support of their claim that True the Vote should not be required to file any notice at all. However, *Miller* is easily distinguishable. In *Miller*, the governor of the state categorically proclaimed that the state would refuse to comply with its obligations under the NVRA. In the face of such a proclamation by the state's highest executive officer, notice would clearly be futile. In this case, no Indiana elections official has refused to comply with the NVRA. Rather, the Election Division took its obligations under the NVRA seriously and rightly determined that Judicial Watch, Inc.'s letter did not state any violation of the NVRA.[1]

## II.     Plaintiffs failed to state a claim for any violation of Section 8 of the NVRA

Under Section 8 of the NVRA, each state must conduct a "general program that makes a reasonable effort to remove the names of" those no longer eligible to vote for reasons such as death or change of address. 42 U.S.C. § 1973gg-6(a)(4). As stated in Defendants Motion to Dismiss, even accepting that Plaintiffs claims regarding the census data and voter registration roll data are accurate (which they are not), Plaintiffs' allegations do not amount to a violation of the NVRA.

---

[1] Plaintiffs' implicit reliance on the consent decree entered into by the State of Indiana with the DOJ to support of their claim of an NVRA violation is erroneous. ECF 26, p. 4, 7. As Plaintiffs concede, the State of Indiana undertook a "comprehensive effort" to comply with the consent decree and the NVRA. *Id.,* p. 6. However, as Plaintiffs admit, the consent decree expired in 2009. *Id.,* p. 1. Plaintiffs only now reveal that the voter registration roll data they use as their sole basis for their claim of an NVRA violation is from 2010. *Id.* p. 5. Thus, their data are from approximately a year after the expiration of a consent decree expired -- a period Plaintiffs acknowledge involved a "comprehensive effort" to comply with the NVRA. Further, as 2010 was a federal election year, states must complete any systematic program to remove the names of ineligible voters from official lists of eligible voters not later than 90 days prior to the data of a primary or general election for Federal office. 42 U.S.C. § 1973gg-6(c)2(A). Given that Plaintiffs' data are from an election year when the Indiana Election Division was limited as to when they may conduct systematic programs, and that the data are from only a year after the State of Indiana's comprehensive efforts, Plaintiffs' demands are clearly unreasonable. In their zeal for Section 8 of the NVRA, Plaintiffs are demanding that Defendants ignore their obligations under the NVRA as a whole.

> A. **The accuracy of U.S. Census Data is Immaterial for the Purpose of Alleging a Violation of the NVRA has taken place**

For purposes of Defendants' Motion to Dismiss, Defendants do not dispute Plaintiffs' factual claim that the census data are correct. The NVRA issue is that deviation between census numbers and voter rolls is not an NVRA violation. Plaintiffs have utterly failed show how deviation between census data and voter rolls is a violation of the NVRA (because it is not). Whether or not the census data is accurate is not relevant. Plaintiffs argue that it would be an "impossibly high bar for lawsuits seeking to remedy violations of Section 8 of the NVRA if the plaintiffs bringing such lawsuits had to rely on something other than the most current Decennial U.S. census data and EAC [U.S. Election Assistance Committee] data available." ECF 26, p. 9. Plaintiffs are not being asked to meet an "impossibly high bar." Plaintiffs must simply allege what all Plaintiffs must allege – a violation of the law. Plaintiffs' utter failure to allege a violation of law dooms their Complaint.

> B. **Plaintiffs' failed to allege a violation of the Records Inspection Provision of NVRA § 8**

Plaintiffs maintain that Defendants have refused to provide Plaintiffs with access to public records maintained pursuant to the NVRA. ECF 26, p. 10. Plaintiffs cite *Project Vote/Voting for America, Inc. v. Long,* 752 F. Supp. 2d 697, 703 (E.D. Va. 2010), for the proposition that Plaintiffs "need show [no] more than that they sought and were denied specific agency records." ECF 26, p. 11. However, this is precisely what Plaintiffs have failed to do. Plaintiffs requested the kitchen sink through their vague request for "all pertinent records concerning 'the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency' of Indiana's

5

official eligible voter lists during the past 2 years." ECF 21 at Exhibit 1. Plaintiffs can point to nothing indicating they were denied access to "specific agency records" as required under the NVRA because Plaintiffs never requested any specific agency records. *Project Vote/Voting for America* at 703. "All pertinent records" is not a request for "specific agency records." Rather, "all pertinent records" is nothing more than a request that the Election Division hazard a guess regarding the documents sought – which is effectively no request at all. Plaintiffs' allegations even if true do not show that they have been denied access to records maintained under the NVRA.

### C. Plaintiffs fail to allege a violation of the list maintenance obligations of NVRA § 8

Plaintiffs have failed to state a claim for a violation of the voter list maintenance obligations of Section 8 of the NVRA. Plaintiffs claim that the comparison of voter rolls and census data in certain Indiana counties is adequate to state a claim of a violation. ECF 26, p. 12. In fact, Plaintiffs claim that "a single county with more registered voters than the total voting age population ought to be sufficient to give rise to a claim for a violation of" Section 8 of the NVRA. *Id.* Plaintiffs' reliance solely on a comparison of two separate sets of numbers, numbers gathered and maintained under separate statutory requirements, is misplaced.

Far from "compelling" evidence of a violation, even if true, a comparison of the two sets of numbers alone does not establish that any violation of the NVRA occurred. No provision of the NVRA is violated because a deviation with census numbers exists.[2]

---

[2] Plaintiffs here again try to impute noncompliance by referencing the consent decree between the DOJ and Indiana. ECF 26, p. 13. However, as noted above, Plaintiffs elsewhere acknowledge that, far from an

6

### III. Judicial Watch, Inc. and True the Vote lack standing

Both Judicial Watch, Inc. and True the Vote lack standing. The members Judicial Watch, Inc. purports to represent have not alleged an injury. Thus, Judicial Watch, Inc. lacks standing. Further, True the Vote lacks organizational standing because they fail to allege an injury because of alleged NVRA violations.

#### A. Judicial Watch, Inc. Lacks Standing

Plaintiffs argue that Judicial Watch, Inc. has standing for a violation of their members' "statutory rights" under the NVRA and that the Defendants are "undermining" their members' "confidence in the legitimacy of the elections held in the State of Indiana and thereby burdening their right to vote." ECF 26, p. 15.[3]

In their response, Plaintiffs for the first time claim standing by way of a statutory right under the NVRA. *Id.* Plaintiffs cite to paragraph 26 of the Complaint, but that paragraph contains only a vague reference to an interest in the accuracy of official lists of eligible voters. ECF 1 ¶ 26. However, the NVRA does not provide that private citizens have a statutory right to "accurate" lists. The case law cited by Plaintiffs does not support their position that members of Judicial Watch, Inc. have standing through the organization by way of a statutory right to accurate voter lists. In *Charles H. Wesley Educ. Foundation, Inc. v. Cox*, 408 F.3d 1349, the plaintiffs either alleged that they had had their federal registration forms refused by the state, or that the organization was impeded in attempts to carry out voter registration program. As the court noted, voter

---

example of noncompliance, the consent decree was part of a "comprehensive effort to comply with the NVRA." *Id.,* p. 6. It is unclear how Plaintiffs reconcile this "comprehensive effort" with their allegation that data from one year later offers "compelling" evidence of a failure by the State to undertake reasonable voter maintenance activities.

[3] It should be noted that Plaintiffs repeatedly cite to *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 197 (2008), s*ee, e.g.* ECF 26, p. 17, where Indiana's commitment to the integrity of the vote is made abundantly clear by its defense of the State's Voter ID law.

registration programs and the federal registration forms are both specific rights enumerated in the NVRA. *Id.* at 1352-3. *Cox* says nothing about a right to accurate voter lists because such a private right does not exist.[4] There simply is no statutory right to "accurate" voter registration rolls or is even such accuracy defined. Thus, Plaintiffs have failed to establish the statutory right they now claim.

Further, Plaintiff Judicial Watch, Inc. fails to demonstrate that their members' right to vote has been burdened in any way that would provide the organization standing. Again, Plaintiffs nowhere claim that any members have been injured. Plaintiffs' sole claim is that their members are anxious. However, the mental state of Plaintiffs' members is not a claim recognized by the NVRA. Their claim is purely conjectural or hypothetical, and this is no injury at all. *Ass'n of Comm. Org. for Reform Now*, 178 F.3d 350 (5th Cir. 1999).

Under Plaintiffs' erroneous view of standing, injury under the NVRA could be based on hearing about the possibility of a violation, and would result in standing in lawsuits if, for example, someone heard that someone else, somewhere, may have been denied a registration form. Of course this is not the law. Plaintiffs do not have standing based on vague allegations of anxiousness.

### B. True the Vote Lacks Organizational Standing

In response to Defendants' argument that True the Vote lacks organizational standing, Plaintiffs merely restate their purely circular standing claim stated in their complaint. It appears that True the Vote standing argument is that, as an organization,

---

[4] As discussed in the brief in support of the motion to dismiss, the NVRA provides numerous safeguards requiring a state to keep an ineligible voter on the rolls for at least a short time. ECF 21, p. 9; 42 U.S.C. § 1973gg-6(a)(4).

the organization representatives inspect voter registration rolls for accuracy. ECF 1 at ¶¶ 32-37, ECF 26, p. 18. According to Plaintiffs, a mere suspicion of an inaccurate list impedes the organization from carrying out the organizational mission – to inspect voter registration rolls for accuracy. *Id.* at 19.

Defendants agree that *Common Cause of Colorado v. Buescher,* 750 F.Supp.2d 1259, is instructive in terms of analyzing Plaintiffs' claim of injury. Plaintiffs in *Common Cause* alleged that the organization's members' new voter registrations were cancelled by the state. *Id.* This state action allegedly prevented Plaintiffs from carrying out the mission of the organization by forcing the organizations to "divert resources to counteract [] illegal acts." *Id. quoting Florida State Conference of N.A.A.C.P. v. Browning,* 522 F3d 1153, 1165 (11th Cir. 2008). However, in this case, Plaintiffs do not claim that any funds have been diverted away from an essential purpose of the organization to counteract the alleged violations by Defendants, and thus fail to demonstrate standing by True the Vote. *Id.*

### IV.     Secretary of State Lawson Should Be Dismissed

Plaintiffs' response to the Defendants' Motion to Dismiss underscores that Secretary of State Connie Lawson should be dismissed as a Defendant. Plaintiffs' only argument that the Secretary should be a party is that the Secretary of State's office "was directly involved in the correspondence between Judicial Watch, Inc. and the State of Indiana prior to the filing of the lawsuit." ECF 26, p. 20. Judicial Watch, Inc. sent the letter to the Secretary of State and the Indiana Election Division. ECF 21-1. Thus, it was Judicial Watch, Inc.'s action that precipitated this so-called direct involvement. Judicial Watch, Inc. misunderstood the clear Indiana law, which jointly designates the co-

9

directors of the Election Division as the chief election officers for purposes of the NVRA. Indiana Code § 3-7-11-1.  The Secretary is expressly excluded as having enforcement authority over NVRA matters, and thus has no authority to enforce NVRA provisions in Indiana.  Ind. Code 3-7-11-1.  While Plaintiffs claim an overlap between duties under HAVA (statutory obligations which *are* shared by the Secretary of State and the Election Division, Ind. Code 3-6-4.2-2.5), Plaintiffs made no claim in their Complaint for relief under HAVA.  Thus, as the Secretary of State is statutorily unable to provide the relief requested by Plaintiffs, she should be dismissed as a Defendant in this matter.

## V. Conclusion

For the reasons stated in Defendants' Motion to Dismiss, pursuant to Federal Rule of Procedure 12(b)(6), Judicial Watch and True the Vote's claims should be dismissed.

Respectfully Submitted,

GREGORY F. ZOELLER
Attorney General of Indiana
Atty No. 1958-98

Dated:  August 2, 2012

By:  */s/ Jefferson S. Garn*
Jefferson S. Garn
Deputy Attorney General
Atty. No. 29921-49

I.G.C.S. – 5th Floor
302 W. Washington Street
Indianapolis, IN  46204
Telephone: (317) 232-6292
Fax:  (317) 232-7979

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of September, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to the counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

| | |
|---|---|
| **Paul J. Orfanedes** <br> JUDICIAL WATCH, INC. <br> porfanedes@judicialwatch.org | **Chris Fedeli** <br> JUDICIAL WATCH, INC. <br> cfedeli@judicialwatch.org |
| **David R. Langdon** <br> LANGDON LAW LLC <br> dlangdon@langdonlaw.com | **Joshua B. Bolinger** <br> LANGDON LAW LLC <br> jbolinger@langdonlaw.com |

*/s/ Jefferson S. Garn*
Jefferson S. Garn
Deputy Attorney General

Office of the Indiana Attorney General
Indiana Government Center South, 5th Floor
302 W. Washington Street
Indianapolis, IN  46204-2770
Telephone:     (317) 232-6292
Fax:                 (317) 232-7979
Email: jefferson.garn@atg.in.gov