UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **JUDICIAL WATCH, INC., et al.,** | ) |
| | ) |
|   Plaintiffs, | ) |
| | ) |
|     vs. | ) CAUSE NO. 1:12-cv-800-WTL-TAB |
| | ) |
| **J. BRADLEY KING, et al.,** | ) |
| | ) |
|   Defendants. | ) |

## ENTRY ON MOTION TO DISMISS

This cause is before the Court on the Defendants' motion to dismiss (dkt. no. 20). The motion is fully briefed and the Court, being duly advised, **DENIES** the motion for the reasons set forth below. The Court also **DENIES AS MOOT** the Plaintiffs' Motion for Oral Argument (dkt. no. 27).

### I.  PLAINTIFFS' ALLEGATIONS

Plaintiff Judicial Watch, Inc. ("Judicial Watch") describes itself as "a non-profit organization that seeks to promote integrity, transparency, and accountability in government and fidelity to the rule of law," while Plaintiff True the Vote describes itself as "a non-profit organization that seeks to restore truth, faith, and integrity to local, state, and federal elections." Complaint at ¶¶ 4, 5. The two groups bring this action for declaratory and injunctive relief pursuant to the National Voter Registration Act of 1993 ("NVRA"), alleging that the Defendants have violated two provisions of that statute. First, they allege that the Defendants have failed to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" voter deaths and residence changes as required by 42 U.S.C. § 1073gg-6(a)(4) (hereinafter referred to as "the List Maintenance

Claim"). They also allege that the Defendants have failed to "make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" as required by 42 U.S.C. § 1937gg-6(i) (hereinafter referred to as "the Records Claim").

The Plaintiffs note that the State of Indiana entered into a consent decree in 2006 in response to a lawsuit brought by the United States alleging non-compliance with the NVRA. The Plaintiffs allege that the State "made substantial efforts to clean its voter rolls in 2006" in compliance with the consent decree, but that those compliance efforts have not continued through the present. The lack of compliance is demonstrated, according to the Complaint, by a comparison of 2010 Census data and voter registration data, which indicates that the number of persons registered to vote exceeded the total voting population in twelve Indiana counties and exceeded 90% of the total voting population in another 26 Indiana counties.

In February 6, 2012, Judicial Watch sent a letter outlining these facts to then-Indiana Secretary of State Charlie White and Defendants J. Bradley King and Trent Deckard, Co-Directors of the Indiana Election Division. The letter stated that "[t]his letter serves as advance notice that a lawsuit may be brought against you if you do not take action to correct this apparent violation of [the NVRA] within 90 days." The letter also requested that the recipients "make available to us all pertinent records concerning 'the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency' of Indiana's official eligible voter lists during the past two years." In response, Defendants King and Deckard issued the following order:

> IT IS THEREFORE ORDERED . . . That Co-Directors having determined that the complaint or grievance filed by Justice Watch, Inc. [sic.] with the Election Division . . . does not set forth a violation of the NVRA . . . even if the facts set

2

>forth in the complaint or grievance are assumed to be true, hereby **DISMISS** the complaint or grievance.

The Plaintiffs then filed this lawsuit.

## II. DISCUSSION

The Defendants move to dismiss the Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Complaint fails to state a claim for which relief can be granted. In reviewing a Rule 12(b)(6) motion, the Court "must accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff." *Agnew v. National Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). For a claim to survive a motion to dismiss for failure to state a claim, it must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (omission in original). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Agnew*, 683 F.3d at 334 (citations omitted). A complaint's factual allegations are plausible if they "raise the right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). With that standard in mind, the Court will address the arguments made by the Defendants.

### A. Notice Requirement

The Defendants first argue that the Plaintiffs failed to comply with the NVRA's notice requirement, which provides, in relevant part:

>(1) A person who is aggrieved by a violation of this subchapter may provide written notice of the violation to the chief election official of the State involved.
>
>(2) If the violation is not corrected within 90 days after receipt of a notice under paragraph (1) . . . the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.

3

42 U.S.C. § 1973gg-9(b). The Defendants argue that the pre-suit letter sent by Judicial Watch ("the Letter") failed to satisfy this requirement in two respects. First, they note that the letter does not state unequivocally that a violation of the NVRA *has occurred*; rather, it speaks of an "apparent violation," states that the available information "strongly suggests" non-compliance with the NVRA, and uses language such as "we believe" that a violation has occurred. Despite these word choices, the Court finds that the Letter satisfied the pre-suit notice requirement, inasmuch as the Letter, when read as a whole, makes it clear that Judicial Watch is asserting a violation of the NVRA and plans to initiate litigation if its concerns are not addressed in a timely manner.

The Defendants also argue that the Letter fails to provide sufficient details about any alleged violation of the NVRA to satisfy the notice requirement.[1] It is not surprising that the Letter does not contain any detailed allegations, inasmuch as the NVRA provision at issue does not contain any detailed requirements; it simply requires "reasonable effort" on the part of the State.[2] The Letter sets forth the reasons for Judicial Watch's conclusion that the Defendants

---

[1] The Defendants suggest, in passing, that the allegations in the Complaint fail to state a claim due to the same lack of specificity. The Defendants fail to develop this argument—i.e., they fail to make any attempt to apply the relevant standard to the facts alleged in the Complaint—and therefore the Court declines to consider it. *See, e.g., United States v. Tockes,* 530 F.3d 628, 633 (7th Cir. 2008) ("Unsupported and undeveloped arguments ... are considered waived.").

[2] The Defendants characterize the Plaintiffs' Complaint as asserting that the Defendants violated the NVRA by failing "to act if the registered voters reach a certain percentage of the population as listed in census data" and argue—correctly—that the NVRA contains no such "triggering mechanism" and note—again correctly—that "there is no mention of census data in the NVRA at all." Defendants' Brief at 3. The Defendants' characterization misses the mark, however. The Plaintiffs actually allege that because the Defendants have failed to comply with the NVRA, the voter registration rolls in some Indiana counties are inaccurate, and simply point to the discrepancy between the Census data and the voter registration rolls in those counties as *evidence of* that inaccuracy.

have failed to comply with that general requirement. The Court believes that was sufficient to satisfy the notice requirement of the NVRA with regard to Judicial Watch's claims.[3]

As the Defendants correctly note, the Letter was sent by Judicial Watch, and there is no suggestion that Plaintiff True the Vote served notice of any kind prior to filing this suit. However, the Court agrees with the approach of the Sixth Circuit Court of Appeals in *Association of Community Organizations for Reform Now v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997), in which that court declined to dismiss certain plaintiffs from a suit under the NVRA for failing to provide notice where the state defendant had received notice from another plaintiff in the suit and the receipt of duplicative notices from the additional plaintiffs would not have furthered the purpose of the NVRA's notice requirement. Accordingly, the Court will not dismiss Plaintiff True the Vote for failing to provide the Defendants with pre-suit notice.

**B. Standing**

The Defendants next argue that the Plaintiffs lack standing to assert the claims in the Complaint.[4]

> The doctrine of standing . . . requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction. He bears the burden of showing that he has standing for each type of relief sought. To seek injunctive relief, a plaintiff must show that he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury. This requirement assures that there is a real need to exercise

---

[3] The Court notes that the Defendants do not allege that the notice requirement was not satisfied with regard to the Records Claim; their argument addresses only the List Maintenance Claim.

[4] The Court notes that only Article III standing—not prudential standing—is at issue. The fact that the NVRA provides that anyone who is "aggrieved" by a violation of its provisions may bring suit demonstrates "a congressional intent to cast the standing net broadly—beyond the common-law interests and substantive statutory rights upon which 'prudential' standing traditionally rested." *Federal Election Comm. v. Akins*, 524 U.S. 11, 19 (1998).

the power of judicial review in order to protect the interests of the complaining party.

*Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal quotation marks and citations omitted).

As noted above, the Plaintiffs assert two distinct violations of the NVRA. With regard to the Records Claim, the Defendants do not—and cannot—assert that the Plaintiffs lack standing. *See*, *e.g.*, *Federal Election Comm'n v. Akins*, 524 U.S. 11, 24-25 (finding standing to bring suit to redress an "informational injury . . . directly related to voting, the most basic of political rights," namely the inability to obtain information that allegedly was required by statute to be made publicly available).

Of course, "[a] plaintiff cannot sidestep Article III's requirements by combining a request for injunctive relief for which he has standing with a request for injunctive relief for which he lacks standing." *Salazar v. Buono*, 130 S.Ct. 1803, 1826 (2010). Therefore, the Plaintiffs must also demonstrate that they have standing to pursue their List Maintenance Claim in order for that claim to proceed.

As an initial matter, the Court notes that

> each element of Article III standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. Thus, while a plaintiff must set forth by affidavit or other evidence specific facts to survive a motion for summary judgment, and must ultimately support any contested facts with evidence adduced at trial, at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.

*Bennett v. Spear*, 520 U.S. 154, 167-68 (1997) (internal quotation marks and citations omitted). While the standard for granting a motion to dismiss has changed since *Bennett*, the general rule remains the same: at this stage in the litigation, the Plaintiffs must only make allegations

regarding standing sufficient to withstand a motion to dismiss, which means that they must demonstrate only that it is plausible that they have standing.[5]

With regard to Defendant Judicial Watch, the Court finds that it has satisfied this burden by alleging that its members who are registered to vote in Indiana[6] are injured by Indiana's failure to comply with the NVRA list maintenance requirements because that failure "undermin[es] their confidence in the legitimacy of the elections held in the State of Indiana and thereby burden[s] their right to vote." While the Defendants argue that this "allegation, and thus their injury, is purely speculative, and thus insufficient to meet the standard required for standing," Defendants' Brief at 12, the Court disagrees. There can be no question that a plaintiff who alleges that his right to vote has been burdened by state action has standing to bring suit to redress that injury. There is also no question that "'the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.'" *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 (1964)). As the Supreme Court has recognized,

> Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy. Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government. Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised.

---

[5] If a plaintiff survives a motion to dismiss on standing grounds, the issue may, of course, be revisited on summary judgment and/or at trial if the defendant believes that the evidence does not support the plaintiff's allegations.

[6] The Defendants do not dispute, and the Court readily finds, that Judicial Watch has sufficiently alleged that it has associational standing to pursue its claim on behalf of its members who are registered to vote in Indiana as long as those members would have standing to sue individually. *See generally Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977) ("Thus we have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.").

7

*Id.* Indeed, in defending its "Voter ID Law" before the Supreme Court, the State of Indiana itself cited its "interest in protecting public confidence 'in the integrity and legitimacy of representative government,'" an interest that the Court noted had "independent significance" beyond the interest in preventing voter fraud "because it encourages citizen participation in the democratic process." *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 197 (2008). Judicial Watch alleges that the confidence of its members who are registered to vote in Indiana in the integrity of the electoral process has been undermined by the Defendants' failure to comply with the list maintenance requirements of the NVRA. If the state has a legitimate interest in preventing that harm from occurring, surely a voter who alleges that such harm has befallen him or her has standing to redress the cause of that harm.

      Plaintiff True the Vote argues that it has organizational standing to sue on its own behalf because the Defendants' failure to comply with the NVRA list maintenance requirements has impaired its ability to further its "essential purposes and goals." Specifically, True the Vote alleges that one of the largest of its undertakings as an organization is to conduct a "voter list verification program," which entails comparing voter registration rolls with other publicly available information to identify apparent inaccuracies and deficiencies, which are then made the subject of a citizen complaint with the appropriate election officials. "If a State does not satisfy its voter list maintenance obligations" under the NVRA, True the Vote alleges, "then, not only are the voter lists obtained by True the Vote inaccurate and unreliable, but True the Vote cannot use its limited resources to make the lists as accurate and current as possible," but, rather, "it can only hope to make up for a small part of the State's failure to fulfill its legal obligations." Plaintiffs' Response at 19.

The Court finds that these allegations are sufficient to demonstrate that it is plausible that True the Vote has suffered injury because of the Defendants' alleged failure to comply with the NVRA and therefore has standing to bring its List Maintenance Claim. True the Vote's allegations regarding standing are analogous to those found sufficient by the Supreme Court in *Havens Realty Corporation v. Coleman*:

> Plaintiff HOME has been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services. Plaintiff HOME has had to devote significant resources to identify and counteract the defendant's [ sic.] racially discriminatory steering practices.

455 U.S. 363, 378 (1982). As the Supreme Court noted, "If, as broadly alleged, petitioners' steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low-and moderate-income homeseekers, there can be no question that the organization has suffered injury in fact." *Id.* Here, too, if True the Vote's ability to carry out its mission of cleaning up voter registration rolls has been "perceptibly impaired" by the Defendants' alleged statutory violation, True the Vote has suffered injury. Because True the Vote has made a plausible allegation that it has been so impaired, at this stage it has satisfied its burden with regard to standing.

### C. Secretary of State

Finally, the Defendants argue that Defendant Connie Lawson, who is sued in her official capacity as Indiana's Secretary of State, is not a proper defendant and should be dismissed from this action. The Defendants' argument is based on the fact that the NVRA requires each state to "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under" its provisions, 42 U.S.C. § 1973gg-8, and, the Defendants assert, Indiana has by statute designated the co-directors of the Indiana Election Division, both of whom are named as defendants in this case. The Court is not convinced that

9

the only proper defendant in a case brought under the NVRA is the designated chief election official.  There is a more fundamental problem with the Defendants' argument, however.  The Indiana statute cited by the Defendants does not reference the co-directors of the Indiana Election Division; rather, it references the "co-directors of the commission."  Ind. Code 3-7-11-1.  "Commission," in turn, is defined as referring to "the Indiana election commission established by IC 3-6-4.1-1," an entity that is entirely separate from the Election Division, which is established by Ind. Code 3-6-4.2-1 and referred to throughout Title 3 as the "election division."

Of course, it is entirely possible that what the statute means and what it says are two different things.[7]  Perhaps there is even legislation that clarifies the issue.  The parties have not directed the Court to it, however.  And given the fact that all three of the Defendants are represented by the same counsel, there does not appear to be any harm in leaving the question of who is and who is not a proper defendant for another day, when the parties can present a more complete record and make a more complete argument that addresses both the apparent disparity in the statute and the actual role of the Secretary of State, if any, in implementing the relevant provisions of the NVRA in the State of Indiana.

### III.  CONCLUSION

For the reasons set forth above, the Defendants' motion to dismiss is **DENIED** in its entirety.  The Plaintiffs' motion for oral argument is **DENIED AS MOOT**.

---

[7]The Court notes that this is likely, in that the Commission does not appear to have "co-directors" while the Election Division does.

SO ORDERED: 12/10/2012

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification