**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC.,<br>and TRUE THE VOTE, | ) | |
| | ) | |
| | ) | |
| *Plaintiffs,* | ) | Case No. 1:12-cv-800-WTL-TAB |
| v. | ) | |
| | ) | |
| J. BRADLEY KING, *et al.* | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## DEFENDANTS TRENT DECKARD AND J. BRADLEY KING'S ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Defendants Trent Deckard and J. Bradley King, Co-Directors of the Indiana Election Division, by counsel, pursuant to Rule 33 of the Federal Rules of Civil Procedure, respond to Plaintiffs' First Set of Interrogatories, as follows:

### GENERAL STATEMENT

By responding to these Interrogatories, Defendants do not waive their right to object to the use of the following responses at any time, on any ground, in this or any other proceeding. Further, Defendants have not completed preparation for trial. Thus, these responses are limited to the information known to Defendants at this time and do not constitute a waiver of Defendants' right to introduce additional evidence at trial. Defendants reserve the right to supplement or amend these responses in the event further information is obtained and to supplement or amend these responses based on information that may be obtained during the pendency of this case.

Exhibit
1

## GENERAL OBJECTIONS APPLICABLE TO ALL INTERROGATORIES

1.     Defendants object to each Interrogatory to the extent it seeks information protected from disclosure by the deliberative process privilege, the attorney/client privilege, attorney work product doctrine, and/or any other applicable privilege.  Unless expressly indicated otherwise, the provision of any such protected information shall be deemed inadvertent and shall not be construed to constitute a waiver, limited or otherwise, of any applicable privilege or protection.

2.     Defendants object to each Interrogatory to the extent it seeks information prepared or obtained by Defendants, Defendants' attorneys, or Defendants' representatives in anticipation of litigation or in preparation for trial.

3.     Defendants object to each Interrogatory to the extent each seeks information which might disclose the mental impressions, conclusions, opinions, or legal theories of Defendants, Defendants' attorneys, or Defendants' representatives.

4.     Defendants object to each Interrogatory to the extent each seeks information not within the knowledge, custody, possession, or control of Defendants.

5.     Defendants object to each Interrogatory to the extent each seeks information which is neither relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence.

6.     Defendants object to each Interrogatory to the extent each is vague, ambiguous, overly broad, argumentative, without reasonable particularity, and not reasonably limited in time, place or scope.

7.     Defendants object to each Interrogatory to the extent each seeks information which is as readily available to Plaintiffs as it is to the Defendants, information which has already been produced or information otherwise in the possession of Plaintiffs.

8.     Defendants object to each Interrogatory to the extent each seeks information which is unavailable to Defendants after reasonable inquiry or information for which inquiry would be unduly burdensome.

9.     Defendants object to each Interrogatory to the extent that Plaintiffs purport to impose obligations which are greater than or inconsistent with the obligations specified under the Federal Rules of Civil Procedure, applicable local rules, Court orders herein, and applicable case law.

10.     Inadvertent disclosure, if any, of information subject to any privilege or protection, including without limitation, the attorney-client privilege or work product doctrine, shall not constitute waiver of any such privilege.

11.     Defendants have not completed their investigation related to this action, and have not completed preparation for this trial.  Consequently, these responses are limited to the documents and information known to Defendants at this time.

## INTERROGATORIES

### County Officials Coordinating With the State

**INTERROGATORY NO. 1:**  Identify, by name and title, the County Voter Registration Officers pursuant to Indiana Code ("IC") § 3-7-12-1 with whom you or your office communicates regarding coordination between the Indiana State Department of Health and the County Voter Registration Officers as required by 42 U.S.C. § 1973gg-6(a)(4)(A) and IC § 3-7-45-2.1(a) for each of the following counties: (a) Scott, (b) Spencer, (c) Crawford, (d) Warrick,

(e) Tipton, (f) Franklin, (g) Warren, (h) Union, (i) Orange, (j) Brown, (k) Hancock, and (l)

Newton.

**RESPONSE NO. 1:**

Scott County-Missy Applegate, Circuit Court Clerk, 1 E McClain Avenue-Suite 120, Scottsburg, IN 47170
Spencer County-Gay Ann Harney, Circuit Court clerk, PO Box 12, 200 Main Street, Rockport, in 47635
Crawford County-Edna Brown, Circuit Court Clerk, PO Box 375, 715 Judicial Plaza Drive, English, IN 47118
Warrick County-Sarah Redman, Circuit Court Clerk, One County Square-Suite200, Warrick County Judicial Center, Boonville, IN 47601
Tipton County-Debbie Tragesser, Circuit Court Clerk, 101 E Jefferson Street, Tipton, IN 46072
Franklin County-Karla Bauman, 459 Main Street, Brookville, IN 47012
Warren County-Deb Hiatt, Circuit Court Clerk, 125 N Monroe Street-Suite11, Williamsport, IN 47993
Union County-Susan Ray, Circuit Court Clerk, 26 W Union Street, Liberty, IN 47353
Orange County-Roger Purkhiser, Circuit Court Clerk, 1 Court Street, Paoli, IN 47454
Brown County-Beth Mulry, Circuit Court Clerk, PO Box 85, 20 E Main Street, Nashville, IN 47448
Hancock County-Marcia Moore, Circuit Court Clerk, 9 E Main Street, Room 213, Greenfield, IN 46140
Newton County-Janice Wilson, Circuit Court Clerk, PO box 49, 201 N Third Street, Kentland, IN 47951

**INTERROGATORY NO. 2:** Identify, by name and title, the County Voter Registration Officers pursuant to IC § 3-7-12-1 with whom you or your office communicates regarding information received from the United States Attorney for the purposes described in 42 U.S.C. § 1973gg-6(g)(5) and IC § 3-7-46-3(b) for each of the following counties: (a) Scott, (b) Spencer, (c) Crawford, (d) Warrick, (e) Tipton, (f) Franklin, (g) Warren, (h) Union, (i) Orange, (j) Brown, (k) Hancock, and (l) Newton.

**RESPONSE NO. 2:**

The answer to Interrogatory # 1 in incorporated herein in answer to this interrogatory.

## State Voter Registration and Election Administration Procedures

**INTERROGATORY NO. 3:** Describe all efforts your office has made to conduct a program for the correction of records or removal of names from the voter registration lists for individuals who have moved, using the mailed notices and cards described in 42 U.S.C. §§ 1973gg-6(c)(1)(A)(i) and 1973gg-6(d)(2)(A), and following the procedures described in 42 U.S.C. § 1973gg-6(e).

**RESPONSE NO. 3:**

Defendants object to this interrogatory for the reason it seeks information protected from disclosure by the deliberative process privilege, the attorney/client privilege, and attorney work product doctrine. Defendants object to this interrogatory because it seeks information which might disclose the mental impressions, conclusions, opinions, or legal theories of Defendants, Defendants' attorneys, or Defendants' representatives. Defendants also object to this interrogatory because it is vague, ambiguous, overly broad, and without reasonable particularity. Further, Defendants object to this interrogatory for the reason that it seeks information for which inquiry would be unduly burdensome.

Subject to and without waiving the objections, Defendants state that, in regards to the following responses, it should be noted that the Indiana Election Division does NOT have statutory responsibility to change a voter's record. The responsibility and authority to make changes to a voter's individual registration record is conducted by the "county voter registration office". See 3-7-26.3-8, 9, and 10; IC 3-5-2-16.2.

The Indiana Election Division does provide guidance to local election officials on voter registration responsibilities in a variety of ways: Online web-ex training sessions; written publications, including manuals and standard operating procedures; in-person training sessions; and daily access to Election Division staff by phone, email, and fax. The Election Division staff has "read only" access to a county's voter registration records, but can neither make changes to a voter record nor compel a county voter registration official to make changes to a voter record.

(A) In 2006 the Indiana Election Division and Secretary of State conducted a mailing to every registered voter in Indiana to identify voters who have moved then sent out follow-up mailings consisting of notices and cards described in 1973gg-6(d)(2)(A). Defendants have been unable to identify the citation to 42 U.S.C. §§ 1973gg-6(c)(1)(A)(i).

The State of Indiana authorizes counties to conduct a county-wide mailing to every registered voter in the county with follow-up mailings using the mailed notices and cards described in 1973gg-6(d)(2)(A). See IC 3-7-38.2

The State of Indiana also authorizes counties to utilize other types of mailings returned by the United States Post Office as undeliverable (voter acknowledgement cards, poll location notices and jury service notices, for example) with follow-up mailings using the mailed notices and cards described in 1973gg-6(d)(2)(A). See IC 3-7-38.2

The Indiana Election Division hosts and attends conferences multiple times throughout an election year and instructs local election officials on the process for marking voters as "inactive" when an address confirmation mailing is returned by the United States Post Office as undeliverable or goes unresponded to for a period exceeding 30 days. To supplement this instruction, the Indiana Election Division has published the Voter Registration Manual and Standard Operating Procedures that outlines this procedure as guidelines for county registration officials. We make these publications available online and in a hard copy at all conferences as well as on an as-needed basis. The Indiana Election Division makes its Co-Directors and counsel available to all local election officials as well as party officials for daily instruction into the process of cancelling an ineligible voter's record or updating a voter's existing record based upon the notices described in 42 U.S.C. 1973gg-6(d)(2)(A). See Standard Operating Procedures VRG 58.2

(B) In reference to the question regarding the state's practice provided for in 42 U.S.C. § 1973gg-6(d)(2)(A), Indiana law requires all voters (active and inactive), regardless of whether they vote in-person absentee; absentee by mail/fax/email; or in-person on election day to confirm their address in writing PRIOR to voting.

(C) In reference to the procedures outlined in 42 U.S.C. §1973gg-6(e) for voters who have moved either (1) within the same jurisdiction as the polling place; or (2) outside the jurisdiction of their former precinct but within the same county and same congressional district, the Indiana General Assembly has permitted these voters to vote at the polling place of the voter's former precinct of residence. See IC 3-10-12 for those voters who move within the same county and same congressional district. See IC 3-7-39-7 for voters who move within the precinct.

For either type of move, the voter can either make an oral or written affirmation before the officials at the polling place before being permitted to vote. All affirmations are subject to challenge, and the challenged voter is then eligible for a provisional ballot, which is referred to the county election board for determination of eligibility. Following all elections, the Indiana Election Division provides guidance to the counties on updating a voter's record from information contained in a pollbook regarding a voter who has changed residences. See Standard Operating Procedure VRG 37.1; 47.1; and 53.2 for written guidance provided by the Indiana Election Division. The Indiana Election Division provides this guidance at every annual conference hosted by the Election Division as well as various conferences hosted by the Clerk's Association and the State Board of Accounts at which the Election Division attends and presents.

6

**INTERROGATORY NO. 4:** Describe additional efforts you have made to conduct a program for the removal of ineligible voters from the official lists of eligible voters by reason of a change in the residence of registrants from one Indiana county to another, including but not limited to efforts to update the statewide voter registration database by researching or facilitating County research into official information provided in writing by voters that calls into question those voters' continued eligibility to vote at their currently registered Indiana addresses (*e.g.* jury declinations or county or state tax filings which claim non-resident status).

**RESPONSE NO. 4:**

Defendants object to this interrogatory for the reason it seeks information protected from disclosure by the deliberative process privilege, the attorney/client privilege, and attorney work product doctrine. Defendants object to this interrogatory because it seeks information which might disclose the mental impressions, conclusions, opinions, or legal theories of Defendants, Defendants' attorneys, or Defendants' representatives. Defendants also object to this interrogatory because it is vague, ambiguous, overly broad, and without reasonable particularity. Further, Defendants object to this interrogatory for the reason that it seeks information for which inquiry would be unduly burdensome.

Subject to and without waiving the objection, Defendants state that, beginning on January 1, 2006, Indiana counties have had access to and been required to use the state's electronic voter registration record referred to as First Tuesday or Statewide Voter Registration System (SVRS) to input and update voter records. The SVRS complies with the requirement in 42 U.S.C. 15483

The state designed and built an electronic database that permits counties to view other counties' records. The system was designed to identify if a registered voter moves to another jurisdiction and registers to vote in the new county of residence. If the system identifies a possible match, the new county must make the initial determination on the applicant's eligibility to register. Once the new county determines an applicant is eligible to register to vote, SVRS automatically sends a notice the county of former residence requesting that the former county release the voter record or permit it to be merged with the new county's record. If a merge occurs, the voter's record in the county of former residence will be cancelled, and the voter's name will no longer appear on the rolls of registered voters in the county of former residence.

Indiana implements NVRA's requirement for cancelling a voter's registration "at the request of the registrant" as authorized by 42 U.S.C. § 1973gg-6(a)(3)(A) as incorporated into state law at IC 3-7-43 and provides forms and guidance with respect to these provisions. In addition, counties may incorporate a request to cancel into a jury questionnaire or other document. Some counties send VRG-14 Authorization to Cancel Registration form based upon information provided to a

county voter registration official from various sources (the family of a voter who has moved away or information from a College or University, for example).

Indiana registration forms provide a space where an individual can provide their prior address and the forms contain the following statement to be signed by the registration applicant: "I authorize my voter registration at any other address to be cancelled."

In addition, see answer to Interrogatory No. 3 which is incorporated herein by reference in response to his Interrogatory.

**INTERROGATORY NO. 5:** Describe all efforts you have made to obtain the computerized statewide voter registration lists of other U.S. states, including but not limited to the states of Ohio, Illinois, Kentucky, and Michigan, for the purposes of updating the Indiana computerized statewide voter registration to remove registrations of individuals who have moved out-of-state, and identify all states with which you have made such collaborative efforts.

**RESPONSE NO. 5:**

Defendants object to this interrogatory for the reason it seeks information protected from disclosure by the deliberative process privilege, the attorney/client privilege, and attorney work product doctrine. Defendants object to this interrogatory because it seeks information which might disclose the mental impressions, conclusions, opinions, or legal theories of Defendants, Defendants' attorneys, or Defendants' representatives. Defendants also object to this interrogatory because it is vague, ambiguous, overly broad, and without reasonable particularity. Further, Defendants object to this interrogatory for the reason that it seeks information for which inquiry would be unduly burdensome.

Subject to and without waiving the objection, Defendants state that the Indiana Election Division made inquiries to the States of Florida, Michigan, Ohio, Illinois, Kentucky and Kansas by written correspondence. Copies of the signed letters to Florida and Michigan are attached. The Indiana Election Division has not been able to locate signed copies of the other correspondence.

In addition, Indiana Election Division staff participated in telephone calls with election officials in other states regarding matching Indiana voter registration data with the voter registration data of other states.

At this time, the Indiana Election Division is considering both technical and legal issues involved in providing voter registration information to other states for the purpose of identifying and removing registrations of individuals who have moved out of the State of Indiana.

**INTERROGATORY NO. 6:**  Describe all efforts you have made to obtain databases maintained by the federal government for the purposes of removing ineligible voters, including but not limited to the U.S. Department of Homeland Security's Systematic Alien Verification for Entitlements ("SAVE") database and the U.S. Social Security Administration's Social Security Death Index ("SSDI") database for the purpose of conducting a program for removing ineligible voters from the official lists of eligible voters.

**RESPONSE NO. 6:**

Defendants object to this interrogatory for the reason it seeks information protected from disclosure by the deliberative process privilege, the attorney/client privilege, and attorney work product doctrine. Defendants object to this interrogatory because it seeks information which might disclose the mental impressions, conclusions, opinions, or legal theories of Defendants, Defendants' attorneys, or Defendants' representatives. Defendants object to this interrogatory because it seeks information which is neither relevant to the claims or defenses or the parties, nor is it reasonably calculated to lead to the discovery or admissible evidence. Defendants also object to this interrogatory because it is vague, ambiguous, overly broad, and without reasonable particularity. Further, Defendants object to this interrogatory for the reason that it seeks information for which inquiry would be unduly burdensome.

Subject to and without waiving the objection, Defendants state that, while the Indiana Election Division obtained the U.S. Social Security Administration's Social Security Index for the purpose of conducting a program of removing ineligible voters, it has not done so in the time period identified in Instruction number 1 for Plaintiffs' First Set of Interrogatories.

**INTERROGATORY NO. 7:**  Describe all efforts you have made to conduct a program to remove names from the voter registration lists based on the State Indiana's records on criminal convictions and incarcerations, identifying each State and County organization with which you communicate for this purpose.

**RESPONSE NO. 7:**

Defendants object to this interrogatory for the reason it seeks information protected from disclosure by the deliberative process privilege, the attorney/client privilege, and attorney work product doctrine. Defendants object to this interrogatory because it seeks information which

might disclose the mental impressions, conclusions, opinions, or legal theories of Defendants, Defendants' attorneys, or Defendants' representatives.  Defendants also object to this interrogatory because it is vague, ambiguous, overly broad, and without reasonable particularity. Further, Defendants object to this interrogatory for the reason that it seeks information for which inquiry would be unduly burdensome.

Subject to and without waiving the objection, Defendants state that the state designed the SVRS system to connect to the state's department of corrections database and notify counties daily when a registered voter is sentenced following conviction of a crime.  See Standard Operating Procedures VRG 12.1 and 39.1.

In addition to daily notices from our Department of Correction, Indiana requires all county sheriffs to provide quarterly reports to the county voter registration office for all those individuals incarcerated in a local facility following conviction. IC 3-7-46-6 The IED provides guidance to the county voter registration officials on these quarterly reports. See 2012 Voter Registration Manual, page 25.

**INTERROGATORY NO. 8:**  Identify all outside consultants, firms, contractors, agents, or other outside parties you have hired to assist with, advise on, or administer in any way, your election administration and voter registration list maintenance responsibilities under Section 8 of the NVRA.

**RESPONSE NO. 8:**

Quest Information Systems, 5975 Castle Creek Parkway N. Dr., Suite 200, Indianapolis, IN 46250.

Baker Tilly Virchow Krause, LLP, Baker Tilly Virchow Krause, LLP 205 N Michigan Avenue, Chicago, IL  60601-5927

**State Voter Registration and Election Administration Personnel and Communications**

**INTERROGATORY NO. 9:**  Identify all persons in your office who are responsible for communicating directly with the County Voter Registration Officers for each purpose described in Interrogatories 1 through 8 above.

**RESPONSE NO. 9:**

The Indiana Election Division was created by statute according to IC 3-6-4.2 and is lead by two Co-Directors, nominated by the two major party state chairman and appointed by the Governor. Each Co-Director employs staff. The Indiana Election Division employs Quest Information Systems and Baker Tilly Virchow Krause for a variety of purposes, but occasionally to communicate directly with a county.

The following is a list of Indiana Election Division employees of the Democratic Party Co-Director who communicate with county voter registration officials as described in Interrogatory No. 9:
Trent Deckard, Co-Director, Indiana Election Division (2011-Present)
Pamela Potesta, Co-Director, Indiana Election Division (2007-2010)
Kristi Robertson, Co-Director, Indiana Election Division (2006-2007)
Michelle Brzycki, Special Projects Coordinator, Indiana Election Division (2006-2008, 2011-Present)
Leslie Barnes, Co-Counsel, Indiana Election Division (2007-Present)
Cody Kendall, Co-Counsel, Indiana Election Division (2006-2007)

The following is a list of Indiana Election Division employees of the Republican Party Co-Director who communicate with county voter registration officials as described in Interrogatory No. 9:
J. Bradley King, Co-Director, Indiana Election Division
Dale Simmons, Co-Counsel, Indiana Election Division
Lori Clark, Special Projects Coordinator, Indiana Election Division

Address for all persons currently working for the Indiana Election Division is: 302 West Washington Street, #E204, Indianapolis, IN 46204. Addresses for former employees are unknown.

**INTERROGATORY NO. 10:** Identify the person or persons with whom you or your office communicates within the offices of each Indiana governmental organization, foreign State government, United States governmental office, or other entity for the purposes described in Interrogatories 3 through 8 above.

**RESPONSE NO. 10:**

Defendants object to this interrogatory because it is vague, ambiguous, overly broad, and without reasonable particularity.

Subject to and without waiving the objection, Defendants list the following persons:

Contact for Department of Correction-Jeanne McFarland, Senior Programmer, IGCS 302 West Washington Street, E327, Indianapolis, IN 46204. Jmcfarland@idoc.in.gov 317-232-5400

**INTERROGATORY NO. 11**: Describe the job responsibilities of each person in your office

identified in response to Interrogatory 9.

**RESPONSE NO. 11**:

**Co-Director**-carries out statutory duties outlined in IC 3-6-4.2-12 and elsewhere throughout
Title 3; publishes manuals, standard operating procedures, memos for use by local election
officials, candidates, and the public; advises the Indiana Election Commission and carries out
policies, decisions, and recommendations of the Commission; staffs the Indiana Recount
Commission as needed; responds to inquiries from media, local election officials, party officials,
the media, and the general public.

**Special Projects Coordinator**-Carries out requests of the Co-Director, with an emphasis on
voter registration and precinct mapping issues.

**Co-Counsel**-Provides legal advice to the Co-Director and carries out requests of Co-Director.

**INTERROGATORY NO. 12**: Describe the polices in place by the State to ensure and audit the

adequate performance of job responsibilities described in response to Interrogatory 11

immediately above.

**RESPONSE NO. 12**:

Each Co-Director provides direct supervision over staff under their control.

**Miscellaneous**

**INTERROGATORY NO. 13**: Describe the efforts of you or your office in providing

information and ensuring the accuracy of data provided to the U.S. Election Assistance

Commission for its Reports to Congress pursuant to 42 U.S.C. § 1973gg-7(a)(3) and 11 C.F.R. §

9428.7.

**RESPONSE NO. 13**:

Defendants object to this interrogatory for the reason it seeks information protected from
disclosure by the deliberative process privilege, the attorney/client privilege, and attorney work
product doctrine.  Defendants object to this interrogatory because it seeks information which

might disclose the mental impressions, conclusions, opinions, or legal theories of Defendants, Defendants' attorneys, or Defendants' representatives. Defendants also object to this interrogatory because it is vague, ambiguous, overly broad, and without reasonable particularity. Further, Defendants object to this interrogatory for the reason that it seeks information for which inquiry would be unduly burdensome.

The Indiana Election Division compiles the information requested by the U.S. Election Assistance Commission and, after review of the information, submits the information to the U.S. Election Assistance Commission. See Response to Plaintiff's First Request for Production of Documents No. 11.

**INTERROGATORY NO. 14:** Describe the purpose of providing conflicting opinions to

County Voter Registration Officers at page 21 of the "2012 Indiana Voter Registration

Guidebook" identified in Defendants' Initial Disclosures concerning removal or non-removal of

registrations for single voters registered under two different addresses.

**RESPONSE NO. 14:**

Defendants object to this interrogatory for the reason it seeks information protected from disclosure by the deliberative process privilege, the attorney/client privilege, and attorney work product doctrine. Defendants object to this interrogatory because it seeks information which might disclose the mental impressions, conclusions, opinions, or legal theories of Defendants, Defendants' attorneys, or Defendants' representatives. Defendants also object to this interrogatory because it is vague, ambiguous, overly broad, and without reasonable particularity.

Subject to and without waiving the objection, Defendants state that the purpose was to indicate the Co-Directors have a difference of opinion on an issue. Given the Indiana Supreme Court's decision in *Sammons v. Conrad,* if the Co-Directors are unable to agree on an issue, then the Indiana Election Division cannot take official action. 740 N.E.2d 114 (Ind. 2000). Illustrating a difference of opinion when it exists permits the local election officials to make an informed decision.

**INTERROGATORY NO. 15:** Describe the purpose, in the sample jury questionnaire appended

to the "2012 Indiana Voter Registration Guidebook" identified in Defendants' Initial

Disclosures, of asking prospective jurors whether they wish to remain registered to vote in a

county where they have affirmed they do not reside.

**RESPONSE NO. 15:**

Defendants object to this interrogatory for the reason it seeks information protected from disclosure by the deliberative process privilege, the attorney/client privilege, and attorney work product doctrine. Defendants object to this interrogatory because it seeks information which might disclose the mental impressions, conclusions, opinions, or legal theories of Defendants, Defendants' attorneys, or Defendants' representatives. Defendants also object to this interrogatory because it is vague, ambiguous, overly broad, and without reasonable particularity.

Indiana law permits a county to cancel a voter's registration record upon written request of the voter, not simply due to statement of non-residence. So including the question on the jury questionnaire permits the questionnaire to serve as a request to cancel one's voter registration record. See IC 3-7-43-2.

**INTERROGATORY NO. 16:** Describe the coordination within the Indiana Election Division and between your office and the Office of the Indiana Secretary of State Connie Lawson for voter list maintenance efforts conducted under the NVRA, including but not limited to such efforts which utilize the statewide voter registration database maintained by the Secretary of State under HAVA.

**RESPONSE NO. 16:**

Defendants object to this interrogatory for the reason it seeks information protected from disclosure by the deliberative process privilege, the attorney/client privilege, and attorney work product doctrine. Defendants object to this interrogatory because it seeks information which might disclose the mental impressions, conclusions, opinions, or legal theories of Defendants, Defendants' attorneys, or Defendants' representatives. Defendants also object to this interrogatory because it is vague, ambiguous, overly broad, and without reasonable particularity.

According to IC 3-7-26.3-3, the Co-Directors of the Indiana Election Division and the Secretary of State (often referred to as the CORE team) have worked together to design, implement and administer the SVRS. The CORE team generally meets on a bi-weekly basis regarding issues related to the SVRS and to discuss other issues in which their responsibility overlaps.

14

I declare under penalty of perjury that the factual
statements set forth in the foregoing responses are
true and correct:

Trent Deckard
Co-Director Indiana Election Division

J. Bradley King
Co-Director Indiana Election Division

Respectfully submitted,

GREGORY F. ZOELLER
Indiana Attorney General
Attorney No. 1958-98

By:

Jefferson S. Garn
Deputy Attorney General
Attorney No. 29921-49

15

**CERTIFICATE OF SERVICE**

I do hereby certify that a copy of the foregoing has been duly served upon the following

parties and/or counsel of record, by United States mail, first-class postage prepaid this _14th_ day

of February 2013:

Paul J. Orfanedes
Chris Fedeli
JUDICIAL WATCH, INC.
425 Third Street S.W., Suite 800
Washington D.C. 20024

David R. Langdon
Joshua B. Bolinger
LANGDON LAW LLC
11175 Reading Road, Suite 104
Cincinnati, OH 45241

Jefferson S. Garn
Deputy Attorney General

Office of the Indiana Attorney General
Indiana Government Center South, 5th Floor
302 W. Washington Street
Indianapolis, IN  46204-2770
Telephone:     (317) 232-6292
Fax:            (317) 232-7979
Email: jefferson.garn@atg.in.gov

 **STATE OF INDIANA**

Todd Rokita, Secretary of State

J. Bradley King, Co-Director
Pamela Potesta, Co-Director

Indiana Election Division
302 West Washington Street, Room E204
Indianapolis, Indiana 46204-2767
Phone: (317) 232-3939
Fax: (317) 233-6793

March 3, 2009

Donald Palmer, Director of Elections
Division of Elections, Dept. of State
R.A. Gray Building, Room 316
500 S. Bronough Street
Tallahassee, FL 32399-0250

Dear Mr. Palmer,

The Indiana Election Division is interested in exploring interstate duplicate checking across the Florida and Indiana electronic statewide voter lists. Would your office would be willing to meet with Indiana's Statewide Voter Registration System vendor and project manager to discuss the logistics and technical aspects of this initiative?

Specifically, we hope to meet with your office in the upcoming weeks to discuss the following questions:

1. What data elements could and would be shared with Indiana?
2. Is there a request or application process Indiana would need to undergo to obtain Florida voter registration information for the purposes of interstate data matching? Are there restrictive legal requirements related to obtaining a copy of Florida's statewide voter list?
3. What costs would be associated with receiving Florida's voter registration data? Is there a one time fee, or would the fee apply to each updated file Florida and Indiana would share?
4. Would Florida be able to share with Indiana a data dictionary or sample data extract so that Indiana could learn more about the file format structure used in your statewide voter registration system?
5. Which team members from Florida would be appointed to manage the initiative?

Indiana is required to pursue an interstate duplicate checking program during 2009 per the Indiana Election Division's Written Plan for Compliance to Consent Decree and Order approved in United States of America v. State of Indiana, et al. (Civil Action 1:06-cv-1000-RLY-TAB). Consequently, Indiana would be happy to coordinate a meeting at your convenience.

Sincerely,

J. Bradley King

Co-Director, Indiana Election Division

Pamela Potesta

Co-Director, Indiana Election Division



**STATE OF INDIANA**

Todd Rokita, Secretary of State

J. Bradley King, Co-Director
Pamela Potesta, Co-Director

Indiana Election Division
302 West Washington Street, Room E204
Indianapolis, Indiana 46204-2767
Phone: (317) 232-3939
Fax (317) 233-6793

March 3, 2009

Christopher M. Thomas, Director
Bureau of Elections
Richard H. Austin Building, 1st Floor
430 W. Allegan Street
Lansing, MI 48918

Dear Mr. Thomas,

The Indiana Election Division was happy to hear that the Michigan State Bureau of Elections may be interested in exploring interstate duplicate checking across the Michigan and Indiana electronic statewide voter lists. Based on recent conversations, it is our understanding that your office would be willing to meet with Indiana's Statewide Voter Registration System vendor and project manager to discuss the logistics and technical aspects of this initiative.

Specifically, we hope to meet with your office in the upcoming weeks to discuss the following questions:

1. What data elements could and would be shared with Indiana?
2. Is there a request or application process Indiana would need to undergo to obtain Michigan voter registration information for the purposes of interstate data matching? Are there restrictive legal requirements related to obtaining a copy of Michigan's statewide voter list?
3. What costs would be associated with receiving Michigan's voter registration data? Is there a one time fee, or would the fee apply to each updated file Michigan and Indiana would share?
4. Would Michigan be able to share with Indiana a data dictionary or sample data extract so that Indiana could learn more about the file format structure used in your statewide voter registration system?
5. Which team members from Michigan would be appointed to manage the initiative?

As you may recall, Indiana is required to pursue an interstate duplicate checking program during 2009 per the Indiana Election Division's Written Plan for Compliance to Consent Decree and Order approved in United States of America v. State of Indiana, et al. (Civil Action 1:06-cv-1000-RLY-TAB). Consequently, Indiana would be happy to coordinate a meeting at your convenience.

Sincerely,

J. Bradley King

Co-Director, Indiana Election Division

Pamela Potesta

Co-Director, Indiana Election Division

December 20, 2012

David E. Farrell,
Deputy Assistant SOS & Director of Elections
180 E. Broad St., 15th Floor
Columbus, OH 43215

Dear Mr. Farrell,

The Indiana Election Division is interested in exploring interstate duplicate checking across the Ohio and Indiana electronic statewide voter lists.  Would your office would be willing to meet with Indiana's Statewide Voter Registration System vendor and project manager to discuss the logistics and technical aspects of this initiative?

Specifically, we hope to meet with your office in the upcoming weeks to discuss the following questions:

1.  What data elements could and would be shared with Indiana?
2.  Is there a request or application process Indiana would need to undergo to obtain Ohio voter registration information for the purposes of interstate data matching?  Are there restrictive legal requirements related to obtaining a copy of Ohio's statewide voter list?
3.  What costs would be associated with receiving Ohio's voter registration data?  Is there a one time fee, or would the fee apply to each updated file Ohio and Indiana would share?
4.  Would Ohio be able to share with Indiana a data dictionary or sample data extract so that Indiana could learn more about the file format structure used in your statewide voter registration system?
5.  Which team members from Ohio would be appointed to manage the initiative?

Indiana is required to pursue an interstate duplicate checking program during 2009 per the Indiana Election Division's Written Plan for Compliance to Consent Decree and Order approved in United States of America v. State of Indiana, et al. (Civil Action 1:06-cv-1000-RLY-TAB). Consequently, Indiana would be happy to coordinate a meeting at your convenience.

Sincerely,

December 20, 2012

Daniel W. White, Executive Director
State Board of Elections
1020 S. Spring St.
Springfield, IL 62704

Dear Mr. White,

The Indiana Election Division was happy to hear that the Illinois State Board of Elections may be interested in exploring interstate duplicate checking across the Illinois and Indiana electronic statewide voter lists.  Based on recent conversations with Kyle Thomas, it is our understanding that your office would be willing to meet with Indiana's Statewide Voter Registration System vendor and project manager to discuss the logistics and technical aspects of this initiative.

Specifically, we hope to meet with your office in the upcoming weeks to discuss the following questions:

1.  What data elements could and would be shared with Indiana?
2.  Is there a request or application process Indiana would need to undergo to obtain Illinois voter registration information for the purposes of interstate data matching?  Are there restrictive legal requirements related to obtaining a copy of the Illinois statewide voter list?
3.  What costs would be associated with receiving Illinois voter registration data?  Is there a one time fee, or would the fee apply to each updated file Illinois and Indiana would share?
4.  Would Illinois be able to share with Indiana a data dictionary or sample data extract so that Indiana could learn more about the file format structure used in your statewide voter registration system?
5.  Which team members from Illinois would be appointed to manage the initiative?

As you may recall, Indiana is required to pursue an interstate duplicate checking program during 2009 per the Indiana Election Division's Written Plan for Compliance to Consent Decree and Order approved in United States of America v. State of Indiana, et al. (Civil Action 1:06-cv-1000-RLY-TAB).  Consequently, Indiana would be happy to coordinate a meeting at your convenience.


Sincerely,

December 20, 2012

Sarah Ball Johnson, Executive Director
State Board of Elections
140 Walnut St.,
Frankfort, KY 40601

Dear Ms. Ball Johnson,

The Indiana Election Division was happy to hear that the Kentucky State Board of Elections is interested in exploring interstate duplicate checking across the Kentucky and Indiana electronic statewide voter lists. Based on recent conversations, it is our understanding that your office would be willing to meet with Indiana's Statewide Voter Registration System vendor and project manager to discuss the logistics and technical aspects of this initiative.

Specifically, we hope to meet with your office in the upcoming weeks to discuss the following questions:

1. What data elements could and would be shared with Indiana?
2. Is there a request or application process Indiana would need to undergo to obtain Kentucky voter registration information for the purposes of interstate data matching? Are there restrictive legal requirements related to obtaining a copy of Kentucky's statewide voter list?
3. What costs would be associated with receiving Kentucky's voter registration data? Is there a one time fee, or would the fee apply to each updated file Kentucky and Indiana would share?
4. Were there any 'lessons learned' during past interstate duplicate checking efforts conducted with other States that Kentucky would recommend we employ?
5. Would Kentucky be able to share with Indiana a data dictionary or sample data extract so that Indiana could learn more about the file format structure used in your statewide voter registration system?
6. Which team members from Kentucky would be appointed to manage the initiative?

As you may recall, Indiana is required to pursue an interstate duplicate checking program during 2009 per the Indiana Election Division's Written Plan for Compliance to Consent Decree and Order approved in United States of America v. State of Indiana, et al. (Civil Action 1:06-cv-1000-RLY-TAB). Consequently, Indiana would be happy to coordinate a meeting at your convenience.

Sincerely,

December 20, 2012

Brad Bryant, Deputy Assistant for Elections
120 SW 10th Ave.
First Floor, Memorial Hall
Topeka, Kansas 66612-1594

Dear Mr. Bryant,

The Indiana Election Division was happy to hear that the Kansas State Board of Elections may be interested in exploring interstate duplicate checking across the Kansas and Indiana electronic statewide voter lists. Based on recent conversations, it is our understanding that your office would be willing to meet with Indiana's Statewide Voter Registration System vendor and project manager to discuss the logistics and technical aspects of this initiative.

Specifically, we hope to meet with your office in the upcoming weeks to discuss the following questions:

1. What data elements could and would be shared with Indiana?
2. Is there a request or application process Indiana would need to undergo to obtain Kansas voter registration information for the purposes of interstate data matching? Are there restrictive legal requirements related to obtaining a copy of Kansas's statewide voter list?
3. What costs would be associated with receiving Kansas's voter registration data? Is there a one time fee, or would the fee apply to each updated file Kansas and Indiana would share?
4. Were there any 'lessons learned' during past interstate duplicate checking efforts conducted with other States that Kansas would recommend we employ?
5. Would Kansas be able to share with Indiana a data dictionary or sample data extract so that Indiana could learn more about the file format structure used in your statewide voter registration system?
6. Which team members from Kansas would be appointed to manage the initiative?

As you may recall, Indiana is required to pursue an interstate duplicate checking program during 2009 per the Indiana Election Division's Written Plan for Compliance to Consent Decree and Order approved in United States of America v. State of Indiana, et al. (Civil Action 1:06-cv-1000-RLY-TAB). Consequently, Indiana would be happy to coordinate a meeting at your convenience.

Sincerely,