**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., and | ) | |
| TRUE THE VOTE, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. 1:12-cv-800-WTL-TAB |
| | ) | |
| v. | ) | |
| | ) | |
| J. BRADLEY KING, TRENT DECKARD, | ) | |
| and CONNIE LAWSON, in their official | ) | |
| capacities, | ) | |
| | ) | |
| *Defendants*. | ) | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Judicial Watch, Inc. ("Judicial Watch") and True the Vote, by counsel and

pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56-1(b), respectfully

submit this Brief in Opposition to Defendants' Motion for Summary Judgment (ECF No. 71).

Also in accordance with Local Rule 56-1(b), Plaintiffs submit with this Brief a Responsive

Statement of Material Facts in Dispute ("Responsive SOF"). As set forth herein, Defendants

have failed to carry their burden and are not entitled to judgment as a matter of law.

**Introduction**

A failed effort to maintain voter rolls does not constitute a reasonable effort under the

NVRA. Indiana's Summary Judgment Brief succeeds mainly in demonstrating that Indiana's

limited list maintenance efforts were ineffective. The Brief does not entitle the state to relief in

this lawsuit. Furthermore, contrary to Indiana's arguments, the "reasonable effort" requirement

in NVRA Section 8 has a specific meaning, and Indiana's interpretation of Section 8 is not

entitled to deference. Furthermore, Indiana's attempt to demonstrate that its voter rolls are

1

accurate relies on irrelevant data.  Because Indiana's data is irrelevant, it is also not entitled to summary judgment on the alternative basis that Plaintiffs have not proven Indiana's voter rolls are inaccurate.

Indiana's arguments that the Plaintiffs lack standing or cannot meet their burden to show injury are unsupported by law or fact.  Finally, Indiana cannot evade its obligation to make records available under the NVRA by simply refusing or ignoring requests, and its argument that the law allows it to do so is unpersuasive.  As Indiana has failed to demonstrate that it is entitled to judgment as a matter of law on any element of the litigation, its Motion should be denied in its entirety.

## RESPONSIVE STATEMENT OF MATERIAL FACTS IN DISPUTE

Pursuant to Local Rule 56-1(b), Plaintiffs hereby respond as follows to Indiana's "Statement of Uncontested Facts" submitted with its Summary Judgment Brief (ECF No. 71).

A.    Indiana's Assertions About Its List Maintenance Mischaracterize Facts and Law

1.    Object, as this paragraph consists of a conclusion of law instead of facts. Otherwise admitted that the Co-Directors of the Indiana Election Division are responsible for Indiana's efforts under the NVRA, but denied as to the characterization that the Indiana Secretary of State is not also responsible.  Plaintiffs' Brief in Support of Motion for Summary Judgment, ECF No. 69 at 2, n2.

2.    Object, as this paragraph consists of a conclusion of law instead of facts. Otherwise admitted that the Indiana General Assembly has passed certain laws dealing with list maintenance, but denied with respect to the characterization that responsibility for voter list maintenance is a matter of state law instead of federal law.  Plaintiffs' Brief, ECF No. 69 at 1-2.

3.     Admitted with respect to the description of the Indiana Election Commission as divided between Republicans and Democrats, except object to the meaningless signifiers "perfectly balanced" and "bipartisan agency" which contribute nothing to the Court's understanding of the relevant facts.  Also admitted that, during the relevant period, the Co-Directors could not undertake list maintenance actions unless they both agreed to do so. Plaintiffs' Statement of Material Facts Not in Dispute ("SOF"), ECF No. 69 at 6-7, ¶¶ 2-3.

4.     Object, as the phrase "multi-faceted approach" is meaningless and vague and fails to illuminate anything useful to the Court.  Otherwise denied as to the effectiveness of Indiana's list maintenance approach, and denied that this paragraph materially demonstrates Indiana's satisfaction of NVRA Section 8.  Plaintiffs' SOF, ECF No. 69 at 7-8, ¶¶ 5-10, and at 12-13, ¶¶ 33, 35.

5.     Denied that any of the minimal list maintenance activities described in this paragraph were effective or that they materially demonstrate Indiana's satisfaction of NVRA Section 8, but otherwise admitted that Indiana undertook the minimal activities described in this paragraph.  Plaintiffs' SOF, ECF No. 69 at 7-13, ¶¶ 4-35.

6.     Object, as the phrases "works closely with its vendors" and "take advantage of the opportunity to provide feedback" are undefined characterizations which are too vague to be supported by the factual record cited, and in any event contribute nothing to the Court's understanding of the facts.  Otherwise denied, as Indiana's maintenance and use of the Statewide Voter Registration System (SVRS) has not been effective in ensuring accurate voter rolls are maintained, and so does not demonstrate Indiana's satisfaction of NVRA Section 8.  Plaintiffs' SOF, ECF No. 69 at 7-8, ¶¶ 5-10, and at 12-13, ¶¶ 33, 35.

7.      Object, the phrase "should be used" is vague and undefined and appears to constitute a conclusion of law instead of a statement of fact.  Otherwise denied that Indiana's use of the SVRS or attempts to coordinate state efforts were successful in maintaining accurate voter rolls, and denied that any of the statements in this paragraph materially demonstrate Indiana's satisfaction of NVRA Section 8.  Admitted that the U.S. Attorney provides information to Indiana and that three Indiana state agencies are electronically linked to SVRS.  Plaintiffs' SOF, ECF No. 69 at 7-12, ¶¶ 4-29, and at 12-13, ¶¶ 33-35.

8.      Object, as the phrase "works with the counties" is too vague and ambiguous to be supported by the factual record cited, and in any event contributes nothing to the Court's understanding of the facts.  Admitted that Co-Director King characterized Indiana's communications with counties as encouraging them to ask questions, and admitted that Indiana conducted training conferences, but denied that these facts materially demonstrate Indiana's satisfaction of NVRA Section 8.  Plaintiffs' SOF, ECF No. 69 at 7-8, ¶¶ 5-10, at 11, ¶ 26-29, and at 12, ¶ 34.

9.      Objection, no evidence could support any conclusion about how important the Indiana Election Division "considers" training to be, as this supposition is too vague to be a fact. The evidence can only support facts about what the Co-Directors and staff of the Division actually did or attempted to do.  Further object that the phrases "continues to evolve" and "providing more detailed information" are vague and ambiguous characterizations which cannot possibly be sufficiently supported by a factual record, and in any event are not sufficiently supported here.  Admitted that Indiana conducted some training conferences prior to the 2006 Consent Decree, but denied that this materially demonstrates Indiana's satisfaction of NVRA Section 8.  Plaintiffs' Brief, ECF No. 69 at 5.

10.     Objection, the phrase "some activities" is too vague to constitute a statement of fact.  Admitted that Indiana held conferences after 2009, and admitted that Indiana did not otherwise continue the list maintenance activities specified in the Consent Decree.  Plaintiffs' Brief, ECF No. 69 at 5; Plaintiffs' SOF, ECF No. 69 at 10, ¶ 24, at 11, ¶ 26-29, and at 12, ¶ 34.

11.     Objection, the term "encourages" is vague and not specifically supported by the evidence cited in this paragraph.  Furthermore, denied.  The evidence cited for this paragraph does not support the fact that the Indiana Election Division has "encouraged" other Indiana "state agencies" to take list maintenance actions.  The evidence only supports the fact that Indiana worked with one state agency on one occasion – the Indiana Department of Health – and not multiple state "agencies."  Furthermore, the evidence cited in this paragraph otherwise relates only to discussions between the Co-Directors and Indiana local election officials, not between the Co-Directors and Indiana state agencies.  Plaintiffs' Opp. Appx. Exh. 1, King Tr. at 82:16 to 83:16.

12.     Objection, no evidence could support any conclusion about what the Indiana Election Division "understands its role" to be, as this supposition is too vague to be a fact.  The evidence can only support facts about what the Co-Directors and staff of the Division did or attempted to do.  Furthermore, denied.  The two Co-Directors of the Indiana Election Division both communicated different preferences as to which list maintenance programs they wished to implement in order to comply with NVRA Section 8.  Plaintiffs' SOF, ECF No. 69 at 6-7, ¶ 3, and at 9, ¶¶ 15, 16, 18.

13.     Objection, the phrase "strenuously urged" is a characterization not supported by the evidence cited in this paragraph.  Otherwise admitted that Co-Director King used the word "strenuously" to describe communications with one Indiana county about list maintenance.

5

14.     Admitted.

15.     Objection, the phrase "does what it can" is too imprecise and vague to constitute a statement of fact.  Denied as to the characterization that the Indiana Election Division lacked funding to perform adequate list maintenance, when no evidence is cited demonstrating the Indiana Election Division could not have used its existing funds more efficiently or productively, or that the Election Division could not have reallocated resources to ensure it was in compliance with all federal laws.  Also denied as to the characterization that Indiana may permissibly evade federal law through budgeting decisions, or that the money dedicated to list maintenance was necessarily being spent wisely and effectively.  By enacting NVRA Section 8, Congress decided that States need to effectively conduct certain activities in order to maintain the confidence of the American public in the integrity of federal elections, including certain activities which may require spending money, and Congress is permitted to make that decision under the Constitution.  *See* below, Section I.B., pp. 14-17; U.S. Constitution, art. 1, § 4, cl. 1; Plaintiffs' Brief, ECF No. 69 at 1-2.  Admitted that Indiana has not conducted a statewide mailing since 2006 to identify voters who have moved.

16.     Object, this paragraph constitutes pure speculation as to why Indiana did not comply with Section 8 of the NVRA, and such speculation is non-factual and also irrelevant. Denied as to the characterization that the Indiana Election Division lacked funding to perform list maintenance, when no evidence is cited demonstrating the Indiana Election Division could not have used its existing funds more efficiently or productively, or that the Election Division could not have reallocated resources to ensure it was in compliance with all federal laws.  Also denied as to the characterization that Indiana may permissibly evade federal law through budgeting decisions, or that the money dedicated to list maintenance was necessarily being spent

wisely and effectively.  *See* ¶ 15 *supra*.  Admitted that the record reflects that the Co-Directors

occasionally spoke with members of the Indiana General Assembly concerning list maintenance.

17.     Objection, this paragraph contains pure speculation about why the Indiana

General Assembly did or did not adopt certain legislation.  Admitted that SEA 519 and HEA

1391, both adopted in May of 2013, direct both the Indiana Election Division and the Indiana

Secretary of State's Office to undertake certain list maintenance activities.  Denied as to the

characterization that the Indiana Election Division lacked funding to perform list maintenance,

when no evidence is cited demonstrating the Indiana Election Division could not have used its

existing funds more efficiently or productively, or that the Election Division could not have

reallocated resources to ensure it was in compliance with all federal laws.  Also denied as to the

characterization that Indiana may permissibly evade federal law through budgeting decisions, or

that the money dedicated to list maintenance was necessarily being spent wisely and effectively.

*See* ¶ 15 *supra*.

18.     Objection, this paragraph uses the vague and essentially meaningless phrase

"decentralized and bipartisan" which contributes nothing to the Court's understanding of the

facts.  Denied as to the characterization that Indiana may permissibly evade federal law for

reasons of promoting bipartisanship.  Admitted that the two Co-Directors of the Indiana Election

Division both communicated different preferences as to which list maintenance programs they

wished to implement.  *See* ¶ 15 *supra*;  Plaintiffs' SOF, ECF No. 69 at 6-7, ¶ 3, and at 9, ¶¶ 15,

16, 18.

19.     Objection.  This paragraph presents nothing more than a conclusion of law – one

which is also an inaccurate characterization of NVRA Section 8 as requiring States to undertake

a potentially infinite number of list maintenance activities – and so is denied.  Plaintiffs' Brief, ECF No. 69, at 1-3, 16-23.

20.     Object, as no evidence could support any conclusion about what the Indiana Election Division "recognizes" as a "potential benefit" of any particular course, as these suppositions are too vague to be facts.  The evidence only supports conclusions about what the Co-Directors and staff of the Division did or attempted to do.  Denied as to the characterization that Indiana may permissibly evade federal law for reasons of promoting bipartisanship, and denied as to the characterization that providing conflicting "perspectives" to counties is a "potential benefit."  *See* ¶ 15 *supra*; Plaintiffs' SOF, ECF No. 69 at 11, ¶¶ 26, 28.

21.     Although it is irrelevant to any claim or defense presented in this case, admitted that the two Co-Directors estimate they often agree, but object that this paragraph contributes nothing to the Court's understanding of relevant facts.  Plaintiffs' SOF, ECF No. 69 at 6-7, ¶ 3, and at 9, ¶¶ 15, 16, 18.

22.     Object, as the phrases "decentralized character" and "application of any such local perspective" are so vague as to be virtually meaningless in this context, and are therefore incapable of being sufficiently supported by any evidence (including the evidence cited) to be considered facts.  Further object that this entire paragraph is a conclusion of law and not a statement of fact.  Notwithstanding these objections, denied, as this paragraph presents a false characterization of NVRA Section 8 as making compliance "difficult," which, even if true, would not justify noncompliance.  Further denied as to the characterization of Indiana's list maintenance program as keeping "rolls relatively accurate," which is not only vague and ambiguous, it is not supported by the record.  Plaintiffs' Brief, ECF No. 69, at 1-3, 16-23; Plaintiffs' SOF, ECF No. 69 at 7-13, ¶¶ 4-35.

8

23.    Denied that Indiana's local election officials are conducting voter list maintenance in a uniform fashion.  Admitted only to the extent this paragraph stands for the factual proposition that Indiana's local election officials perform list maintenance tasks when and to the extent that the State of Indiana provides leadership, direction, and oversight.  Plaintiffs' SOF, ECF No. 69 at 10, ¶ 21, and at 11, ¶¶ 27, 29.

24.    Admitted.

25.    Objection, the use of the word "approximately" in this paragraph implies that Indiana does not know precisely how many counties performed countywide list maintenance mailings between 2009 and 2012 without explicitly admitting this lack of knowledge.  Plaintiffs admit that the Co-Directors frequently do not know with any specificity what Indiana's local election officials are doing with respect to list maintenance at any given time.  Plaintiffs SOF, ECF No. 69 at p. 45, Appx. Exh. 4, Deckard Tr. at 32:4 to 19.  Plaintiffs further admit the evidence demonstrates that no more than 5 out of 92 Indiana counties performed list maintenance mailings during this time period.

26.    Denied that the record supports a conclusion that Indiana's local election officials always or usually perform list maintenance "daily," and denied with respect to the characterization that list maintenance information and guidance is provided by the SVRS itself. SVRS is a software program that allows multiple Indiana state offices and 92 Indiana counties to share information about voters who have died or moved, but the SVRS can only serve its function if all state and local participants properly and regularly populate the software program with sufficient voter data.  Plaintiffs' SOF, ECF No. 69 at 10, ¶ 21.

27.     Objection, the use of Voter ID to prevent voter fraud is irrelevant to this lawsuit, as NVRA Section 8 imposes a separate and independent obligation for States to maintain current and accurate voter registration lists.  Otherwise, admitted that Indiana has a Voter ID law.

28.     Objection.  This paragraph is vague and imprecise, as it contains insufficient specificity as to the frequency or timing of Election Division notices to contribute to the Court's understanding of the relevant facts.  Admitted that Indiana provided very limited out-of-state voter relocation information to local election officials on occasion, but denied that this demonstrates Indiana's satisfaction of NVRA Section 8.  Plaintiffs' SOF, ECF No. 69 at 7, ¶¶ 5-7, and at 9-10, ¶¶ 16-21.

29.     Denied as to the characterization of Indiana as "encouraging" list maintenance.  The evidence cited in this paragraph only further supports the fact that Indiana acted in a mostly passive advisory role rather than in an active leadership role concerning list maintenance.  Plaintiffs' SOF, ECF No. 69 at 7-10, ¶¶ 4, 9, 11-21.

30.     Object, as this paragraph lacks specificity and is too vague to be supported by the factual record cited, and does not contribute to the Court's understanding of relevant facts.  It is unclear from this paragraph which particular conference Defendants are referring to, and whether "always discussed" refers to discussions lasting one hour or one minute.   Denied that these vague assertions materially demonstrate Indiana's satisfaction of NVRA Section 8.  *See* ¶ 8 *supra*.

31.     Objection, there is no such document corresponding to "page 20 of Exhibit 6" in Defendants' Appendix, which is the evidence cited in this paragraph.  Further object, as the phrase "quite often" lacks sufficient specificity and is too vague to contribute to the Court's understanding of the relevant facts.  It is unclear from this paragraph and the evidence cited

whether this phrase means local election officials received list maintenance information from Indiana once a day, once a month, or a few times a year.  Furthermore, a review of pages 20 and 21 of the Deposition of Warrick County Election Official Sarah Redman indicates that "quite often" actually meant "at least yearly."  Plaintiffs Opp. Appx. Exh. 2, Redman Tr. at 20:18 to 21:7.  Finally, denied as to the effectiveness of Indiana's communications, and denied that they materially demonstrate Indiana's satisfaction of NVRA Section 8.  Plaintiffs' SOF, ECF No. 69 at 7-13, ¶¶ 4-35.

32.    Object that the evidence cited in this paragraph does not support its conclusions. Admitted that a local election official testified to being judicious in making judgments about whether a registered voter had died or moved out of a county.  The remainder of this paragraph is not supported by the evidence cited in the paragraph, and since the rules require that cited evidence support the claim it is therefore denied.  Fed. R. Civ. P. Rule 56(c)(1)(B).

33.    Denied.  Plaintiffs demonstrated that Indiana's voter lists were substantially less accurate and current compared to other states based on an analysis of each states' voter lists using measures reported by the U.S. Election Assistance Commission.  Plaintiffs' SOF, ECF No. 69 at 7, ¶ 6.  Furthermore, Eitan Hersh's analysis, reliant as it is on subjective data sets analyzed and selected at the sole discretion of Catalist, LLC, does not demonstrate anything relevant on which the Court can rely.  *See* below, Section I.C., pp. 17-21.

34.    Denied as to the characterization that Indiana may permissibly evade federal law because the NVRA includes safeguards which make list maintenance more time consuming than it would be if there were no statutory safeguards.  *See* ¶ 15 *supra*.  Furthermore, it is denied that Indiana may permissibly evade federal law by delegating list maintenance duties to local election officials.  *U.S. v. Missouri*, 535 F.3d 844, 850 (8th Cir. 2008).

35.     Objection, this paragraph contains conclusion of law, which are denied. Furthermore, denied as to the characterization that Indiana may permissibly evade federal law because Indiana regards the NVRA as "cumbersome," "impractical," or any other set of descriptors indicating disfavor.  *See* ¶ 15 *supra*.

36.     Object, as this entire paragraph is a conclusion of law.  Moreover, this paragraph presents a meaningless characterization of NVRA Section 8 as "cumbersome," as if this were justification to disobey it, and so it is denied.  Plaintiffs' Brief, ECF No. 69, at 1-3, 16-23.

B.     Indiana's Assertions Mischaracterize Plaintiffs' Demand Letter

37.     Admitted that Plaintiffs sent a letter to Defendants containing evidence that Indiana's voter rolls were substantially inaccurate and out of date based on an analysis of publicly available data, but denied as to the characterization that Plaintiffs' letter did not also allege that Indiana violated NVRA Section 8.  Plaintiffs' SOF, ECF No. 69 at 15-16, ¶¶ 52-53.

38.     Admitted that, in the February 2012 letter, Plaintiffs indicated they would seek redress of their grievances in Court if Indiana did not comply with the law.  Denied as to the characterization that Plaintiffs' letter did not also set forth specific demands, upon the satisfaction of which Indiana could have averted litigation if it so desired.  Plaintiffs' SOF, ECF No. 69 at 15-16, ¶¶ 52-53; Plaintiffs' Brief, Appx. Exh. 11, Fitton Decl. at Attach. 3, ECF No. 69-3 at pp. 18-22.

39.     Object, as this paragraph contains speculation about why the Election Division took certain actions, which is not supported by the evidence cited in this paragraph. Furthermore, denied as to the characterization that Indiana's response consisted of anything more than a blanket denial containing neither explanation nor justification.  Plaintiffs' SOF, ECF No. 69 at 15-16, ¶¶ 52-53; Plaintiffs' Brief, Appx. Exh. 11, Fitton Decl. at Attach. 3, ECF No. 69-3 at

pp. 23-24.  Admitted that Indiana's response to Plaintiffs' February 2012 demand letter consisted of a blanket denial.

40.     Admitted, except denied as to the characterizations that Plaintiffs' letter did not inform Indiana that it was required to make records available under the NVRA, and that Indiana was required to comply with this records request if it wished to avoid litigation.  Plaintiffs' SOF, ECF No. 69 at 15-16, ¶¶ 52-53; Plaintiffs' Brief, Appx. Exh. 11, Fitton Decl. at Attach. 3, ECF No. 69-3 at pp. 18-22.

## ARGUMENT

## I.     Indiana Did Not Make a Reasonable Effort to Maintain Accurate Voter Rolls

Each of Indiana's arguments that its list maintenance efforts were reasonable are wrong on the law, and the evidence it cites in support is therefore irrelevant.  Indiana's arguments are, essentially: 1) NVRA Section 8 is ambiguous; 2) Indiana's minimal list maintenance activities are entitled to deference as an interpretation of the NVRA; 3) Indiana's voter rolls were current and accurate; and 4) Plaintiffs cannot show that Indiana's voter rolls were not current and accurate.  Because Indiana is wrong on the law and relies on irrelevant evidence, it is not entitled to summary judgment.

### A.     Indiana Cannot Claim That "Reasonableness" is Undefined

Indiana is not entitled to summary judgment as a matter of law because it is mistaken that the "reasonableness" requirement in Section 8 is too "ill-defined" to be enforceable here. Indiana Brief, ECF No. 71 at 13.  Courts have provided extensive assessments of "reasonableness" which demonstrate Indiana's violations, as Plaintiffs demonstrated in their Summary Judgment Brief.  Plaintiffs' Brief, ECF No. 69 at 16-23.

The stray cases Indiana cites in support of this argument are inapplicable.  Indiana Brief, ECF No. 71 at 13.  Indiana's reliance on *Suter v. Artist M.*, 503 U.S. 347 (1992) is misplaced.  In that case, a private litigant was suing a state alleging that a statutory phrase requiring "reasonable efforts" in a state's child welfare activities created an implied private right of action under 42 U.S.C. § 1983.  503 U.S. 347, 354.  The Supreme Court held that it did not.  503 U.S. at 363.  In the present case, Plaintiffs have no need to argue such an interpretation – or to make any claim under 42 U.S.C. § 1983 – because the NVRA itself contains a private right of action for any person "aggrieved" by its violation.   42 U.S.C. § 1973gg-9(b).  Furthermore, the Supreme Court's interpretation of "reasonable efforts" in *Suter* was confined by the fact that the agency administering the federal adoption statute, the Department of Health and Human Services, had already issued regulations clarifying states' obligations under this part of the statute.  503 U.S. 347, 361 ("The regulations promulgated by the Secretary to enforce the Adoption Act do not evidence a view that § 671(a) places any requirement for state receipt of federal funds other than the requirement that the State submit a plan to be approved by the Secretary.").  The other case Indiana cites, *Jeanine B. v. McCallum*, 2001 U.S. Dist. Lexis 12091 (2001), also dealt with the question of whether federal adoption laws conferred a private right of action against states, and so is equally irrelevant here.

As Plaintiffs demonstrated, reasonableness is a well-defined concept.  Reasonableness has a plain statutory meaning; reasonableness has a meaning in professional malpractice law; and reasonableness has a meaning in negligence law.  Plaintiffs' Brief, ECF No. 69 at 16-19.  Under each of these clearly-defined legal standards, Indiana violated its duty to put forth a reasonable effort.  Plaintiffs' Brief, ECF No. 69 at 20-23.  Indiana's contrary reading of the law is wrong, and so does not entitle it to summary judgment.

**B.     States Are Not Entitled to Deference in Deciding Whether They Comply With Federal Election Law**

Indiana is also wrong that the law allows it deference from the Court as to whether or not Indiana's limited list maintenance efforts comply with Section 8.  Indiana Brief, ECF No. 71 at 13-14.  To the contrary, Section 8 establishes federal election standards which preempt inconsistent state law, and which are properly interpreted in the first instance by the federal courts.  Plaintiffs' Brief, ECF No. 69 at 1-2.  To the extent Congress gave the states flexibility, it was only to allow states to pick and choose among various different *effective* list maintenance actions and policies – not to allow states to interpret the NVRA as permitting ineffective list maintenance efforts.  Plaintiffs' Brief, ECF No. 69 at 16; *U.S. v. Missouri*, 2007 U.S. Dist. Lexis 27640, *19 (W.D. Mo. April 13, 2007), *aff'd in part, rev'd in part on other grounds, U.S. v. Missouri*, 535 F.3d 844, 851 (8th Cir. 2008).

Contrary to Indiana's argument, *Chevron* does not apply here, and even if it did, Defendants would still lose.  *Chevron* determines whether federal agency adjudications and rulemakings exceed the powers Congress intended to give them by statute.  *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc*., 467 U.S. 837, 842-843 (1984); *City of Arlington v. FCC*, 133 S. Ct. 1863, 1870, 1873 n4 (2013).  Under *Chevron*, when a statute is silent or ambiguous as to a specific question, courts will evaluate whether an agency's interpretation "is based on a permissible construction of the statute."  *Chevron*, 467 U.S. at 843.

*Chevron* invariably involves judicial review of agency actions based on statutory power given to those agencies by Congress.  Indiana argues that it should receive the same or more judicial deference as a federal agency in interpreting the NVRA.  Indiana Brief, ECF No. 71 at 13-14.  But this argument gets matters backwards.  Congress did not give the states any new powers when it enacted the NVRA (whereas Congress does give powers to an administrative

agency through enabling legislation).  To the contrary, with the NVRA, Congress *limited* states'

discretion and confined their actions even more narrowly than before.  The NVRA was enacted

pursuant to the *Elections Clause*, which delineates a markedly different relationship and purpose

between the States and Congress for federal elections than the relationship between Congress

and federal agencies.  "In ratifying Article I, Section 4, the states not only gave Congress plenary

authority over federal elections but also explicitly ensured that all conflicts with similar state

laws would be resolved wholly in favor of the national government."  *Harkless v. Brunner*, 545

F.3d 445, 455 (6th Cir. 2008).  "Unlike the States' historic police powers, the States' role in

regulating congressional elections – while weighty and worthy of respect – has always existed

subject to the express qualification that it terminates according to federal law."  *Arizona v. Inter*

*Tribal Council of Ariz., Inc*., 133 S. Ct. 2247, 2257 (2013)  (internal citations and quotations

omitted).

Accordingly, Indiana's limited list maintenance program does not get "more deference"

from this Court.  Indiana Brief, ECF No. 71 at 13.  To the contrary, if Indiana's laws prevent it

from making a "reasonable effort," those state laws would be preempted.  *Harkless v. Brunner*,

545 F.3d at 455.  As the Supreme Court recently explained, the power to interpret the NVRA is

reserved primarily to the Courts.  *Arizona v. Inter Tribal Council of Ariz., Inc*., 133 S. Ct. 2247,

2260 (2013) ("Arizona may… seek judicial review of the EAC's decision under the

Administrative Procedure Act.").  The framers reserved these broad *Elections Clause* powers to

Congress and the federal judiciary specifically in recognition of the fact that leaving them to the

states would give the states inordinate power over the federal government.  As Judge Posner

explained:

> A state cannot say to Congress, "We are not interested in elections for federal
> office. If you want to conduct such elections in our state you must do so yourself

16

– establish your own system of registration, hire your own registrars, find your own places for voting." The state is obligated to do these things. The power conferred as a corollary to the imposition of this duty could be abused, so Article I section 4 goes on to provide that Congress can if it wants step in and either make its own regulations or alter those adopted by the state pursuant to the duty imposed by the first sentence.  Even when there is no abuse, as we have seen, Congress can, as in the law fixing a uniform date for federal elections, regulate federal elections and force the state to bear the expense of the regulation.   So Congress was given the whip hand.

*ACORN v. Edgar*, 56 F.3d 791, 793-795 (7th Cir. 1995) (internal citations omitted).

Lastly, even assuming *arguendo* that *Chevron* is the proper standard to analyze Indiana's compliance with the NVRA, any such analysis could only conclude that Indiana's actions failed to satisfy this test.  First, as Plaintiffs demonstrated, Indiana's actions were inconsistent with a plain reading of the NVRA because Indiana failed to exercise active leadership and oversight of the statewide list maintenance program, *and* because Indiana's limited actions were ultimately ineffective in maintaining reasonably accurate and current voter rolls.  Plaintiffs' Brief, ECF No. 69 at 16-17, 19-22.  Accordingly, Indiana's actions do not fall within the plain meaning of Section 8, and so its interpretation is invalid.  *Chevron*, 467 U.S. at 842-843 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

Second, even if the "reasonable effort" requirement were ambiguous (which it is not), Indiana's list maintenance activities cannot possibly constitute a "permissible construction" of Section 8 under *Chevron* step two.  467 U.S. at 843.  As Plaintiffs have shown, Indiana's list maintenance actions fell short of the accepted industry standards as evaluated by an expert in election administration, and they also failed to satisfy the judicial standard of due care needed to avoid the certain harm resulting from inaccurate and out of date voter rolls.  Plaintiffs' Brief,

ECF No. 69 at 17-18, 22-23.  Accordingly, Indiana's construction of Section 8 is an impermissible one.  *Chevron*, 467 U.S. at 843.

### C.   Eitan Hersh's Assessment, Based on Catalist's Data, is Determinative of Nothing

Indiana's expert, Eitan Hersh, used data which is unreliable and bears little relationship to the currency and accuracy of voter lists.  The testimony of Indiana's expert would not be admissible at trial, as it does not "rest on a reliable foundation," nor is it "relevant to the task at hand."  *Daubert v. Merrell Dow Pharms., Inc.*,  509 U.S. 579, 597 (1993).  Even if Indiana's expert evidence were tangentially relevant, it would not be admissible at trial because its probative value is extremely limited and outweighed by its potential to confuse and mislead.  *See* Fed. R. Evid. 403.  Accordingly, Indiana's expert testimony do not entitle Indiana to summary judgment.

First, in his expert report, Eitan Hersh states that he relies on data collected by Catalist LLC ("Catalist").  Hersh Report, ECF No. 70-7 at 4-5, ¶¶ 7-9.  Very recently, a federal court has held that Catalist's data was unreliable for use in an election law case.  *Texas v. Holder*, 888 F. Supp. 2d 113, 133 (D.D.C. 2012) ("Second, we have serious doubts as to whether Catalist's algorithm accurately identified the racial composition of voters in this case. . . . [T]he record contains no direct evidence as to the accuracy of Catalist's algorithm.  To the contrary, record evidence suggests – albeit not conclusively – that Catalist's error rate in this case may be quite high."), *vacated, remanded on other grounds*, 133 S. Ct. 2886 (2013).

Catalist's measures for determining whether voters lists are well maintained do not produce relevant information about the actual accuracy and currency of voter rolls, which is the standard enumerated in Section 8.  Indeed, most of Catalist's factors for determining list accuracy – factors chosen by Catalist – have to do merely with recordkeeping for voter

18

registrations, rather than maintaining accurate lists on an ongoing basis.  Hersh Report, ECF 71-7 at 5-11 (measuring categories such as whether voters' birth dates, zip codes, and dates of registration were properly recorded).  A state may be good at collecting data from individuals when they initially register to vote, but simultaneously very poor at maintaining accurate, up-to-date voter registration rolls.  Furthermore, the "missing address field" metric, which evaluates whether a state name or zip code is missing from a registration, may not even bear much of a relationship to good recordkeeping.  Hersh Report, ECF 71-7 at 5, 8.  Registrars in Indiana (or in other states) may not necessary record the name of the state when registering a new voter's address, because if they are registering an Indiana voter, then the residency state would only ever be *Indiana*.  Similarly, if a registration address has a zip code but no state or city, the zip code can be used to determine the city and state.

Another one of the Hersh Report metrics involves comparing states' lists based on how many registrations "contain mailing addresses thought to be undeliverable or probably undeliverable" in order to produce "estimated" figures of inaccuracy.  Hersh Report, ECF No. 70-7 at 9, ¶ 15.  The fact that, on its face, this measure incorporates the "thoughts" of the person analyzing the data to produce "estimates" of "*probably* undeliverable" addresses demonstrates its inherent unreliability.  Furthermore, for this metric, Dr. Hersh claims to rely on the U.S Post Office's Coding Accuracy Support System ("CASS").  Hersh Report, ECF No. 70-7 at 5, 9.  The CASS system only estimates information about whether a street address is a "mailable" address, not about who currently lives there.[1]  Just because an address is "mailable" does not mean that the person associated with that address in Indiana's voter lists is a living eligible voter – or that

---

[1] *See* "CASS Certification Systems, A Mailer's Guide," 2007-2008, U.S. Postal Service, available at
http://ribbs.usps.gov/cassmass/documents/tech_guides/CASS%20Cert%20Req%20MAILERS%20Guide.pdf (visited Nov. 5, 2013)

he or she necessarily lives at that address.  This metric does not provide information about the accuracy and currency of a voter list, although it may serve other purposes.  Consider that Catalist primarily services partisan political campaigns, where "mailability" would be an important metric.  Hersh Report, ECF No. 71 at 4, ¶ 8.  However, in the dispute before this Court, whether the person associated with an address is alive and still residing in the same jurisdiction is more important than whether the address is reachable by mail.  Accordingly, the Court should find this metric unreliable as a measure for determining liability under a federal statute.

Similarly, the Hersh Report relies on two additional Catalist "estimates," one to arrive at figures "thought" to be associated with deceased individuals, and another "probably" or "likely" to be obsolete "deadwood" in some other way.  Hersh Report, ECF No. 70-7 at 10, ¶¶ 18-19.  Again, on their face these are estimates of questionable reliability.  Moreover, the classification of "deadwood" is left largely undefined, leaving one to wonder what precisely it measures.  Another metric used is that of "voter history discrepancy," which consists of a complexly calculated figure based on voter turnout.  But the relationship of "voter history discrepancy" to the currency and accuracy of voter registration lists remains largely unexplained.   Hersh Report, ECF No. 70-7 at 6-7, ¶ 9h.

The remaining metrics, as discussed above, account only for how well a state collects voter registration data at the point of registration over time, which is only indirectly related to the accuracy and currency of actual voter names on the list over time.  Hersh Report, ECF No. 70-7 at 5-6, ¶¶ 9.a., 9.c., 9.d., and 9.e. (measuring missing address information, birthday information, the presence of a registration date, and the estimated accuracy of a registration date).  For example, neither the presence nor absence of voter birth day and month information, nor the

20

presence or absence of registration dates, provides meaningful information about whether that registrant is an eligible, active voter, or whether the registrant has since died or moved out of state. Hersh Report, ECF No. 70-7 at 9-11, ¶¶ 16, 17, 21. A state may capture birth dates and registration dates very well, but that is of little use to election integrity if those fully filled-out registrations are not cancelled or removed upon a voters' death or relocation.

For all of these reasons, Catalist's data and the Hersh Report's measures are irrelevant to this litigation and inadmissible at trial. The Court should therefore disregard Indiana's expert testimony.

### D.     Plaintiffs Have Supplied Evidence Necessary for Their Claim that Indiana's Voter Rolls are Inaccurate

Indiana incorrectly argues that it is entitled to summary judgment because Plaintiffs have failed to establish an element of their claim – namely that Indiana's voter rolls were inaccurate. Indiana Brief, ECF No. 71 at 17 ("[T]he basis for [Plaintiffs'] claim – that Indiana's voter rolls in 2010 were inaccurate – is not supported by the evidence."). This is incorrect. Plaintiffs submitted ample, undisputed evidence to this Court in their Motion for Summary Judgment which entitled Plaintiffs to judgment as a matter of law. Plaintiffs' SOF, ECF No. 69 at 7-8, ¶¶ 5-10.

Indiana misstates the law by claiming that only a comparison with other states' voter rolls can show non-compliance with Section 8. Indiana Brief, ECF No. 71 at 17 ("Comparing Indiana's rolls with the rolls of other states is the only benchmark we can use to determine whether a State's rolls are accurate."). Section 8 contains no such averaging language, nor is the mere comparison to common conditions the standard of "reasonableness" to which courts have traditionally adhered. *Agni v. Wenshall (In re City of New York)*, 522 F.3d 279, 285 (2nd Cir. 2008) ("[I]n most cases reasonable prudence is in fact common prudence; but strictly it is never

21

its measure; a whole calling may have unduly lagged in the adoption of new and available

devices... [T]here are precautions so imperative that even their universal disregard will not

excuse their omission.") (internal citations omitted).  To the contrary, under Section 8's plain

language, it is possible that, at any given time, all or most U.S. States could simultaneously be

violating the reasonable effort requirement.  42 U.S.C. § 1973gg-6(a)(4).  If many states were

simultaneously violating Section 8, a comparison between states would therefore not establish a

non-violation.

In light of this, the fact that 12 Indiana counties have more registered voters than total

voting age population (TVAP) is the appropriate measure of an NVRA Section 8 list

maintenance violation on its own, without a comparison to other states.  *See Judicial Watch, Inc.*

*v. King*, 2012 U.S. Dist. Lexis 174360 at *7, n2 (S.D. Ind. 2012) ("The Defendants'

characterization misses the mark, however. The Plaintiffs actually allege that because the

Defendants have failed to comply with the NVRA, the voter registration rolls in some Indiana

counties are inaccurate, and simply point to the discrepancy between the Census data and the

voter registration rolls in those counties as *evidence* of that inaccuracy.").  Plaintiffs believe this

evidence of the condition of Indiana's voter lists is determinative of a *per se* violation of NVRA

Section 8.  Plaintiffs' Brief, ECF No. 69 at 19-20.  But even if it is not determinative, it is

extremely probative.  If the number of registered voters in certain counties exceeds 100% of the

TVAP, this establishes that a significant portion of a state's voter lists have a large number of

outdated registrations on them.

The preceding paragraph explains why the U.S. Department of Justice relies on county

voter list comparisons of registered voters to TVAP as the most reliable indicator of an NVRA

Section 8 violation.  As Plaintiffs demonstrated in their Opposition to Defendants' Motion to

Dismiss, the United States' 2006 lawsuit against Indiana for Section 8 violations relied on the same data that Plaintiffs used here, namely, a comparison of U.S. Census Bureau data and U.S. EAC voter registration data by county.  Plaintiffs' Opposition, ECF No. 26 at 4-5; *See also U.S. v. State of Indiana, et al.*, Case No. 1:06-cv-01000-RLY-TAB (S. D. Ind.) (complaint filed June 27, 2006).[2]

In the instant case, Plaintiffs used the same analysis as the Department of Justice used in 2006 to demonstrate that 12 Indiana counties have more registered voters than TVAP, while another 26 counties have registered voter totals that exceed 90% of TVAP.  Complaint, ECF No. 1 at 5-6, ¶ 14-15.  Plaintiffs' Complaint compared 2010 U.S. Census Bureau data and 2010 EAC data to claim Indiana's voter rolls were out of date, and the evidence supporting that assertion has now been submitted to the Court.  Plaintiffs' Brief, Appx. Exh 2, ECF 69-1 pp. 26-32.  This metric is the most reliable indicator for demonstrating a state's failure to satisfy its voter list maintenance obligations, and it has demonstrated Indiana's violations in this case.

Furthermore, there is a second, larger problem with Indiana's argument that comparing Indiana's voter rolls with those of other states "is the only benchmark we can use to determine whether a State's rolls are accurate."  Indiana Brief, ECF No. 71 at 17.  Namely, Plaintiffs have already applied this benchmark, and it shows that Indiana's list maintenance is worse than most

---

[2]  Specifically, the 2006 Department of Justice Complaint alleged, in relevant part:  "The Department of Justice ('Department') first raised NVRA-related concerns in an April 7, 2005, letter addressed to the Indiana Secretary of State, with a carbon copy to the Co-Directors.  In that letter, the Department specifically noted that according to the 2003 Census estimates, Indiana had 23 counties with registration totals that were more than 100% of those counties' voting age populations.  According to data collected voluntarily from each State by the Election Assistance Commission ('EAC') from the November 2004 general election, 19 of 92 Indiana counties had more than 100% of their voting age populations ('2004 VAP') registered to vote.  In addition, 23 counties had 95-100% of their 2004 VAP registered to vote, and an additional 25 counties had registration totals of 90-95%."  The text of the Complaint is available online at http://www.justice.gov/crt/about/vot/nvra/in_nvra_comp.php (visited Nov. 4, 2013).

other states.  Plaintiffs made this inter-state comparison in their June 26, 2013 expert witness report, the relevant excerpts of which were submitted to the Court.  Plaintiffs' SOF, ECF No. 69 at 7, ¶ 6, *citing* Expert Report of Karen Handel (excerpts), pp. 16-17, Appx. Exh 1, ECF 69-1 at pp. 8-9; EAC Report (excerpts), Appx. Exh 3, ECF 69-1 at pp. 34-39.  Plaintiffs' inter-state comparison was based on objective, publicly available, EAC statewide voter registration data, and it shows that Indiana was either in the bottom fifth or bottom third of U.S. States based on various measures of accuracy and currency of voter registration lists.[3]  *Id.*

The following two data points from Plaintiffs' expert witness report explain this concisely:

- "Indiana reported that, among those individuals who are of voting age, nearly 90 percent were registered to vote in the state.  Indiana's VAP registration rate of 88.8 percent ranked the 12th highest among the states and the District of Columbia. While Indiana's VAP registration rate among only active voters decreased three points to 86 percent, the percentage of active voters was the 8th highest among states and the District of Columbia. . . . The average reported registration rate among the states was 78.7 percent, more than 10 percentage points *lower* than Indiana's rate."  Expert Report of Karen Handel (excerpts), p. 16, Appx. Exh 1, ECF 69-1 at p. 8.

- "Indiana's reported CVAP [Citizen Voting Age Population] registration rate was 91.7 percent, the 15th highest among the states and well above the 85.9 percent average among reporting states. Among active only voters, Indiana's CVAP registration rate was the 7th highest at 88.8 percent and more than ten percentage points higher than the

---

[3]  Plaintiffs' use of publicly available data stands in stark contrast with the privately-designed and selected measures Indiana uses.  *See* Hersh Report, ECF No. 70-7, p. 2 ("In a research project that began in 2010, I, along with a colleague, designed several state-by-state measures of registration list quality.").   There are sound policy reasons for courts and adjudicatory bodies to favor the use of publicly available data for determining liability in complex cases, as verifiable standards help facilitate the evaluation of claims prior to litigation.  *Allied Pac. Food (Dalian) Co. v. United States*, 30 C.I.T. 736, 762 (USCIT 2006) (publicly available data is preferred to preserve "the interests of transparency and verifiability that are served by public availability"); *Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc*., 731 F. Supp. 2d 937, 945 (N.D. Cal. 2010) ("the court calculates an average market rate in the local legal community as a whole using public data from the United States Census Bureau and Bureau of Labor Statistics."); *Amendment of Rules and Policies Governing the Attachment of Cable Television Hardware to Utility Poles*, 2 FCC Rcd 4387, 4394 (FCC 1987) (publicly available data is required for calculating regulated rates "to permit interested parties to independently verify" compliance).

average 78.6 percent."  Expert Report of Karen Handel (excerpts), p. 17, Appx. Exh 1, ECF 69-1 at p. 9.

Accordingly, Indiana's voter rolls are in poor condition whether evaluated based on their inherent inaccuracy, or as compared to other states.  The concurrence of both of these metrics leaves little doubt that Indiana is in violation of Section 8.

## II.    Plaintiffs Have Standing to Sue Indiana for Not Maintaining Accurate Voter Rolls

Indiana fails in its argument that Plaintiffs lack standing.  Indiana Brief, ECF 71 at 16-18. As Indiana correctly notes, "in a motion for summary judgment, the plaintiffs must set forth specific facts to support their allegations."  Indiana Brief at 16, ECF No. 71, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Plaintiffs did set forth such specific facts. Plaintiffs' Brief and SOF, ECF No. 69, at pp. 13-16, ¶¶ 36-53, and pp. 25-27; 42 U.S.C. § 1973gg-9(b).  Specifically, Plaintiff True the Vote and Plaintiff Judicial Watch's members were injured because Indiana's voter rolls were in disarray.  *Id.*

Indiana also unpersuasively argues that, because Plaintiff Judicial Watch is suing on behalf of members registered to vote in Indiana, it cannot meet its evidentiary burden unless it names those members.  Indiana Brief, ECF 71 at 17-18.  Indiana is wrong for two reasons.  First, Judicial Watch has submitted declaration from its President, Thomas J. Fitton, supporting its standing as an association to bring this action on behalf of its members.  Plaintiffs' SOF, ECF No. 69 at 13-14, ¶¶ 40-43, Appx. Exh. 11, Thomas Fitton Declaration and Attachs. 1 and 2 thereto, ECF No. 69-3 at pp. 1-17.

Second, there is no credence to the argument that Judicial Watch must identify and present evidence from individual members in order to be entitled to judgment as a matter of law. In this case, since "the relief sought is injunctive, individual participation of the organization's members is 'not normally necessary.'"  Plaintiffs' SOF, ECF No. 69 at 13, ¶¶ 40-41; *Florida*

*State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1160 (11th Cir. 2008) (internal citation omitted).  Judicial Watch satisfied all elements of associational standing allegations at the dismissal stage.  *See Judicial Watch, Inc. v. King*, 2012 U.S. Dist. Lexis 174360, at *14, n6 (S.D. Ind. 2012).  Now, Judicial Watch has provided uncontroverted evidence in support of its associational standing at the summary judgment stage.  Plaintiffs' SOF, ECF No. 69 at 13-14, ¶¶ 40-43, Appx. Exh. 11, Thomas Fitton Declaration, ECF No. 69-3 at p. 3, ¶ 5, and Attach. 1 to Thomas Fitton Declaration, ECF No. 69-3 at pp. 12-13.  Nothing more is required.

Finally, Indiana suggests that Judicial Watch has not satisfied the associational privacy privilege of the First Amendment, stating that it is "unclear why membership in the organizations who brought suit [] needs to remain hidden."  Indiana Brief, ECF No. 71 at 18.  However, Indiana has gotten the First Amendment Privilege backwards.  Judicial Watch asserted the privilege in May of 2013, in its Responses and Objections to Indiana's Interrogatories.  *See* Opp. Appx. Exh. 3; *see also Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010) ("A party who objects to a discovery request as an infringement of the party's First Amendment rights is in essence asserting a First Amendment privilege.").  The burden is now on Indiana to demonstrate that the privilege does not apply, or that Indiana has a compelling need for the disclosure of the information at issue.[4]

When the government seeks to compel disclosure against an organization following an assertion of the First Amendment Privilege, it must show that the information is "highly relevant to the claims or defenses in the litigation" and that the request is "carefully tailored to avoid

---

[4]  Although Indiana has long since waived its claim for this information, Judicial Watch is submitting a declaration supporting its assertion that disclosure of member names would have a chilling effect on its members' continued participation in Judicial Watch.  *See* Opposition Declaration of Thomas J. Fitton, Opp. Appx. Exh. 4, ¶¶ 3-6; *see also Perry*, 591 F.3d at 1160 ("The party asserting the privilege must demonstrate a *prima facie* showing of arguable first amendment infringement.") (internal quotations omitted).

unnecessary interference with protected activities…". *Perry*, 591 F.3d at 1161.  Here, Indiana

has not only failed to demonstrate that Judicial Watch's invocation of the privilege was

improper, but it also failed to demonstrate why it needs information about Judicial Watch's

members.  It is already established in the record through witness testimony – including testimony

from the Defendants' own Rule 30(b)(6) witnesses – that Indiana voters' confidence in the

integrity of elections has been diminished due to the poor condition of Indiana's voter rolls.

Plaintiffs' SOF, ECF No. 69 at 13, ¶¶ 36-39.  Accordingly, Indiana has already obtained

evidence regarding citizen injury from inaccurate voter rolls from its own election officials.

       In any event, all of this is now academic.  Indiana never challenged Plaintiffs' discovery

objection and assertion of the First Amendment Privilege, nor did it file a motion to compel

when the opportunity to do so was ripe – 5 months ago.  Opp. Appx. Exh. 3.  As Indiana should

know, equity aids the vigilant, not those who slumber on their rights.  *Fritz v. Board of Trustees*,

253 Ind. 202, 212 (1969); *Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 843

(D.C. Cir. 1982).  Accordingly, Indiana has waived any claim that the assertion of the First

Amendment Privilege was unwarranted.  *See generally Montgomery v. Alcoa, Inc*., 11 Fed.

Appx. 471, 473 (6th Cir. 2001) ("Similarly, Montgomery alleges that he was denied needed

discovery. This argument is waived because he did not inform the district court what material

facts he hoped to obtain through further discovery. It is not apparent what evidence Montgomery

could have discovered which would have altered the outcome of this action."); *Ali v. Univ. of*

*Mass. Med. Ctr*., 76 Fed. Appx. 342, 343 (1st Cir. 2003) ("Ali did not seek any clarification or

make any objection at the time that the court ruled on his motion to compel.  Indeed, the first

time Ali requested clarification of the court's ruling was in a post-judgment motion after he had

lost his case.").  A summary judgment motion is not a proper place to challenge invocation of a privilege in any event.

III.     **Indiana Has Refused to Make Records Available for Almost Two Years**

Lastly, Indiana incorrectly argues the Plaintiffs "cannot show that the defendants violated the records provision of the NVRA…".  Indiana Brief, ECF No. 71 at 18.  Plaintiffs can and have shown this violation.  *See* Plaintiffs' Brief and SOF, ECF No. 69 at 15-16, ¶ 53, and at 27-28. Indiana forced Plaintiffs to initiate and prosecute this litigation for sixteen months in order to obtain access to the records to which Plaintiffs are entitled under the NVRA.  42 U.S.C. § 1973gg-6(i).  Indiana has not only excessively delayed granting Plaintiffs access to the records, but it has forced Plaintiffs to expend enormous effort to obtain the records sought.  These efforts began in February of 2012 and continued throughout the litigation, and yet Plaintiffs still do not have all the records to which they are entitled.  *See* Opposition Declaration of Thomas J. Fitton, Opp. Appx. Exh. 4, at ¶ 7.  Indiana's extreme obduracy and recalcitrance in complying with 42 U.S.C. § 1973gg-6(i) is evidence of the extent of the violation.

Furthermore, Indiana is incorrect that Plaintiffs never provided a second notice that Indiana was in violation of the NVRA records requirement after the initial request.  Indiana Brief, ECF No. 71 at 19.  In fact, Plaintiffs requested records from Indiana before the litigation commenced, and then again on multiple occasions during the litigation, and yet, after *nearly two years*, Plaintiffs *still* have not received all of the records they are entitled to under NVRA Section 8.  Opposition Declaration of Thomas J. Fitton, Opp. Appx. Exh. 4, at ¶ 7, Attachs. 1-5.  Both Plaintiffs and Defendants viewed these requests as not just civil discovery, but as continuing document production obligations under the NVRA.  Opposition Declaration of Thomas J. Fitton, Opp. Appx. Exh. 4, Attachs. 3, 5.

28

In any event, Plaintiffs are not required to notify a state twice of its obligations under the NVRA prior to commencing a lawsuit.  A reasonable reading of the NVRA suggests that a records claim is ripe after the request is either denied or ignored for 90 days.  42 U.S.C. § 1973gg-9(b).  Plaintiffs' February 7, 2012 letter stated that Indiana must produce documents as required by the NVRA.  Responsive SOF at ¶ 40; Plaintiffs' Brief, Appx. Exh. 11, Fitton Decl. at Attach. 3, ECF 69-3 at p. 21.  In response, Indiana issued a blanket denial.  Responsive SOF at ¶ 39; Plaintiffs' Brief, Appx. Exh. 11, Fitton Decl. at Attach. 3, ECF 69-3 at pp. 23-24.  This litigation was not initiated until June 11, 2013 – over 120 days after Plaintiffs requested the records.  Indiana was sufficiently on notice that it could be sued if it did not produce the records, and had plenty of time to comply, but Indiana nevertheless refused to cooperate.  *Id.*  After this complete lack of cooperation and disregard of its duties under federal law, Indiana cannot now claim it was not sufficiently on notice.

## CONCLUSION

WHEREFORE, for all the forgoing reasons, Plaintiffs respectfully request that the Court

DENY Defendants' Motion for Summary Judgment.

Dated: November 8, 2013                          Respectfully submitted,

| | |
|---|---|
| J. Christian Adams | */s/ Paul J. Orfanedes*<br>Paul J. Orfanedes |
| Admitted *Pro Hac Vice* | */s/ Chris Fedeli*<br>Chris Fedeli |
| ELECTION LAW CENTER, PLLC<br>300 N. Washington Street, Ste. 405<br>Alexandria, VA 22314<br>Tel:  (703) 963-8611<br>Email:  adams@electionlawcenter.com | Admitted *Pro Hac Vice*<br><br>JUDICIAL WATCH, INC.<br>425 Third Street S.W., Ste. 800<br>Washington, DC 20024<br>Tel: (202) 646-5172 |
| David R. Langdon<br>Joshua B. Bolinger | Fax: (202) 646-5199<br>Email: porfanedes@judicialwatch.org<br>            cfedeli@judicialwatch.org |
| LANGDON LAW LLC<br>8913 Cincinnati-Dayton Rd.<br>West Chester, Ohio 45069<br>Tel: (513) 577-7380<br>Fax: (513) 577-7383<br>Email: dlangdon@langdonlaw.com<br>            jbolinger@langdonlaw.com | |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of November, 2013, I electronically filed the

foregoing document with the Clerk of the Court using the CM/ECF system.  Notice of this filing

will be sent to counsel of record by operation of the Court's electronic filing system.  Parties may

access this filing through the Court's system.

*/s/ Chris Fedeli*
Chris Fedeli