# APPENDIX TO PLAINTIFFS' OPPOSITION TO INDIANA'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

**EXHIBIT 1 – J. BRADLEY KING DEPOSITION TRANSCRIPT (EXCERPTS)**

**EXHIBIT 2 – WARRICK COUNTY ELECTION OFFICIAL SARAH REDMAN DEPOSITION TRANSCRIPT (EXCERPTS)**

**EXHIBIT 3 – PLAINTIFF'S RESPONSES AND OBJECTIONS TO INDIANA'S DISCOVERY REQUESTS (EXCERPTS)**

**EXHIBIT 4 – OPPOSITION DECLARATION OF THOMAS J. FITTON**

**OPPOSITION APPENDIX EXHIBIT 1**

**J. BRADLEY KING DEPOSITION TRANSCRIPT (EXCERPTS)**

```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF INDIANA
                    INDIANAPOLIS DIVISION
              CASE NO. 1:12-cv-800-WTL-TAB


JUDICIAL WATCH, INC.,             )
and TRUE THE VOTE,                )
                                  )
           Plaintiffs,            )
                                  )
v.                                )
                                  )
J. BRADLEY KING, et al.           )
                                  )
           Defendants.            )
```

The deposition upon oral examination of

**J. BRADLEY KING**, a witness produced and sworn before

me, Rachel L. Tookolo, a Notary Public in and for the

County of Hamilton, State of Indiana, taken on behalf

of the Plaintiffs at the Indiana Government Center,

South Building, 302 West Washington Street, Conference

Room 5, Indianapolis, Marion County, Indiana,

commencing on the 30th day of May, 2013, pursuant to

the Applicable Rules of Procedure with notice as to

time and place thereof.

```
                  ALLIANCE COURT REPORTING
                      P.O. BOX 78261
                 INDIANAPOLIS, IN 46278-0261
                      (317) 875-3914
                     1 (877) 867-8600
                 www.alliancecourtreporting.com
```

```
 1   Q   And in the course of those conversations, the

 2       questions you asked to the counties, what did you

 3       conclude was the cause for those relatively high

 4       figures?

 5                   MR. JEFFERSON GARN:  Objection;

 6       we're -- objection to the form of question.

 7       You're assuming facts in evidence and he just said

 8       that the cause wasn't discussed, I believe.

 9                   MR. CHRIS FEDELI:  Noted.

10   DIRECT EXAMINATION (Continuing),

11   QUESTIONS BY MR. CHRIS FEDELI:

12   Q   You can answer my question if you understand it.

13   A   I'm sorry to ask you to repeat it.

14   Q   No problem.

15   A   I want to make sure I understand it.

16   Q   I will.  You testified a moment ago that you had

17       conversations with the counties and you asked

18       questions in 2012 when they were concerned about

19       those high voter rolls, right?

20   A   Yes.

21   Q   And did they answer the questions you asked for

22       the most part?

23   A   Yes, I believe they did.  I don't recall any that

24       failed to give a response.

25   Q   And what were some of those questions that you
```

```
 1      asked, if you can remember?
 2   A  Just whether they had had problems with either
 3      their Department of Health hopper.  In the past,
 4      there had been some data backlogs that we had
 5      experienced and worked with the Department of
 6      Health to correct.  I don't think we had any
 7      discussion about Department of Correction.  In
 8      terms of Bureau of Motor Vehicles, usually the
 9      questions involved processing the paper copies
10      that arrived, along with electronic copies, to
11      make sure that address changes or other
12      information was getting their attention promptly.
13      I know at least one county that I believe
14      subsequently did carry out a mailing -- Warrick
15      talked with us about the mechanics and
16      requirements for doing a countywide mailing.
17   Q  And when you had asked those questions, did you
18      uncover -- first starting with the first item you
19      mentioned -- did you uncover problems with the DOH
20      hopper?
21   A  There had been previous problems, but I don't
22      think there were any new problems uncovered as a
23      result of these conversations.
24   Q  And previous problems -- you're talking about
25      problems in the years gone past?
```

**OPPOSITION APPENDIX EXHIBIT 2**

**WARRICK COUNTY ELECTION OFFICIAL SARAH REDMAN DEPOSITION
TRANSCRIPT (EXCERPTS)**

# In The Matter Of:

*Judicial Watch, Inc., et al. v.*
*J. Bradley King, et al.*

---

*Sarah Redman*
*May 20, 2013*

---

*Tri-State Reporting, Inc.*

*901 S. Kenmore Drive*

*Evansville, IN  47714*

*Phone:  (812) 477-7666    Fax: (812) 477-8032*

*www.tsreporting.com*

Original File redman.txt
Min-U-Script® with Word Index

DEPOSITION OF SARAH REDMAN
TAKEN ON MAY 20, 2013

20

1          just depends on what information, especially with

2          the birth dates and addresses matching --

3     Q  Right.

4     A  -- you can be confident that you've got the

5          correct one.

6     Q  Okay.  All right.  Let me move on to another

7          document, and I think this may be something you've

8          actually brought.  I'm going to mark this as

9          Exhibit 2.

10               (Exhibit 2 was marked for identification.)

11               This is a memo dated February 27, 2013, from

12          Indiana to the County Boards or Circuit Court

13          Clerks.  Ms. Redman, have you seen this document

14          before?

15    A  Yes.

16    Q  Okay.

17    A  But, no, this is not the one that I brought.

18    Q  Okay.  This was sent in February of 2013.  How

19          often do you see these kinds of communications

20          from the Secretary of State or Indiana Election

21          Division?

22    A  Quite often.

23    Q  Quite often.  Would you say at least yearly, maybe

24          more than that?

25    A  I would say at least.  We receive a lot of

DEPOSITION OF SARAH REDMAN
TAKEN ON MAY 20, 2013

21

1       information.

2   Q   Okay.  And when this came to you -- it's obviously

3       not addressed to you personally; it's addressed to

4       all of the clerks.  Would you have gotten it in

5       the mail, as an E-mail attachment?  Do you

6       remember?

7   A   I honestly do not remember how I received that.

8   Q   Okay.  I want to call your attention to the third

9       paragraph of this that starts with "The Indiana

10      Statewide Voter Registration System contains

11      functionality to assist counties with performing

12      this voter list maintenance activity."  And then

13      it instructs counties on canceling registrations

14      in batch by clicking the button.  Do you know what

15      that means?

16  A   I guess it's kind of a loose term for -- regarding

17      cancellations, I guess, my example would be since

18      I clicked -- created my mailing process last year,

19      after two elections, I'm going to be batch

20      canceling, but I don't know so much as just about

21      clicking a button because they specifically have

22      told me not to be so loose with it, to make sure

23      and verify information.  Do you want me to go

24      further into that?

25  Q   Well, please, yeah.

**OPPOSITION APPENDIX EXHIBIT 3**

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO INDIANA'S
DISCOVERY REQUESTS (EXCERPTS)**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| and TRUE THE VOTE, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. 1:12-cv-800-WTL-TAB |
| v. | ) | |
| | ) | |
| J. BRADLEY KING, *et al.* | ) | |
| | ) | |
| *Defendants*. | ) | |
| _____ | ) | |

**PLAINTIFF JUDICIAL WATCH'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Plaintiff Judicial Watch, by counsel and pursuant to Rules 26 and 34 of the Federal Rules
of Civil Procedure, hereby responds to Defendants' First Request for Production of Documents
as follows:

**GENERAL OBJECTIONS**

The following objections are incorporated into each specific response given below:

1.      Plaintiff objects generally to Defendants' request to the extent that they are
overbroad, unduly burdensome, or seek documents that are neither relevant to any party's claims
or defenses nor reasonably calculated to lead to the discovery of admissible evidence.

2.      Plaintiff objects to each request to the extent that such request seeks to impose
any greater obligation than otherwise provided under the rules of discovery set forth in the
Federal Rules of Civil Procedure or any other applicable law.

3.      Plaintiff objects generally to the Defendants' requests to the extent that they seek
documents that are protected by the attorney-client privilege, the work-product doctrine, or are
otherwise protected or immune from discovery.

4. Plaintiff objects generally to Defendants' requests to the extent that they seek documents that are outside Plaintiff's possession, custody, or control.

5. Plaintiff objects to the instructions and definitions contained in Defendants' requests to the extent that the instructions and definitions seek to impose burdens or obligations in excess of those set forth in the Federal Rules of Civil Procedure.

6. To the extent that Plaintiff produces documents in response to any Request to which it has objected, such production is without waiver of any such objection.

7. Plaintiff objects to each request to the extent that it seeks documents that are publicly available, already in the possession of Defendant, or equally accessible to Plaintiffs and Defendants.

8. Plaintiff objects to each request to the extent it seeks documents or information that is privileged under the First Amendment to the United States Constitution ("First Amendment privilege"). More specifically, Plaintiff objects to the disclosure of documents or information that relates to its core political and associational activities, and the political and associational activities of its members. See, *e.g.*, *NAACP v. Alabama*, 357 U.S. 449, 462 (1958) (recognizing qualified First Amendment privilege because "compelled disclosure" by "groups engaged in advocacy" can impose "a restraint on freedom of association"); *International Longshoremen's Assoc. v. Waterfront Com. of New York*, 667 F.2d 267, 271 (2d Cir. 1981) (First Amendment rights are implicated whenever "records of actions that play an integral part in facilitating an association's normal arrangements for obtaining members or contributions" are sought); *American Federation of Labor and Congress of Industrial Organizations v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (compelling public disclosure of a political association's confidential strategic documents and internal materials would "intrud[e] on the 'privacy of

association and belief guaranteed by the First Amendment'") (quoting *Buckley v. Valeo*, 424 U.S. 1, 64 (1976)); *Pollard v. Roberts*, 283 F. Supp. 248, 258 (E.D. Ark. 1968), *aff'd*, 393 U.S. 14 (1968) (*per curiam*) (concluding that the mere threat of disclosure alone "may well tend to discourage both membership and contributions thus producing financial and political injury to the party affected"); *Australia/Eastern U.S.A. Shipping Conference v. United States of America*, 537 F. Supp. 807, 810 (D.D.C. 1982) ("the overwhelming weight of authority is to the effect that forced disclosure of First Amendment activities creates a chilling effect.").

9.      Neither an indication that documents will be produced nor an objection to a Request indicates that Plaintiff possesses the documents responsive to such Request.

10.      Inadvertent disclosure, if any, of documents or information subject to any privilege or protection, including without limitation, the deliberative process privilege, the attorney-client privilege or work product doctrine, shall not constitute waiver of any such privilege.

11.      The specific responses set forth below are based on Plaintiff's best current recollection and documentation reasonably available to Plaintiff at this time, after having undertaken a diligent search and investigation.  Plaintiff may, in the future, recall, identify, or locate additional documentation relevant to his specific responses.  Plaintiff reserves the right, at any time, to revise, correct, add to, supplement, modify, or clarify the specific responses set forth below, although Plaintiff objects to any document request to the extent that it purports to require any such revision, correction, addition, supplementation, modification, or clarification and does not hereby undertake to make or provide any such revision, correction, addition, supplementation, modification, or clarification except to the extent required by the Federal Rules of Civil Procedure.

3

**RESPONSE**:  Plaintiff objects to the extent this request seeks information protected from disclosure under the First Amendment privilege.  Plaintiff hereby incorporates its response to Request No. 2 above.  Subject to and notwithstanding these objections or each general objection first listed above, Plaintiff shall produce documents responsive to this request.

**REQUEST NO. 10**:  Documents sufficient to identify by name, address and telephone number all the alleged members of Judicial Watch that are citizens of the State of Indiana as alleged in Paragraphs 25 and 26 of the Complaint.

**RESPONSE**:  Objection.  This request seeks information protected from disclosure under the First Amendment privilege.

**REQUEST NO. 11**:  All documents relating to any communications between Judicial Watch and its Indiana members regarding the integrity of Indiana's elections and/or the integrity of voter registration rolls.

**RESPONSE**:  Plaintiff objects to the extent this request seeks information protected from disclosure under the First Amendment privilege.  Plaintiff further objects to the extent this request seeks documents subject to the attorney-client privilege or the work-product doctrine.  Plaintiff hereby incorporates its response to Request No. 2 above.  Subject to and notwithstanding these objections or each general objection first listed above, Plaintiff shall produce documents responsive to this request.

**REQUEST NO. 12**:  All documents identifying any individuals or entities that have provided financial support for Plaintiffs' Lawsuit.

Dated: May 6, 2013                              Respectfully submitted,

|  | |
|--|--|
|  | */s/ Chris Fedeli*<br><br>Paul J. Orfanedes<br>Chris Fedeli<br>Admitted *Pro Hac Vice*<br><br>JUDICIAL WATCH, INC.<br>425 Third Street S.W., Ste. 800<br>Washington, DC 20024<br>Tel: (202) 646-5172<br>Fax: (202) 646-5199<br>Email:  porfanedes@judicialwatch.org<br>        cfedeli@judicialwatch.org<br><br>David R. Langdon<br>Joshua B. Bolinger<br><br>LANGDON LAW LLC<br>8913 Cincinnati-Dayton Rd.<br>West Chester, Ohio 45069<br>Tel: (513) 577-7380<br>Fax: (513) 577-7383<br>Email:  dlangdon@langdonlaw.com<br>        jbolinger@langdonlaw.com<br><br>*Attorneys for Plaintiffs*<br><br>*Of Counsel:*<br><br>J. Christian Adams<br><br>ELECTION LAW CENTER, PLLC<br>300 N. Washington Street, Ste. 405<br>Alexandria, VA 22314 |

**OPPOSITION APPENDIX EXHIBIT 4**

**OPPOSITION DECLARATION OF THOMAS J. FITTON**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| and TRUE THE VOTE, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. 1:12-cv-800-WTL-TAB |
| v. | ) | |
| | ) | |
| J. BRADLEY KING, *et al.* | ) | |
| | ) | |
| *Defendants*. | ) | |
| _____ | ) | |

**OPPOSITION DECLARATION OF THOMAS J. FITTON**

Pursuant to 28 U.S.C. § 1746, I, Thomas J. Fitton, hereby declare and state as follows:

1.     My name is Thomas J. Fitton.  I am over the age of eighteen and have personal knowledge of the facts set forth below.

2.     I am the President of Judicial Watch, Inc. and a member of its Board of Directors.  I have served in these capacities since approximately August of 1998, and in these roles I have broad responsibilities for communications with Judicial Watch's members.  Judicial Watch is a non-profit organization that seeks to promote integrity, transparency, and accountability in government and fidelity to the rule of law.

**Indiana's Request for Judicial Watch's Members' Names**

3.     In the above captioned case, the State of Indiana requested the names and addresses of Judicial Watch's Indiana registered voter members who asked me to bring this lawsuit against Indiana.   We objected to doing so on the grounds that such a disclosure would violate the First Amendment Privilege of Judicial Watch and its members.  Indeed, when I asked our Indiana members, in early 2012, whether they wanted us to bring this lawsuit on their behalf, I made sure they were explicitly informed that their response would not obligate them to participate in

1

litigation.   This communication and instruction was included as an attachment to my first declaration in this lawsuit.  *See* ECF No. 69-3 at p.12.

4.     If such a disclosure were compelled by the Court, it would have a substantial chilling effect on Judicial Watch's ability to communicate with its members and on its litigation activities.  If such member disclosure were forced, I would not be comfortable in the future asking members about their interest in specific litigation where we hoped to represent them in an associational capacity knowing I could not protect their identities.

5.      Many individuals who join, support, and finance Judicial Watch's activities will likely be deterred from doing so if their names and contact information must be publicly disclosed.  Many Judicial Watch members insist on anonymity in this regard because of fear of reprisals by federal, state, or local government officials if their views and advocacy of government transparency and accountability were publicly noted.  This deterrent effect would undermine Judicial Watch's mission by making it harder to recruit members and raise funds. Accordingly, for the good of the organization and its members, Judicial Watch is not likely to prosecute lawsuits on behalf of its members in the future if doing so requires the public disclosure of its membership list.

6.     As President of Judicial Watch, I can attest to the hundreds of thousands of dollars, and hundreds of hours, that this lawsuit has cost our organization and its members. The costs of discovery in this suit alone have been extremely high for a nonprofit advocacy organization like Judicial Watch.  If Judicial Watch were unable to bring this litigation on behalf of its members without disclosing member names, Judicial Watch's election integrity advocacy efforts will be even more costly and time-consuming for the organization and its members in the future.

**Indiana's Continuing Failure to Produce Records**

7.     As I stated in my first declaration in this lawsuit, the Plaintiffs in this case, Judicial

Watch and True the Vote, requested Indiana's records related to list maintenance in February of

2012.  *See* ECF 69-3 at p. 6, ¶ 14.  However, Indiana did not make the records available to us at

that time.  Following initiation of litigation, the Plaintiffs were forced to repeat their demand as a

request for production of documents in December of 2012, which included a request for emails

from Indiana to its counties concerning list maintenance.  *See* Attach. 1.  In response, Indiana

finally produced some records, but did not make the email records available.  The Plaintiffs

repeated their request for these emails in July of 2013, following up again in August 2013.  *See*

Attachs. 2-3.  Indiana still did not make the requested records available.  Plaintiffs repeated this

request for Indiana's emails concerning list maintenance again in October of 2013, this time

threatening a motion to compel if the records were not produced.  *See* Attach. 4.   Indiana has

since made a partial production of the requested emails and certain other documents.  *See* Attach.

5.  However, I understand Indiana's agreed-upon production of emails has not been completed

as of the date of this declaration.


I HEREBY DECLARE under penalty of perjury that the foregoing is true and correct.

Executed on this 8th day of November, 2013 in Washington, DC.

Thomas J. Fitton
President
Judicial Watch, Inc.

**ATTACHMENT 1**

**TO OPPOSITION DECLARATION OF THOMAS J. FITTON**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| and TRUE THE VOTE, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. 1:12-cv-800-WTL-TAB |
| v. | ) | |
| | ) | |
| J. BRADLEY KING, *et al.* | ) | |
| | ) | |
| *Defendants*. | ) | |
| _____ | ) | |

## PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT TRENT DECKARD

Plaintiffs Judicial Watch and True the Vote, by counsel and pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, request that Defendant produce the following records within thirty (30) days:

### DEFINITIONS

The following words or terms shall be deemed to mean the following:

1.      The term "Plaintiffs" shall refer to Judicial Watch and True the Vote.

2.      The terms "Defendant," "State," "Indiana," you," "your," or "your office," shall refer to official capacity Defendant Trent Deckard, including his offices, staff, subordinates, counsel, employees, consultants, representatives, and agents, and all other persons acting or purporting to act on his behalf.

3.      The terms "concerning" and "relating to" shall mean affecting, bearing upon, comprising, concerning, constituting, containing, dealing with, embodying, embracing, encompassing, entailing, evidencing, germane to, identifying, implicating, including,

1

or about July 5, 2006 in *U.S. v. State of Indiana, et al*., Case No. 1:06-cv-01000-RLY-TAB (S.

D. Ind.) and submitted to the Department of Justice from 2006 through 2009.

**RESPONSE NO. 2:**


**REQUEST FOR PRODUCTION NO. 3:**  An electronic copy of the computerized statewide

voter registration list maintained by the State pursuant 42 U.S.C. § 15483(a) and Indiana Code

("IC") § 3-7-43-7.

**RESPONSE NO. 3:**


**REQUEST FOR PRODUCTION NO. 4:**  Communications between you and the United States

Attorney, and between you and any Indiana State entity, concerning records on criminal

convictions and incarcerations for the purpose of conducting a program for the removal of the

names of ineligible voters from the official lists of eligible voters, as well as for the purposes

described in 42 U.S.C. § 1973gg-6(g)(5) and IC § 3-7-46-3(b).

 **RESPONSE NO. 4:**


**REQUEST FOR PRODUCTION NO. 5:**  Communications between you and the Indiana State

Department of Health concerning removal of deceased person from the voter rolls pursuant to 42

U.S.C. § 1973gg-6(a)(4)(A) and IC § 3-7-45-2.1(a).

 **RESPONSE NO. 5:**


**REQUEST FOR PRODUCTION NO. 6:**  Communications between you and the Indiana

County Voter Registration Officials concerning the State's efforts to conduct a general program

that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters.

**RESPONSE NO. 6:**

**REQUEST FOR PRODUCTION NO. 7:**  Communications between you and the U.S. Social Security Administration concerning access to and use of the Social Security Death Index ("SSDI") for the purpose of conducting a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters.

**RESPONSE NO. 7:**

**REQUEST FOR PRODUCTION NO. 8:**  Communications between you and the Department of Homeland Security concerning access and use of the Systematic Alien Verification for Entitlements ("SAVE") database for the purpose of conducting a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters.

**RESPONSE NO. 8:**

**REQUEST FOR PRODUCTION NO. 9:**  Communications between you and the appropriate officials in the governments of other U.S. states concerning access to and use of their computerized statewide voter registration lists to identify individuals who have moved from the State of Indiana for the purpose of conducting a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters.

**RESPONSE NO. 9:**

Dated: December 7, 2012                              Respectfully submitted,

*/s/ Chris Fedeli*

Paul J. Orfanedes
Chris Fedeli
Admitted *Pro Hac Vice*

JUDICIAL WATCH, INC.
425 Third Street S.W., Ste. 800
Washington, DC 20024
Tel: (202) 646-5172
Fax: (202) 646-5199
Email: porfanedes@judicialwatch.org
            cfedeli@judicialwatch.org

David R. Langdon
Joshua B. Bolinger

LANGDON LAW LLC
8913 Cincinnati-Dayton Rd.
West Chester, Ohio 45069
Tel: (513) 577-7380
Fax: (513) 577-7383
Email: dlangdon@langdonlaw.com
            jbolinger@langdonlaw.com

*Attorneys for Plaintiffs*

*Of Counsel:*

J. Christian Adams

ELECTION LAW CENTER, PLLC
300 N. Washington Street, Ste. 405
Alexandria, VA 22314

**ATTACHMENT 2**

**TO OPPOSITION DECLARATION OF THOMAS J. FITTON**



July 15, 2013

*VIA EMAIL*

Mr. Jefferson Garn
Deputy Attorney General
302 West Washington St.
Indiana Government Center South, 5th Floor
Indianapolis, IN 46204

**Re:     Defendants' Responses to Plaintiffs Requests for Production of Documents**
*Judicial Watch and True the Vote v. King et al.*, Case 1:12-cv-00800-WTL-TAB

Dear Jeff:

The purpose of this letter is to bring to your attention certain deficiencies with your clients' discovery responses and document productions in this case. In Plaintiffs' Request for Production No. 6 to Defendants Deckard and King, served on December 7, 2012, Plaintiffs asked for the following documents:

> Communications between you and the Indiana County Voter Registration Officials concerning the State's efforts to conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters.

In that RFP, "you" was defined as anyone in the Indiana Election Division (IED), including the Defendants.

In response, your clients produced several IED operations and procedural guidebooks and manuals directed to the counties for list maintenance. However, your clients have failed to produce a single email between the IED and county officials, stating the following in their March 8, 2013 response:

> The Indiana Election Division is still attempting to identify other communications responsive to this request and will supplement this response as those materials are identified. The Indiana Election Division's response is primarily limited to manuals, guidebooks, memos, presentations and other communications approved by both Co-Directions based upon holding in *Sammons v. Conrad*, 740 N.E.2d

Mr. Jefferson Garn
July 15, 2013
Page Two

114 (Ind. 2000) that the Indiana Election Division cannot take official action without the approval of both Co-Directors.

To the extent you still plan to supplement your production with email communications, we ask you to do so promptly. To the extent you believe you may limit your production to only "official" communications from the IED to the counties, we disagree. All communications between the IED and the counties concerning list maintenance are both relevant to this lawsuit and discoverable, and therefore must be produced. Accordingly, please produce all email and other communications between the IED and the counties as soon as possible.

We hope the Defendants will correct this deficiency in their discovery responses and production promptly so that it will be unnecessary to involve the Court. Please call me if you wish to discuss the issue. I look forward to receiving the documents.

Sincerely

Christopher A. Fedeli

Cc:  J. Christian Adams
     Counsel of Record

**ATTACHMENT 3**

**TO OPPOSITION DECLARATION OF THOMAS J. FITTON**

## Christopher Fedeli

| | |
|---|---|
| **From:** | Christopher Fedeli |
| **Sent:** | Friday, August 09, 2013 5:34 PM |
| **To:** | 'Garn, Jefferson' |
| **Subject:** | RE: your vm about settlement |

Ok, I appreciate the update.  One reminder about redacting voter information, just to avoid any potential issue.  We won't object to your redacting voters' social security numbers or driver's license numbers, but we do expect you to produce the documents without redacting other voter identifying information, including names, addresses, death dates, birth dates, or removal dates.  This is required under the NVRA -- *see Project Vote v. Long*, 682 F.3d 331, 340 (4th Cir. 2012).  I'm not sure whether you were referring to that kind of information or not, but just to make things go more quickly.

Let me know if you want to have a phone call next week about the other discovery or expert matters you mentioned.  Happy to do so.

**From:** Garn, Jefferson [mailto:Jefferson.Garn@atg.in.gov]
**Sent:** Friday, August 09, 2013 4:59 PM
**To:** Christopher Fedeli
**Subject:** RE: your vm about settlement

I can't give you a date certain right now with respect to a response to your letter about settlement.  I understand your calendar concerns, and will try to get one as soon as possible.  Right now our priority is to get you your discovery items.  This has involved more work than anticipated because there is quite a bit of confidential information that will need to be redacted prior to production.  It doesn't look like there's much in the way of privileged documents, so you should be getting a lot of documents.  You should get that early next week.  These items will clarify further the work done by the state in terms of NVRA compliance.

We have some other discovery and expert matters that we'll need to work out as well, but I can send you a separate communication about that once we get this discovery review resolved.

Hope all is well and that you have a good weekend.

Best regards,

Jeff

**From:** Christopher Fedeli [mailto:CFedeli@JUDICIALWATCH.ORG]
**Sent:** Friday, August 09, 2013 10:13 AM
**To:** Garn, Jefferson
**Subject:** RE: your vm about settlement

Jeff, I hope you don't mind me following up about this again.  What can you tell me?

**From:** Christopher Fedeli
**Sent:** Tuesday, August 06, 2013 6:45 PM
**To:** 'Garn, Jefferson'
**Subject:** RE: your vm about settlement

**ATTACHMENT 4**

**TO OPPOSITION DECLARATION OF THOMAS J. FITTON**

**Christopher Fedeli**

| | |
|---|---|
| **From:** | Christopher Fedeli |
| **Sent:** | Thursday, October 03, 2013 6:10 PM |
| **To:** | Jeff Garn (jefferson.garn@atg.in.gov) |
| **Subject:** | Discovery in JW and TTV v. King et al. |
| **Attachments:** | RE: documents / birthdates; RE: your vm about settlement; RE: your vm about settlement |

Dear Jeff:

I'm glad we could speak by phone yesterday in an attempt to resolve our outstanding discovery dispute. Per my voicemail earlier today, I still hope that you will agree to promptly produce the documents we requested so we can resolve this dispute without involving the Court. However, after considering the issues you raised and in light of your September 27, 2013 letter and production, we remain unsatisfied with your response thus far. Accordingly, we still plan to file a motion to compel production <u>unless</u> you promptly begin producing the documents we asked for, and you do so on a rolling basis. If you and your clients sincerely intend to comply with our request, it should pose no difficulty for you to send me your first rolling production of IED emails as a .pdf attachment no later than Wednesday, October 9, 2013.

Our concerns are well founded. First, as we discussed yesterday and as you described in your letter, you have produced virtually no emails from officers or employees of the Indiana Election Division to county election officials, which is what we asked for in our July 15, 2013 letter. A review indicates you produced only a small number of emails from IED outside vendors, along with a large volume of word or other office documents. Second, the documents you did produce managed to redact the wrong information, despite our conversations concerning this very subject. You had previously agreed to produce voter names and birth years as required by the NVRA, but not birth days and months (see attached correspondence). And yet, the documents you produced redacted birth *years*, but *not* days and months. I'll reiterate that we believe the NVRA requires you to produce full voter birth dates and years without redaction, and I'm disappointed that my prior willingness to compromise on that issue was not met with cooperation on your end. Third, over the past two months you informed me on at least two occasions that you would produce the documents I had requested (see attached), only to advise me by a letter that I received Tuesday in the mail that you now felt our request was overbroad. You had over two months to consider my request and state any objections or ask for clarification, and yet you did not do so until your letter dated September 27, 2013.

Finally, we disagree with your contention that our request was overbroad or unduly burdensome, or that it is appropriate or necessary for plaintiffs to provide you with the additional clarifying information that you requested from me – for the first time – yesterday by phone. However, in the hope of avoiding the Court's involvement in this disagreement, here is the information you requested:

For my July 15, 2013 request for production, we seek emails from the following IED Co-Directors and staff employees: Trent Deckard, Pamela Potesta, Kristi Robertson, Michelle Brzycki, Leslie Barnes, Cody Kendall, J. Bradley King, Dale Simmons, and Lori Clark.

The time frame for this request is January 1, 2006 through the present (excluding the 90 days prior to the date you produce, as we discussed).

Additionally, here are the search terms I would suggest. Please note the following search term sets use very standard and widely published boolean symbols and connectors, the meaning of which you should be able to determine. However, you will need to make sure these symbols will work as intended on your system. If they don't, these search terms can easily be expanded to approximately two dozen search terms which include all variations of each root word paired with each match variant, and which replace "w/15" with "and."

purg!
vote! w/15 remov!
list! w/15 remov!
roll! w/15 remov!
maint! w/15 list!
maint! w/15 roll!
maint! w/15 remov!
maint! w/15 vote!
dead
died
deceased
move!
moving
relocat!

Our original production request was reasonable under the case management plan, and with this additional information it is now even more so.  If you disagree, please let me know promptly.

Sincerely,

Chris Fedeli | **Judicial Watch, Inc.**
425 Third Street, SW | Washington, DC 20024
Tel: (202) 646-5185 | CFedeli@judicialwatch.org
Website:  www.judicialwatch.org
Areas of Law:  www.judicialwatch.org/amicus-briefs

  

**ATTACHMENT 5**

**TO OPPOSITION DECLARATION OF THOMAS J. FITTON**

**STATE OF INDIANA**
## OFFICE OF THE ATTORNEY GENERAL
INDIANA GOVERNMENT CENTER SOUTH, FIFTH FLOOR
302 W. WASHINGTON STREET • INDIANAPOLIS, IN 46204-2770
www.AttorneyGeneral.IN.gov

**GREG ZOELLER**
INDIANA ATTORNEY GENERAL

TELEPHONE: 317.232.6201
FAX: 317.232.7979

October 8, 2013

Chris Fedeli
425 Third Street S.W., Ste. 800
Washington DC 20024

RE:     **NVRA/DISCOVERY PRODUCTION**
        *Judicial Watch, Inc. and True the Vote v. J. Bradley King, et al.*
        Case No. 1:12-cv-800-WTL-TAB

Dear Mr. Fedeli:

As we discussed yesterday, I am producing the enclosed DVD with unredacted documents. If we were to produce documents in response to a discovery request, we would be required to redact certain private information. On the other hand, if we produce documents under the National Voter Registration Act, case law suggests we would not be allowed to redact some of that same information; e.g., the month and date of birth of a voter. Therefore, for the sake of simplicity and efficiency, we are providing the enclosed DVD with unredacted documents pursuant to the NVRA. If the plaintiffs choose to use any documents with private information in this case, please redact that information prior to such use. We will produce subsequent documents in a similar manner, and would ask you to redact any private information prior to use in this case.

Please let me know if you have any questions.

Sincerely,

Jefferson Garn
Deputy Attorney General