UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JUDICIAL WATCH, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) 1:12-cv-800-WTL-TAB |
| | ) |
| J. BRADLEY KING, et al., | ) |
| | ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The parties both moved for summary judgment and responded in opposition to the others' motion. Much has been written already; therefore, the defendants will keep this reply short and directly reply to only a few essential matters the plaintiffs raised in their opposition to the defendants' motion for summary judgment. The defendants remain entitled to judgment in their favor and request that this Court enter judgment in their favor.

The plaintiffs, in their response to the defendants' motion for summary judgment, object to multiple facts presented by the defendants in their motion for summary judgment, arguing that phrases and terms like "works closely with its vendors," "some activities," and "encourages" are vague; yet somehow the phrase "reasonable effort" "has a specific meaning." Dkt. 74 at 1. One thing that should be noted in terms of the plaintiffs' response to the defendants' statement of the facts relates to the budgeting issues, where the defendants second guess and abstractly criticize certain budgeting decisions of state agencies without citing any particular areas where Indiana state officials have unwisely or ineffectively spent allocated funds. E.g. *id.* at 15-17. Again, as repeated in both the defendants' motion for summary judgment and opposition to the plaintiffs' motion, the state has obligations under the entire National Voter Registration Act ("NVRA") and

also obligations under the Help America Vote Act (which mandates that states keep computerized lists accurate, but, as the plaintiffs' implicitly concede, provides no private right of action). Dkt. 69 at 4. The defendants have properly balanced many obligations under federal and state law, make reasonable efforts to carry out a general program to remove deceased and relocated voters, and are entitled to summary judgment in their favor.

### I.   Indiana makes reasonable efforts to maintain accurate voter rolls

The plaintiffs argue that the phrase "reasonable efforts" has a clear meaning, but after multiple filings, it is unclear how even the plaintiffs define this vague phrase. The plaintiffs look to various takes on the term "reasonable," but do not cite any clear definition of "reasonable efforts." Dkt. 74 at 14. As noted in the defendants' motion for summary judgment, courts have noted the term "reasonable efforts" is so vague as to make unavailable any judicial review of a state's action in certain instances. While the NVRA does appear to provide an enforceable right by its terms, the pith of the courts' interpretation and understanding of the phrase "reasonable efforts" endures – Congress's choice to use such a phrase means that this is a generalized duty for the states. *Suter v. Artist M.,* 503 U.S. 347, 362 (1992). Some of the defendants' efforts to maintain the rolls are laid out in their motion for summary judgment (Dkt. 71 at 3, 14-15). These efforts are reasonable in light of their generalized duty under the NVRA.

But the plaintiffs argue that this term – reasonable efforts – may be spun into a list of obligations defined by two private organizations, enabled by a former elected official from Georgia whose singular experience in one state is supposed to define the obligations for the rest of these united States.

Relatedly, the plaintiffs argue that states are entitled to no deference in terms of election list maintenance. Dkt. 74 at 15. The Seventh Circuit holds otherwise. Judge Posner stated that

the Circuit had previously "warned . . . against federal judicial micromanagement of state regulation of elections." *Stevo v. Keith*, 546 F.3d 405, 409 (7th Cir. 2008)(internal citations omitted). In addition, the Seventh Circuit also found, in a case cited by the plaintiffs, that a district court's decree obligating a state to carry out a certain obligation not specifically mandated by the NVRA was improper. *Ass'n of Cmty. Organizations for Reform Now (ACORN) v. Edgar*, 56 F.3d 791, 792-93 (7th Cir. 1995). Specifically, the Seventh Circuit stated that the Department of Justice and the district court that ordered certain steps for the state of Illinois to take with respect to elections, "failed to exhibit an adequate sensitivity for the principle of federalism." And while the plaintiffs demand a decree that would involve this Court in a protracted supervisory role, the Seventh Circuit in that case went on to say that "federal judicial decrees that bristle with interpretive difficulties and invite protracted federal judicial supervision of functions that the Constitution assigns to state and local governments are to be reserved to extreme cases of demonstrated noncompliance with milder measures." *Id.* at 798. This is far from an extreme case, but rather one where the defendants have demonstrated compliance with federal law.

Finally, the defendants are not arguing that the principle of *Chevron* strictly applies, only that, by analogy, the principle of deference toward a federal agency provides guidance toward interactions between courts and state legislatures and agencies. Here, the defendants have made reasonable efforts, and continue to try to improve efforts.

**II.     The plaintiffs cannot meet their burden of demonstrating any violation of the NVRA**

In their complaint, the plaintiffs cited a Pew Study that, they suggested, supported their allegation that Indiana's voter rolls were inaccurate. Dkt. 1 at 6. Pew based its finding on the data compiled by the organization Catalist LLC. (http://www.pewstates.org/uploadedFiles/ PCS_

Assets/2012/Pew_ Upgrading_Voter_Registration.pdf).  In fact, the very study cites the work of the defendants' expert in this case. *Id.* Now suddenly, when a closer look at the data by an expert unquestionably qualified to analyze statistical data reveals that Indiana's voter list are relatively accurate, the defendants plead that the data from Catalist is unreliable, citing a vacated district court decision that analyzes separate, unrelated data that had been compiled by Catalist. Dkt. 74 at 18.  The fact is that the defendants have the only empirical evidence specifically related to the accuracy of voter lists, and that evidence demonstrates that Indiana's rolls are not inaccurate when compared to other states.  The plaintiffs again rehash voter registration numbers related to a few counties in Indiana in relation to census data.  Dkt. 74 at 22.  But they provide no qualified expert who can assist the parties and the Court in understanding if or how these numbers may be related. Instead, they rely on an "expert" who merely recites conclusory statements that these numbers are related and show that the voter lists are inaccurate.  Moreover, the plaintiffs again mention some supposed "industry standards," but fail to provide an expert who could say what these industry standards are (even if such standards could actually be established), instead relying on a former elected official who, for the reasons stated in the defendants' opposition to the plaintiffs' motion for summary judgment, should be excluded as a witness. Karen Handel, a former elected official, is not qualified to provide this Court with demographical analysis or with an analysis of how the states as a whole carry out voter list maintenance.

  As the only evidence that will be available to the Court shows that Indiana's rolls are relatively accurate, there is nothing to show that the defendants have not made reasonable efforts to maintain the voter registration rolls, the plaintiffs have not been harmed, and thus the defendants' motion for summary judgment should be granted.

### III. The plaintiffs have no standing to sue

The plaintiffs do not have standing to sue. First, as noted above, they have not been harmed because the voter registration rolls are relatively accurate. Second, the plaintiffs claim that some unnamed members of Judicial Watch wanted the organization to file suit on their behalf, but now the plaintiffs do not want to disclose even one member who is a citizen of Indiana. Instead, they hope to rely solely on hearsay statements by the president of Judicial Watch to support their claim of injury. But "unsubstantiated hearsay statements alleging that unnamed individuals" are harmed cannot fend off summary judgment. *Indiana Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 819 (S.D. Ind. 2006) *aff'd sub nom. Crawford v. Marion Cnty. Election Bd.,* 472 F.3d 949 (7th Cir. 2007*) aff'd,* 553 U.S. 181(2008). In addition, the plaintiffs incorrectly seem to suggest that the defendants' conceded that the plaintiffs were harmed. To the contrary, the defendants witnesses stated a truism – that voter lists are impossible to keep 100% accurate, and that some Indiana residents (never identified as members of plaintiff organizations) at times found it upsetting when, for example, someone they knew to be deceased was still on the rolls. Dkt. 74 at 27. But the safeguards built into the NVRA itself assure that such will be the case, and the plaintiffs' own "expert" concedes that it is likely impossible to maintain absolutely up-to-date rolls. Dkt. 75-7 at 25.

Thus, because the plaintiffs only provide unsubstantiated hearsay statements in support of their argument alleging harm, summary judgment should be granted in the defendants' favor.

### IV. Indiana's records are available, and there no requirement to produce documents

While the exact point of the plaintiffs' argument about production or availability under the NVRA is unclear, it is certainly disingenuous. First, it is undisputed that the plaintiffs did not, as required by the NVRA, provide notice, *prior to filing the lawsuit*, that Indiana had

5

*violated* the records requirement of the NVRA in 42 U.S.C. § 1973gg-6(i). The plaintiffs' apparently are arguing that a request for production in an ongoing lawsuit is sufficient notice that a lawsuit will be filed in ninety days.  It is unclear what this could mean.  Rather, the plaintiffs' failure to provide notice on this particular claim in itself bars the plaintiffs' claim here.

But the plaintiffs did not state a claim cognizable under the NVRA records requirement. They misstate what the NVRA requires – that States make the records available for public inspection, not that they produce the documents for anyone who makes an overly broad, vague, unspecified, and wholly unreasonable demand.

The plaintiffs' argument that discovery in this lawsuit is all just a records request is disingenuous, and misrepresents the parties' understanding in terms of production. These documents are being produced under the case management plan, as plaintiffs' counsel's email clearly states. Dkt. 32 at 4; Dkt. 74-1, p. 32.  The plaintiffs have not offered to bear the costs of the document search and retrieval, and reproduction, as a strict NVRA request would require.  42 U.S.C. § 1973gg-6(i).

The plaintiffs also argue that the NVRA suggests that the plaintiffs may sue if documents are not produced in ninety days.  There is no such suggestion. An aggrieved party must first provide notice of a *violation*.  Here, there was a demand for production of documents – something not required by the NVRA – and the plaintiffs want that to be a request and notice of violation all at the same time. The defendants did not violate the NVRA and did not receive notice that they had allegedly violated the NVRA.  Thus, judgment in favor of the defendants should be granted in their favor.

V.   Conclusion

Indiana carries out a general program that makes a reasonable effort to remove deceased and relocated registrants, as required by the NVRA.  The plaintiffs were not harmed, and cannot show they were harmed by any alleged action or inaction by the State.  For the reasons stated in their motion for summary judgment, final judgment on both counts should be entered in favor of the defendants.

        Respectfully submitted,

        GREGORY F. ZOELLER
        Indiana Attorney General
        Attorney No. 1958-98

By:    /s/ Jefferson S. Garn
        Jefferson S. Garn
        Deputy Attorney General
        Attorney No. 29921-49

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of November 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to the counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

| | |
|---|---|
| **Paul J. Orfanedes**<br>JUDICIAL WATCH, INC.<br>porfanedes@judicialwatch.org | **Chris Fedeli**<br>JUDICIAL WATCH, INC.<br>cfedeli@judicialwatch.org |
| **David R. Langdon**<br>LANGDON LAW LLC<br>dlangdon@langdonlaw.com | **Joshua B. Bolinger**<br>LANGDON LAW LLC<br>jbolinger@langdonlaw.com |
| **J. Christian Adams**<br>ELECTION LAW CENTER<br>adams@electionlawcenter.com | |

*/s/ Jefferson S. Garn*
Jefferson S. Garn
Deputy Attorney General

Office of the Indiana Attorney General
Indiana Government Center South, 5th Floor
302 W. Washington Street
Indianapolis, IN  46204-2770
Telephone:    (317) 232-6292
Fax:              (317) 232-7979
Email: jefferson.garn@atg.in.gov