**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| and TRUE THE VOTE, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. 1:12-cv-800-WTL-TAB |
| v. | ) | |
| | ) | |
| J. BRADLEY KING, *et al.* | ) | |
| | ) | |
| *Defendants*. | ) | |
| _____ | ) | |

**<u>PLAINTIFFS' RESPONSE TO SHOW CAUSE ORDER</u>**

The Court's May 13, 2014 Show Cause Order asks Plaintiffs to respond if they "disagree with the Court's assessment of the applicable law, or if they believe they have demonstrated an ongoing violation of federal law."  ECF No. 88 at 4.  Plaintiffs believe that summary judgment for Defendants is inappropriate under the law and facts for several reasons.

First, additional evidence Plaintiffs have obtained, some of it since summary judgment briefing ended, shows that Defendants remain in ongoing violation of NVRA Section 8. Indiana's voter rolls have worsened based on data that only became publicly available after this lawsuit commenced.  The evidence further shows that Indiana's efforts to conduct voter address confirmation and removals of deceased voters have proceeded at a snail's pace and with significant problems.  At a minimum, these material facts make it premature for the Court to grant summary judgment for Defendants.

Second, a careful review of House Enrolled Act ("HEA") 1391 and Senate Enrolled Act ("SEA") 519 shows that they do not, on their own, ensure Defendants will comply with federal law in the future.  Instead, HEA 1391 and SEA 519 merely give Defendants more power to comply with NVRA Section 8 if they so choose.  Defendants could implement HEA 1391 and

SEA 519 and still violate NVRA Section 8. The issue before the Court is *not* whether there is a likelihood that Defendants will violate HEA 1391 and SEA 519 in the future, but whether they will violate Section 8. The Court should recognize that HEA 1391 and SEA 519 merely give Defendants more state law powers to perform reasonable list maintenance – something they were already required to do under NVRA Section 8. Finally, even if these new state laws did mandate compliance with Section 8, they could not be determinative of Plaintiffs' federal law claims pursuant to the U.S. Constitution's *Elections Clause*. The new Indiana state laws should not be viewed as fully ameliorative.

Third, because passage of HEA 1391 and SEA 519 does not constitute evidence of compliance with NVRA Section 8, judgment for Defendants is not appropriate as a matter of law. In considering the Eleventh Amendment, the issue before the Court is whether there is a likelihood of future federal law violations in light of the history of Section 8 violations in Indiana. HEA 1391 and SEA 519 do not constitute evidence that a future violation of *federal* law is unlikely. In considering mootness, the issue before the Court is whether Defendants' past violations of federal law – NVRA Section 8 – are capable of repetition while evading review, which they are. Plaintiffs are not seeking an injunction to prevent future violations of Indiana state law, but one that ensures compliance with federal law. Lastly, Plaintiffs have no need to show an ongoing violation of federal law under *Ex parte Young* because the burden has shifted to Defendants to show that the violations have been corrected, and Defendants have not provided such evidence. HEA 1391 and SEA 519 do not constitute such evidence.

Finally, Plaintiffs' efforts to obtain records under NVRA Section 8(i) required two years of litigation and two separate Orders from this Court directing Defendants to produce the

records.  If the Court dismisses Count II, it should be with a finding that Plaintiffs have

substantially prevailed on their claim.

## I.      Evidence Plaintiffs Have Obtained Shows the NVRA Section 8 Violations Are Ongoing

The evidence uncovered in this case shows that Defendants' violation of Section 8 is

ongoing, and any compliance efforts to date have been partial at best.  The weight of the

evidence submitted with Plaintiffs' Motion for Summary Judgment shows that systemic list

maintenance problems currently exist in the State of Indiana and have existed for well over a

decade.  Plaintiffs' MSJ Brief, ECF No. 69 at 6-13.  Plaintiffs' evidence also shows that Indiana

has a history of recidivism when it comes to Section 8 violations, having corrected problems

following its 2006 consent decree with the U.S. Department of Justice only to slip back into

noncompliance thereafter.  ECF No. 69 at 5, 10-11, 23.  At a minimum, this evidence gives rise

to significant disputed questions of fact which render summary judgment on Eleventh

Amendment or mootness grounds inappropriate.

Perhaps the most significant question of fact remaining is that voter rolls in Indiana

continue to be inaccurate.  Multiple counties continue to have more registrants than age eligible

citizens living in those counties.  Only within the last month have the Defendants begun to take

concrete steps to address this circumstance.[1]  Indeed, Defendant Secretary of State Connie

Lawson was quoted just last week in the *Indianapolis Star* as saying, "It is estimated that at least

one in eight voter registrations contain inaccurate information. . . . We think our turnout numbers

are artificially low because there are people who haven't notified us they've moved out of

---

[1] *See* "Indiana begins effort to trim bloated voter registration lists," *Indianapolis Star*, Barb
Berggoetz, May 26, 2014, at http://www.indystar.com/story/news/politics/2014/05/26/indiana-
begins-effort-trim-bloated-voter-registration-lists/9607169/ (visited June 2, 2014).

state."[2]  The Defendant's own statements create a core question of fact – whether or not Indiana's voter rolls are accurate.

Other data support Secretary Lawson's admission that Indiana's voter rolls remain corrupted with ineligible voters.  Even after this lawsuit was filed, data show that the accuracy of the rolls in Indiana continued to deteriorate.  When Plaintiffs filed their Complaint, the most recent publicly available data from 2010 showed 12 Indiana counties had more registrants than age-eligible citizens alive in those counties.  Complaint, ECF No. 1 at ¶ 14.  When the 2012 data became available, Plaintiffs undertook a new comparison which showed Indiana had climbed to 16 counties with more registrants than age-eligible citizens alive in those counties.  Exh. 1.  Indiana's voter rolls have only become more outdated and less accurate in recent years.

A question of fact exists in this case as long as any Indiana county has such numerically implausible registration numbers.  The significance of this outstanding and unresolved factual question is increased when the most recent available data show the problem is growing rather than abating, as was the case from 2010 to 2012.  The Defendants possess the most current registration data and should be required by this Court, at a minimum, to provide those data in reply to this response to ascertain how many counties continue to have more registered voters than eligible citizen residents as of today.  If the data show continued implausibility, as Defendant Lawson described to the *Indianapolis Star* last week, then a question of fact remains and summary judgment should not be granted.

Moreover, only within the last three months have the Defendants issued a "Request for Quotation" in search of vendors to manage the state's voter list maintenance activities.  Exh 2.  The vendor contract contemplated by the Defendants is "**to complete** Voter List Maintenance

---

[2] *Id.*

activities pursuant to the National Voter Registration Act of 1993 (NVRA) and applicable

Indiana Statutes (IC 3-7-38.2)." Exh 2, p. 3 (emphasis added). Accordingly, the explicit terms

of the Defendants' own Request for Quotation state that list maintenance activities are

incomplete, and a contract would be awarded "to complete" them. Not only does it appear that

continued inaccuracies exist on Indiana's voter registration rolls, but the Defendants have barely

begun to address those circumstance. Plaintiffs suggest this Court might wish to continue its

oversight long enough to determine if a list maintenance vendor is hired and successfully

executes its tasks before determining the Eleventh Amendment applies.

Not only do the data create a question of fact, but so does the Defendants' response to the

problem. An email from the Floyd County Clerk in 2013 supports an inference that a question of

fact exists whether the Defendants have a reasonable list maintenance program. "Morning,"

Floyd County Clerk Linda Moeller wrote to the Defendants. "Is the election division going to

send out a reminder on voter list maintenance? We checked back and the last letter we got was

2/13/2009 [four years previously]." Exh 3. Other clerks experienced the same lack of

management. The Madison County clerk wrote Defendants Deckard and King on the eve of the

2012 election stating, "we must have a voter maintenance program in place. Please explain the

process of voter list maintenance programs and the Indiana Code that pertains to it." Exh. 4.

As recently as 2013, documents provided to the Plaintiff in discovery show that

Defendants continued to dither over using the Social Security Death Index database to detect

deceased individuals on the rolls. For years, the "Core Team Meeting Agenda" on obtaining this

data remained unchanged:

> In September 2008, the SSA contacted IED with an offer to sell the SSA Master
> Death File for $1552.50. Quest went through this exercise with VA and has the
> following results: Virginia loaded 10 years worth of data from the master death
> file when they went live, about 2 years ago. Since then they've updated their

> death file data monthly. . . . Current VA death information requires about 50GB
> of disk space.  If IN would like to use this file, Quest would likely need to
> purchase additional disk space to accommodate these files, depending on the
> number of years purchased.

*See e.g.* Exh. 5, p. 4, January 2013 Core Team Status Agenda.  The Defendants' inaction on

obtaining the Social Security Death index for $1,552.50 year after year and at least through 2013

creates a factual question whether or not the Defendants have implemented a reasonable

maintenance program, or even are inclined to do so.

As recently as 2012, the Defendants were not adequately maintaining the voter rolls to

remove dead voters.  Documents provided to the Plaintiffs in discovery show that a defect in the

Defendants' list maintenance procedures regarding the "death hopper" persisted over the course

of years despite the Defendants repeated assumption they had corrected the defect.  The "death

hopper" is the data provided by the Defendants to local election officials.  The failure to detect

deceased registrants is a failure which will impact the current condition of voter rolls.  The

"death hopper" provided by the Defendants was to be the primary, if not the sole, means by

which a deceased registrant could be canceled.  Documents show, however, that the "death

hopper" was wildly incomplete even as recently as 2012 after this case was filed.

Problems with removing deceased registrants first emerged in 2011.  The Howard County

clerk wrote the Defendant King about incomplete death hopper data on April 12, 2011.  Exh. 6.

The Howard County clerk noted she only received deaths from her county for 2008 and 2010 and

asked whether the problem was resolved.  *Id.* "So far as I know" was the Defendant King's

response.

King was wrong.  The problem persisted across the state.  On July 14, 2011, the Jefferson

County clerk wrote Defendant King on July 14, 2011, stating: "I have attached a file of deceased

voters that were listed on our Jefferson County Health Department list as having passed away.

As yet I have not received anything from that State Department of Health so I can remove them." Exh 7.

Problems with removing deceased registrants continued into 2012, despite the Defendants' assurances that the glitch had been fixed.  On August 16, 2012, after this lawsuit was filed, the Clark County clerk emailed Defendants about continuing problems with the death records.  The clerk had a voter's obituary, and had county-level data that the voter had died but the state's data could not confirm the death.  "But looking back, as far as we can tell, we did not receive a DOH Match in our Hopper."  Exh. 8.  The response from the Defendants on August 17, 2012?  The "issue may suggest a systemic problem with statewide implications that is more important to fix than work around on an ad hoc basis."  Exh. 8.  The admission of a "systemic problem" as recently as 2012, during the course of this litigation, creates a core question of fact.  Defendants, over the course of years, were failing to provide adequate data about registrants who had died.  Thus, those registrants invariably remained on the rolls, even in the absurd circumstance where local election officials may have attended their funeral or read their obituary.  *See* Exh. 9, Coleman Tr. at 69:18 to 70:15; Exh. 10, Redman Tr. at 125:19 to 126:3.  And while the SEA 519 and HEA 1391 revisions have changed state law in this regard, *see* Ind. Code Ann. § 3-7-45-4(b), the burden should now be on the Defendants to show they have directed and instructed counties on the new procedures for death removals and  cleaned up the problems created under the previous system.

Finally, because of Defendants' recalcitrance and delay in responding to Plaintiffs' NVRA records requests and their discovery requests, Plaintiffs only received certain of the above-described evidence in March of 2014, well after the parties finished briefing summary judgment.  *See* Plaintiffs' Brief Supporting Motion to Compel, ECF No. 81-1.  Indeed, it was

only after the Court *twice* ordered Defendants to produce these documents in February of 2014 that they produced all responsive documents. *See* Court Orders Requiring Defendants to Produce Documents, ECF No. 82, ECF No. 84. Plaintiff would introduce at trial the exhibits submitted with this motion as well as many others which support other inferences described in this response.

In light of this, an award of summary judgment to Defendants is improper. Plaintiffs' evidence shows an ongoing violation likely to repeat itself, and questions of fact remain as to whether Defendants have even achieved partial compliance with Section 8 in the present, notwithstanding recently enacted legislation which the Defendants have barely begun to implement.

**II.    The Passage of HEA 1391 and SEA 519 Does Not Alter the Federal Law Questions Before the Court**

      A.    HEA 1391 and SEA 519 Do Not Require Defendants to Comply with NVRA Section 8, but Merely *Allow* Compliance, and So Are Not Evidence of Compliance

A closer examination of HEA 1391 and SEA 519 shows that, at a minimum, further evidence is required to support the Court's proposed ruling. These two bills, while helpful, are not solutions to Indiana's historical NVRA Section 8 compliance problems. The history of Section 8 violations in Indiana must be considered. First – Indiana is now a repeat NVRA offender. This Court has within the last decade entered a consent decree against the Defendants on a case brought with a nearly identical set of evidence by the U.S. Department of Justice. Plaintiffs' Opposition to Motion to Dismiss, ECF No. 26 at 4, fn 1. That case was based on multiple Indiana counties have more registrants than citizens eligible – a circumstance that continues unabated. Exh 1. After a brief era of compliance, Indiana's NVRA compliance

lapsed when the 2006 consent decree expired.  ECF No. 69 at 5, 10-11, 23.  If any state officials are capable of repeating NVRA violations, it is the Defendants in this case.

Indiana failed to conduct reasonable list maintenance efforts for years because the state delegated such authority to two Election Division Co-Directors, who were perennially deadlocked over what constituted reasonable list maintenance efforts.  ECF No. 69 at 6-7, ¶¶ 1-3.  During this time, the state conducted very little list maintenance except when under the federal consent decree.  In 2013, after being sued by Plaintiffs and losing their Motion to Dismiss this lawsuit, Indiana finally adopted the long overdue legislative fix of allowing the Secretary of State to break deadlocks between the Election Division Co-Directors concerning list maintenance actions.

The 2013 changes to Indiana's election code now empower one Election Division Co-Director to act in concert with the Secretary of State to break the perennial deadlock on list maintenance actions, but only if the Co-Director and Secretary wish to do so at their discretion.  Accordingly, HEA 1391 and SEA 519 still give the Indiana Defendants sufficient flexibility to either comply with NVRA Section 8 or violate it.

Consider the wording of the key changes to the decision-making structure under HEA 1391 and SEA 519.  For instance, subsection (c) of Ind. Code § 3-6-4.2-3 defining the Co-Directors' responsibilities under the Indiana election code was revised to read as follows:

> (c) The co-directors have equal authority and responsibilities under this title. However, if the co-directors are unable to resolve a dispute between themselves regarding:
>   (1) the commission's or the election division's budget;
>   (2) the commission's or the election division's expenditures; or
>   (3) contracts to which the commission or the election division is a party;
> the secretary of state may decide the matter. A decision by the secretary of state regarding the matter is final.

Two things stand out in this revised state law.  First, in order for this tie-breaking procedure to work, a determination would first have to be made by either the Co-Directors, the Secretary of State, or all three that the Co-Directors are "unable to resolve a dispute."  If the Co-Directors and Secretary instead mutually agree to allow for months or years-long discussion with each other over budgets, expenditures, or contracts, they could avoid invoking the tiebreaking procedure of Ind. Code § 3-6-4.2-3(c).

Second, even after Ind. Code § 3-6-4.2-3(c) is invoked, the Indiana General Assembly's command is only that the Secretary of State "may" break the tie and decide the matter.  If the Secretary of State decides not to break ties on list maintenance expenditures, Indiana will likely continue its historical trend of violating NVRA Section 8.

Similarly, Ind. Code Ann. § 3-7-38.2-18 was revised to stipulate that if the Co-Directors do not perform certain new list maintenance activities identified in chapter 38.2 of the Indiana Code then "the secretary of state shall perform the duty."  However, neither Plaintiffs nor the Court have been presented with evidence as to whether the list maintenance activities identified in this Chapter have been "performed" (or whether they've been performed effectively) by either the Co-Directors or the Secretary.  Neither Plaintiffs nor this Court know what constitutes "performance" of these list maintenance activities in the opinions of Defendants, and nor do they know who has been deciding whether the activities have been "performed" – the Co-Directors or the Secretary.

Finally – in perhaps the most illuminating example as it concerns Plaintiffs' case – consider the 2013 revisions to Ind. Code § 3-7-38.2-16(a), which provided:

> (a)  Not later than October 1, 2013, the election division may enter into a contract with an entity to conduct the address confirmation mailing required under IC 3-7-38.2-16, as amended by SEA 519-2013, SECTION 64. If the election division

> does not enter into a contract before October 2, 2013, the secretary of state may enter into the contract without the approval of the election division.

First, Defendants have never submitted any evidence in this docket to indicate that Defendant Secretary of State Lawson exercised her "may enter" option under this law by forming such a contract by October 2, 2013. But even more revealing is that the facts relevant to this issue have now materially changed *since* the Court's May 13, 2014 Show Cause Order. Specifically, on May 21, 2014, Defendant Connie Lawson announced that Indiana's address confirmation mailing provided for in Ind. Code § 3-7-38.2-16(a) was now underway. Exh. 11, Connie Lawson Press Release. To say that this mailing is welcome news to Plaintiffs is an understatement, as Plaintiffs have been advocating for it before this Court for two years. The fact that Defendants' list maintenance activities continue to evolve even as this Court considers summary judgment demonstrates that this Court's continued exercise of jurisdiction over Indiana's compliance with federal law is not only warranted, but needed.

### B. Indiana's New State Laws Would Not Be Determinative Even If They Mandated Compliance with NVRA Section 8

In any event, as Plaintiffs have previously explained, Indiana state law is ultimately irrelevant to the merits of Plaintiffs' claims or this lawsuit because the U.S. Constitution's *Elections Clause* unambiguously states that federal laws governing the time, place, and manner of federal elections act to alter any inconsistent state laws. U.S. Const., art. 1, § 4, cl. 1; ECF No. 69 at 1-2; ECF No. 74 at 16-17. NVRA Section 8, enacted pursuant to the *Elections Clause*, requires the states to designate officials responsible for compliance with federal list maintenance laws, and those officials are then responsible for list maintenance efforts which comport to federal standards. If a state's list maintenance laws are consistent with this purpose, then those state laws may be helpful in making the state NVRA official's job easier to complete. If a state's

list maintenance laws either frustrate or prevent the NVRA official's effort to comply with federal law, the state's laws are preempted.  ECF No. 69 at 2; ECF No. 74 at 16.  However, the question before the Court is whether the state officials are acting in compliance with federal law. The existence of helpful or unhelpful state laws is not currently at issue, as Plaintiffs do not claim that the provisions of HEA 1391 and SEA 519 are preempted by Section 8.

Accordingly, pursuant to the U.S. Constitution's *Elections Clause*, it is not possible for HEA 1391 and SEA 519 to be determinative of whether Defendants are now in compliance with the NVRA.  State laws in the area of federal elections "terminate" pursuant to federal law. *Arizona v. Inter Tribal Council of Ariz., Inc*., 133 S. Ct. 2247, 2257 (2013); ECF No. 69 at 1-2; ECF No. 74 at 16-17.  In delineating the relationship between state election laws and federal *Elections Clause* statutes, courts must "view[] the federal act as if it were a subsequent enactment by the same legislature."  *Gonzalez v. Ariz*., 677 F.3d 383, 394 (9th Cir. 2012), *aff'd*, *Arizona v. Inter Tribal Council of Arizona*, 133 S. Ct. 2247 (2013); *Foster v. Love*, 522 U.S. 67, 74 (1997); *Voting for Am., Inc. v. Andrade*, 488 Fed. Appx. 890, 922 (5th Cir. 2012); *Kobach v. United States Election Assistance Comm'n*, 2014 U.S. Dist. Lexis 35696, *32 (D. Kan. 2014). NVRA Section 8 requires actions and efforts by state officials to maintain the accuracy of voter rolls.  It does not require states to have particular statutes which prescribe a particular means to that end.   It follows that only actions of compliance by state NVRA officials (or demonstrable results of those actions showing voter rolls have been cleaned) can constitute evidence of compliance with the NVRA.  Defendants have submitted no evidence of changed actions into the record of this proceeding.  Plaintiffs have submitted evidence of continued inaccuracy of Indiana's rolls.

As the Court observes and Plaintiffs acknowledge, the 2013 changes in Indiana's state laws will likely make it easier for Defendants to comply with federal law in the future.  This is a welcome development, but it does not constitute evidence that Defendants' federal law violations have ceased, nor does it necessarily make future federal law violations unlikely.  HEA 1391 and SEA 519 merely give Defendants more power to take actions they were already required to take under NVRA Section 8.  If all three Defendants affirmatively exercise their new list maintenance powers under HEA 1391 and SEA 519 towards the goal of achieving compliance with NVRA Section 8, they will likely achieve compliance with NVRA Section 8.  However, as explained above, it is not even necessary for Defendants to violate the new provisions of HEA 1391 and SEA 519 for them to continue to violate Section 8 – rather, Defendants could merely exercise their considerable discretion under state law in the wrong direction.

    Given Indiana's multi-year history of failing to conduct list maintenance without complete unanimity in the Election Division, this Court should not presume that the new laws have broken old habits and brought Indiana into automatic compliance with NVRA Section 8.  Similarly, given Indiana's history of reverting to past noncompliance following the conclusion of federal litigation, the Court should not presume that positive interim measures will ensure future compliance.  While the passage of HEA 1391 and SEA 519 presents one line of factual inquiry for the Court into whether Defendants have changed their actions to comply with NVRA Section 8, the existence of these new state laws is hardly dispositive of this dispute.  The new Indiana state laws should, therefore, not be viewed as fully ameliorative.  The issues before the Court are whether the Defendants are violating federal law, *and* whether they are likely to continue to do so in the future once this Court is no longer exercising jurisdiction.  A finding of federal law compliance based on the existence of new state laws would misapply the *Elections Clause*, and

the facts here do not warrant a finding that Defendants have achieved full compliance now or are unlikely to fall back into noncompliance in the future.

**III.    Based on Plaintiffs' Analysis of the Impact of HEA 1391 and SEA 519 Now Before the Court, Summary Judgment for Defendants Is Inappropriate**

   A.    The Eleventh Amendment Does Not Relieve Defendants Because Plaintiffs Have Established a Sufficient Likelihood of Future Violations Based on Past Performance

Plaintiffs' case survives the Eleventh Amendment.  As described above, HEA 1391 and SEA 519 do not constitute evidence that the Defendants are no longer violating NVRA Section 8, as the Court's Show Cause Order implies.  ECF No. 88 at 2.  Instead, Plaintiffs have satisfied the *Ex parte Young* exception for a suit brought under federal law by showing federal law violations have occurred in the past and are continuing.  There is also a "threat" or "likelihood" that the violations will occur again in the future.  In such cases, prospective injunctive relief may be granted.  *See Vickery v. Jones*, 100 F.3d 1334, 1346-47 (7th Cir. 1996) (the *Ex parte Young* exception permits relief "when there is an ongoing *or threatened* violation of federal law") (emphasis added); *Maria v. Corona*, 2012 U.S. Dist. Lexis 4947 (ND Ill. 2012) (plaintiffs survive Eleventh Amendment scrutiny under *Ex parte Young* because they "have alleged sufficient facts relating to the *likelihood* that they might be subject to constitutional violations *in the future*.") (emphasis added); *Doe v. Wigginton*, 21 F.3d 733 (6th Cir. 1994) ("[Plaintiff's] claims for injunctive and declaratory relief against the defendants in their official capacity, however, do not seek to remedy a past constitutional violation, but instead seek to prevent future ones.  Since these claims only seek "compliance in the future," they are claims for prospective relief. They accordingly are not deemed to be against Kentucky, and hence are not barred by the Eleventh Amendment."); *Flint v. Dennison*, 488 F.3d 816 (9th Cir. 2007) (cause was not barred by the Eleventh Amendment because it sought injunctive relief to prevent future harms); *Ward v.*

14

*Thomas*, 207 F.3d 114 (2nd Cir. 2000) (the Eleventh Amendment barred the lawsuit since there was no claimed threat of state officials violating the law in the future).

Plaintiffs properly pled and alleged a likelihood of future violations, so their case survives Eleventh Amendment scrutiny. Complaint, ECF No. 1 at 13, ¶ 43. Furthermore, it is widely accepted that evidence of past violations constitutes evidence of the likelihood of future ones. *Sierakowski v. Ryan*, 223 F.3d 440, 445 (7th Cir. 2000) ("To be sure, past wrongs, while not sufficient to confer standing for injunctive relief, may be evidence that future violations are likely to occur."), *citing City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 528 (7th Cir. 2001) (same). In this case, Plaintiffs have demonstrated extensive past violations of NVRA Section 8 on the part of Indiana. *See e.g.* ECF No. 69 at 21-23. Furthermore, Indiana is now a repeat offender of Section 8. After Indiana was sued for violating Section 8 in 2006 by the Department of Justice and entered into a consent decree, it began violating Section 8 again once that consent decree expired. ECF No. 69 at 10-11, ¶ 24. As proof that the new legislation of HEA 1391 and SEA 519 will not prevent ongoing violations, Plaintiffs documented how Indiana officials have a history of failing to exercise authority under their own state laws concerning voter list maintenance. ECF No. 69 at 8, 10, ¶¶ 11-12, 23.

Furthermore, Plaintiffs have now obtained evidence showing the noncompliance has only increased since Plaintiffs' analysis of 2010 data cited in its Complaint. Exh. 1. Specifically, a comparison of 2012 census population estimates and 2012 EAC voter registration data shows that the number of Indiana counties with voter registration totals over 100% has increased from 12 counties in 2010 to 16 counties in 2012. Furthermore, the number of Indiana counties with registration totals between 90% and 100% increased even more dramatically, from 26 counties in

2010 to 42 counties in 2012.  Exh. 1.  So, at a minimum, the current NVRA violations have been

worsening since the expiration of the consent decree in 2009 through at least 2012 – three years.

Even if one views the July 2013 legislative changes as ending the noncompliance – which as

explained above would be far too generous – Indiana's violations were continuing unabated for

at least four years, from 2009 through 2013.  And prior to Indiana's entry into the consent decree

with the Department of Justice, the state was plainly in violation of Section 8 for several years.

ECF No. 26 at 4, fn 1.

Finally, another United States district court examining NVRA violations saw fit to

impose an injunction to ensure future compliance with the NVRA *even after the original*

*violations were corrected by the state officials*.  The language of that opinion is especially

instructive:

> The court's power to grant injunctive relief survives discontinuance of the illegal
> conduct... Ultimately, a court must determine whether there exists some
> cognizable danger of recurrent and future violation... After balancing the
> hardships, the Court finds that a remedy in equity is warranted. Persons such as
> Luther Scott and organizations such as the LSC NAACP will suffer many
> hardships if there is a future violation of the NVRA by voter registration agencies
> and the Louisiana SOS. Further, the hardship to the Defendants is little…. It is
> without doubt that the public would be greatly served by ensuring that Louisiana
> voter registration agencies and SOS comply with the mandates of the NVRA. On
> the other hand, when these entities have voluntarily and in good faith completed
> changes to comply with the mandates of the NVRA, the Court questions whether
> the public interest would be served by issuing a permanent injunction. Ultimately,
> this Court finds that because Defendants are only in substantial compliance, and
> not in full compliance, there is some potential danger that future violations may
> occur. As such, a permanent injunction that is minimal in breadth is warranted.

*Scott v Schedler*, 2013 U.S. Dist. Lexis 9302, *47-49 (E.D. La. 2013) (internal quotes and

citations omitted).  Similarly, the injuries Defendants have caused Plaintiffs will be repeated if

Indiana neglects the maintenance of its voter rolls again in the future.  *Judicial Watch and True*

*the Vote v. J. Bradley King, et al.*, 2012 U.S. Dist. Lexis 174360, *12-16 (S.D. Ind. 2012).

All of the foregoing dictates against the Court awarding summary judgment to Defendants on Eleventh Amendment grounds, as the extent of past violations demonstrates a likelihood of future violations.  Finally, as explained in more detail above in Section II, HEA 1391 and SEA 519 do not guarantee Defendants will comply with Section 8 so much as they give Defendants more power to comply, and in any case the new laws are not equivalent to changed "efforts" or behaviors on the part of Defendants.

     B.  Defendants' Violations Are Capable of Repetition While Evading Review, So <u>Mootness Does Not Apply</u>

Plaintiffs' claims are not moot, because Indiana's NVRA violations are capable of quick repetition without court oversight.  Specifically, Indiana's violations of federal voter list maintenance laws are "capable of repetition, yet evading review."  *Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 528 (7th Cir. 2001).  The "capable of repetition, yet evading review" exception to mootness applies if there is reason to expect the violations will recur in the future.  *Clark v. Thompson*, 1995 U.S. App. Lexis 4056, *11 (7th Cir. 1995); *Protestant Memorial Medical Center v. Maram*, 471 F.3d 724, 730 (7th Cir. 2006) ("this exception permits federal courts to adjudicate cases that would otherwise be moot if two conditions are present: "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party will be subjected to the same action again.").

Plaintiffs' claims should survive on the specific facts before the Court in this case.  First, as explained above, HEA 1391 and SEA 519 do not moot Plaintiffs' claims, because they do not require compliance with NVRA Section 8.  Second, if there was ever a defendant capable of repetition yet evading review, it is Indiana, which has already proven in the past that it corrected list maintenance violations only to relapse into noncompliance once again.  As discussed *supra*,

Indiana is now a two-time offender of NVRA Section 8.  Consider the Department of Justice's

litigation against Indiana over Section 8 in 2006.  At that time, the DOJ sued, and Indiana

entered into a consent decree.  Indiana implemented changes to their list maintenance procedures

which they followed during the consent decree.  ECF No. 26 at 1-4.  And yet, once the consent

decree expired, Indiana ceased the list maintenance practices which would have kept them on the

right side of the law.  Indiana officials admitted in depositions that they stopped conducting the

activities that were remedying their voter list problems.  ECF No. 69 at 10-11, ¶ 24.  Now that

Indiana has been sued again by Plaintiffs, the state has passed new state laws intended to rectify

the problem once again.  However, given Indiana's history of violating NVRA Section 8, the

Court should not view HEA 1391 and SEA 519 as wholly obviating the need for its oversight.

      Plaintiffs' suggestion that the Court could order full compliance with state law provisions

as a remedy for violation of federal law was just that – a suggestion as a matter of convenience.

The Court has broad discretion under the NVRA to order Indiana to undertake specific list

maintenance actions regardless of whether Indiana state law provides for those actions or not.  42

U.S.C. § 1973gg-9(b)(2).  Plaintiffs' suggestion is far from the only relief this Court could order.

As the Eighth Circuit held, a trial court's injunctive options for enforcing NVRA Section 8

include, but are not limited to, ordering states to "develop different or improved methods" for

encouraging county list maintenance activities, or ordering states to "assume direct

responsibility" over county list maintenance tasks.  *U.S. v. Missouri*, 535 F.3d 844, 851 (8th Cir.

2008).  Clearly, the Eighth Circuit contemplated federal trial courts using their broad injunctive

powers in a way that addresses the specific NVRA compliance problems an individual state is

having based on the facts before the Court.  The specific injunctive remedy chosen here is at the

discretion of this Court.  Given the factors cited in the Show Cause Order, the injunction could

even be limited to oversight, requiring Defendants to file future reports with the Court showing their progress and results on conducting list maintenance programs in the state.

Lastly, even if this Court were to grant an order in favor of Defendants, the Court should account for the history of these violations by ensuring that no subsequent claims for noncompliance in the future are precluded.  In other words, should Plaintiffs discover that Indiana is still not complying with Section 8 two years from now, they should not be barred from suing Defendants again.  Accordingly, any order in favor of Defendants on Plaintiffs' claims should carefully specify it is making no findings concerning whether Indiana has achieved full compliance with Section 8 presently or going forward.

C.  Plaintiffs' Evidence of NVRA Violations Shifts the Burden to Defendants to Show Compliance – a Burden Defendants Have Not Met

Summary judgment for Defendants is not appropriate because Plaintiffs have satisfied their evidentiary case as far as Congress intended in enacting the NVRA.  Specifically, Plaintiffs have shown Defendants' violation is ongoing based on the evidence submitted, which constitutes a "per se" violation.  At a minimum, Plaintiffs' evidence has shifted the burden to Defendants, requiring Defendants to provide evidence of affirmative compliance to rebut this showing. Defendants have failed to introduce any such rebutting evidence demonstrating their compliance in the face of indelible evidence by Plaintiffs showing violations.  Furthermore, as explained above in Section II, HEA 1391 and SEA 519 only give the Defendants the unambiguous power under Indiana law to comply with NVRA Section 8, where Indiana's previous state law conflicted with Section 8 and likely would have been preempted.  It is still up to the Defendants to exercise their power to comply with Section 8, and they have not informed this Court that they are doing so.

First, as Plaintiffs demonstrated, the fact that 12 Indiana counties had voter rolls that exceed 100% of TVAP, a number which has surged to 16 counties in the court of this litigation, constitutes "per se" evidence of an NVRA Section 8 violation.  ECF No. 69 at 7, ¶ 5; ECF No. 69 at 19.  Once a *per se* violation is established, a Court need make no further inquiry into the practices of the parties or the effects of their actions in order to support a finding of illegal conduct.  *See United States v. Nat'l Soc. of Prof'l Eng'rs*, 404 F. Supp. 457, 460 (D.D.C. 1975); ECF No 69 at 20.  Given the enormity of Indiana's Section 8 violations, Plaintiffs have been able to meet the high bar of showing "per se" liability.  But even if the Court does not find *per se* liability, the weight of Plaintiffs' evidence is such that the burden in this case should now shift to Defendants to demonstrate the remedial measures they have taken to bring the state into compliance – evidence Defendants cannot supply because they are not in full compliance.  At a minimum, Plaintiffs' evidence shows a material disputed question of fact exists concerning Defendants' compliance.  Accordingly, the *Ex parte Young* exception to the Eleventh Amendment continues to apply and Plaintiffs' lawsuit should continue to a favorable judgment.

Plaintiffs' evidence of NVRA violations has created a "rebuttable presumption" that Indiana's violations are ongoing.  ECF No. 69 at 19-20; *see also* Plaintiffs' Reply in Support of MSJ, ECF No. 77 at 8-9.  In other words, by establishing the violations as thoroughly as Plaintiffs have, the burden should shift to Defendants to offer evidence to the Court that they have corrected their Section 8 violations.  *Id*.  As Plaintiffs' explained, courts routinely employ burden shifting and create rebuttable presumptions where evidentiary complexity would make cases impossible to prove in their absence.  ECF No. 77 at 8-9, *citing Basic Inc. v. Levinson*, 485 U.S. 224, 229-230 (1988).  Given the fact-intensive nature of proving Section 8 violations, the importance of election integrity to citizens' confidence in elections, and Congress' clear

instruction that private parties be allowed to bring suit to enforce Section 8, the law requires a rebuttable presumption standard here.  42 U.S.C. §§ 1973gg(b)(3), 1973gg-9(b).

Despite Plaintiffs' evidence of NVRA violations, Defendants are without evidence that they have substantially changed their list maintenance actions or directives to achieve full compliance with NVRA Section 8.  At a minimum, the Court should request that each Defendant respond separately to identify specific changed actions each has taken since July 2013 so their compliance efforts may be properly judged.

## IV.    Plaintiffs Have Now Substantially Prevailed on Their NVRA Records Claim

There is no genuine dispute of fact that Indiana failed to make records available under NVRA Section 8(i) for over two years.  ECF No. 69 at 15-16, ¶ 53, and at 27-28.  Indiana forced Plaintiffs to initiate and prosecute this litigation at great costs to themselves in order to obtain access to the records to which Plaintiffs are entitled under the NVRA.  42 U.S.C. § 1973gg-6(i). Indiana not only excessively delayed granting Plaintiffs access to the records, but it has forced Plaintiffs to expend enormous efforts to obtain the records sought.  These efforts began in February of 2012 and continued through early 2014, when the Court finally issued two orders requiring Indiana to produce the documents.  *See* Court Orders Requiring Defendants to Produce Documents, ECF No. 82, ECF No. 84.  Because of these two Court Orders, Plaintiffs have now substantially prevailed on their Count II claim for records under NVRA Section 8(i).

In the analogous context of the federal Freedom of Information Act ("FOIA"), a litigant requesting records has substantially prevailed in a lawsuit if he obtains the records through either a judicial order or a voluntary change in position by the agency following the commencement of litigation.  *ACLU v. United States Department of Homeland Security*, No. 08-1100, 2011 U.S. Dist. Lexis 104264, at *16 (D.D.C. 2011).  Plaintiffs' two year odyssey to obtain list

maintenance records from Indiana clearly satisfies either standard.  There is no doubt that

Plaintiffs obtained requested records concerning list maintenance through not one but two Court

orders, as outlined above.  Similarly, it is undisputed that this litigation "substantially caused the

requested records to be released." *NYC Apparel F.Z.E. v. U.S. Customs & Border Prot. Bureau*,

563 F. Supp. 2d 217, 221 (D.D.C. 2008).  Prior to the commencement of this lawsuit, Defendants

released not a single document, and Defendants did not fully produce all responsive documents

until March of 2014 following two Court orders.  Plaintiffs have prevailed.

 Indiana's failure to provide information to Plaintiffs violated NVRA Section 8 and

caused Plaintiffs' injury.  *Project Vote/Voting for America, Inc. v. Long*, 752 F. Supp. 2d 697,

702 (E.D. Va. 2010) (internal citations omitted); 42 U.S.C. § 1973gg-6(i).  Plaintiffs "need show

[no] more than that they sought and were denied specific agency records" to establish the

violation and resultant injury.  *Id*. at 703.  Plaintiffs have made this showing.  Not only did

Indiana deny Plaintiffs' request for records which the state was required to make available under

NVRA Section 8, but Plaintiffs had to engage in years of litigation to obtain the requested

records.  ECF No. 69 at 15-16, ¶ 53.

 In light of this, at a minimum, any summary judgment order should formally reflect the

fact that Plaintiffs have prevailed so that they may subsequently move to recover reasonable

attorney's fees as compensation for the time they were forced to spend protecting their rights.

Indiana's obduracy and recalcitrance in complying with 42 U.S.C. § 1973gg-6(i) underscores the

appropriateness of this remedy.  *LaSalle Extension Univ. v. Federal Trade Comm'n*, 627 F.2d

481,484 (D.C. Cir. 1980) (attorney's fees are appropriate "as compensation for enduring an

agency's unreasonable obduracy in refusing to comply with the Freedom of Information Act's

requirements.").

**Conclusion**

For all the foregoing reasons, the Court should grant summary judgment in favor of

Plaintiffs and should not grant summary judgment in favor of Defendants.

Dated: June 3, 2014                                    Respectfully submitted,

<table>
<tr>
<td>

J. Christian Adams
Admitted *Pro Hac Vice*

ELECTION LAW CENTER, PLLC
300 N. Washington Street, Ste. 405
Alexandria, VA 22314
Tel: (703) 963-8611
Email: adams@electionlawcenter.com


David R. Langdon
Joshua B. Bolinger

LANGDON LAW LLC
8913 Cincinnati-Dayton Rd.
West Chester, Ohio 45069
Tel: (513) 577-7380
Fax: (513) 577-7383
Email: dlangdon@langdonlaw.com
      jbolinger@langdonlaw.com

</td>
<td>

*/s/  Chris Fedeli*
Paul J. Orfanedes
Chris Fedeli
Admitted *Pro Hac Vice*

JUDICIAL WATCH, INC.
425 Third Street S.W., Ste. 800
Washington, DC 20024
Tel: (202) 646-5172
Fax: (202) 646-5199
Email: porfanedes@judicialwatch.org
      cfedeli@judicialwatch.org

</td>
</tr>
</table>

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of June, 2014, I electronically filed the foregoing

document with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be

sent to counsel of record by operation of the Court's electronic filing system.  Parties may access

this filing through the Court's system.

*/s/ Chris Fedeli*
Chris Fedeli
